**FILED**

DEC 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

PAGE 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### 333 CONSTITUTION AVE N.W.
### WASHINGTON D.C.. 20036

Jack A.Schwaner    )
1 Great Oak Cir. Apt B-44    )
Newport News,Va.23606    )
(757) 595-2804    )
    )
    Plaintiff    )
    )
    Vs    )
    )
    )
USCG Headquarters    )
Washington D.C.    )
USCGRTC.    )
 Yorktown Va.    )
0-4 K.E.Lunday    )
USCGRTC Legal Officer

    Defendants

Case: 1:07-cv-02351
Assigned To : Sullivan, Emmet G.
Assign. Date : 12/19/2007
Description: Civil Rights-Non-Employ.

The Plaintiff is a resident of Newport News Va

COMPLAINT

The Plaintiff worked as a life insurance agent in USCGRTC since1982 and never had one complaint in its 23 years, then 0-4 K.E. Lunday USCG appear in 1999 as the USCGRTC Legal Officer and put into motion unreasonable regulation and compiled false allegations. against the plaintiff effecting a negative working relationship with Coast Guard personnel and working in concert with USCGRTC. Commanding Officer agreed and instituted 0-4 K.E..Lunday legal opinions into USCGRTC regulations clearly designed to create hardships for the plaintiff. The Plaintiff will prove that the USCGRTC and US Coast Guard Headquarters D.C. Abetted 0-4 K.E.Lunday in his pursuits that effectuated the plaintiff excellent long standing Reputation in USCGRTC. The Plaintiff claims the Defendants violated his Constitutional rights to equal protection and due process that resulted in extreme emotional distress therefore the plaintiff seeks compensatory damage of $900,000,.along with punitive damages

A chronological order of specific exhibits will show the capricious and arbitrary manner ensued by 0-4 K. E. Lunday USCGRTC Command and US Coast Guard Headquarters toward plaintiff.(1)-Park at the Upper area and to walk ¼ mile to appointments,knowing the plaintiff is handicap ( triple heart bypass,short of breath,extreme back pain and diabetic.) (2)-Check at the Main gate(3)-seek and report

**RECEIVED**

DEC 1 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Page 2

to the OOD and than show the appointments. In the past I check with the main gate I saw the SMAA (NCOIC of the class) sometimes he may request to see my appointment.,my time was always on time as required by USCGRTC regulation.. Business reply appointment cards was used in order to obtain appointments .(3)-Insurance agents are prohibited to enter the Cyber Cafe or be near its vicinity that consisted of a snack bar run by a civilian employee ,tables ,chairs and a area of 6 computers for Coast Guard personnel used for games and personal use. The reason to make this a prohibit area by 0-4 K.E.Lunday was to state the importance of safeguarding the cyber cafe ,but could not be explained the meaning of "safeguarding"against whom or what ,though many Foia requests were made plaintiff never received any responses.

categories of complaints

# REGULATIONS

A-The prime Department of Defense Instruction1344-07 governing Personal Commercial

Solicitation on DOD Installations shows 0-4 K.E.Lunday knowingly violated these following

Paragraphs in DODI 1344-07 Para:6.5.1,6.5.2,6..5.3 & 6.5.5.  No specific personal charges was

brought forward against the Plaintiff with the exception of submitting a letter seeking permission to at

 USCGRTC representing Trans World Assurance Co. 0-4 K.E.Lunday violated all the above paragraph

by falsely representing .himself as Installation Commander of USCGRTC ,refused the plaintiff as

required DODI 1344-07 a Show-Cause hearing.

(A-1)-DODI 1344-07 includes the above paragraphs

(A-2)-USCGRTC 18 Jan.1982  (Plaintiff may use snack and other recreation areas.)

(A-3)-USCGRTC  1740.1c,3 Sept.1989 Same as (2).

/(A-4)-USCGRTC 1740.1D,24 Feb.1998 Same as (2) & (3).

(A-5)-USCGRTC Memorandum,3 Nov..1993 same as above

(A-6)-USCGRTC 1740.1D,29 Sept.1999 Legal Officer 0-4 Lunday invokes Para:d. Agents to

seek the OOD.

 (A-7)-USCGRTC Memorandum,10 Dec.1999 discuss a regulation by 0-4 K.E.Lunday & Base

C.O. in prohibiting  agents in the Cyber Cafe. .I  Been working at USCGRTC since 1982

with no infraction,I do not go in a hunting mission looking for the OOD for health reasons. :04 K E

Lunday states he does "continue to closely monitor my activities".,I have seen 0-4 Lunday many

Page 3

times behind bushes and trees and was informed by Coast Guard personnel that he was hiding and

watching me.

(A-8)-USCGRTC 1740.1F,13 Dec.1999 Legal officer 0-4 Lunday invokes Para:e Agents

prohibited in Cyber Cafe.

(A-9)-USCGRTC 1740.1G Para:e 7 Jul.2004  This new rule put in this regulation states Ins. agents are

now  prohibited in the smoking area, FOIA requests were made to 4 K.e.Lunday and the

new legal officer Lcdr. Batson the locations of offices or lounges (never received a  reply).

### *****METAL SOCIAL SECURITY BUSINESS REPLY CARDS*****'e
### WITH COAST GUARD EMBLEM

**B-**AR-210-7  Chapter 2 Paragraph 2-8f (18)g. The regulation in this paragraph is designed for agents  who desire to use the business reply card system Following exhibits (B1) through (A-)the plaintiff with the enclose exhibits will prove that 0-4 K.E.Lunday went beyond  his spectrum of his assigned duty and was also abetted by US Coast Guard Headquarters..

### EXHIBITS

(b-1)Army regulation 210-7  2-8f (18)g  "use of business reply cards..

(B-2)-Letter dated 8 Mar,2000 to Commandant (G-IPA) by 0-4 K.E.lunday..Lincoln Fin.Grp or

MBA had no input concerning metal social security card, (see the card that bares USCG emblem) the

metal S S cards is a business transaction between the plaintiff and Perma*Products"Distributor"

in.Para:3,-0-4 Lunday it states "I am not seeking permission for them to use the same".

(B-3)-Letter dated 31 May,2000 by M.J. Devine Captain, USCG. to plaintiff".For the record the

plaintiff states  I did not represent Trans world Assurance Co. at USCGRTC and never did or was I a

distributor, I use the business reply card system as stated in(B-1).Captain states using this metal S S

Card with USCG emblem is a violation of Federal law and it also jeopardizes my solicitor permit at

USCGRTC,I do not consider this a improper activities.

(B-4)-Letter dated 18 Mar,2000 to 0-4 Lunday by plaintiff in a follow up telephone call by Ms Tara

Jennings May to the plaintiff reiterating the contents of (B-3).In this letter I interjected a Foia request

Page 4

concerning para:(1) and (2) with copies going to the Sec of Transportation and Ms Tara Jennings May.

I never received a reply pertaining to this Foia request.

(B-5)-Perma Products letter head.

(B-6)-picture of social security cards manufactured by Perma* Products.

(b-7)-photo copies of other USCG public advertisement that includes USCG emblems & wording.

Exhibits (1)-through (4).

(B-8)-Business reply card. designed by plaintiff.. Exhibit (1) see problem on exhibits (B-2), (B-3) (B-3) and (B-4).

(B-9)-Foia Letter dated 15 Feb,07 ,and received a response.

(B-10)-recent Letter dated 4 April,07 written by William G. Haskin,,Jr Chief Office of General Law d
responding to plaintiff letter (B-9) ,it shows a reversal to the letter of (B-3) written by M.J..Devine

Capt .USCG. This is further proof of a conspiracy led by 0-4 K.E .Lunday the USCGRTC. And abetted

by USCG Headquarters D.C.  .

# CYBER CAFE

C   USCGRTC Regulation designed by 0-4 K.E.Lunday and approved by D.A.Sande Captain,

has many folds against a Insurance agent, (1)-safeguarding Cyber Cafe and its vicinity,(2)-no longer

lounges or offices existed to work as in the past ,many Foia requests raising these issues never had

responses.(3)-I was a smoker, the smoking area is in the court yard and has a open sheltered from the

elements was used by plaintiff for many years ,is now prohibited to the plaintiff or anyone of the same

status."see (A-9) USCGRTC 1740 1G Para:e.

see (A-5)-USCGRTC Memo dated 24 Feb.,1998:Commander gives authorization to Legal Officer.

see (A-7)-USCGRTC memorandum dated 10 Dec.1999, 0 -4 K.E.Lunday and Commander prohibiting

Insurance agent in the Cyber Cafe. Plaintiff states additional restriction of USCGRTC 1740 1E goes

beyond reasonable. Persons in Para:4 never on board stated by Guard personnel or seen by plaintiff. ..

see (A-8)-USCGRTC 1740.1F. Para: e  new instruction states Cyber Cafe is not a office or lounge

Page 5

therefore commercial solicitation in or in the immediate vicinity of the Cyber Cafe is prohibited.

(XXX)-Letter from 0-4 K.E.Lunday dated 14 April,2000 states could not find or respond to some Foia.

(C-1)-A letter of dated May 5,2000 partial denial from D.A.Sande Capt. USCG Commanding Officer

USCGRTC concerning my 7 April,2000 Foia request .about the Cyber Cafe This disclosure Proves the

act was arbitrary and capricious ,a conspiracy purposely abetted by Capt.D.A.Sande Commanding

Officer and designed by 0-4 K.E.Lunday legal officer USCGRTC toward the plaintiff by using the

excuse of "the importance of safeguarding Cyber Cafe environment" (see (A-7)Memorandum

USCGRTC1740 dated 10 Dec.1999  In reality it is operated by a Computer company called Cyber

Zone that claims the best and most extensive array of software for gaming, no classified clearances.

This clearly shows where the mindset is "Profit for USCGRTC using computers and Coast Guard

students as bait."(This is why USCGRTC gave no answers to my Foia requests concerning the
safeguarding of the Cyber Cafe and vicinity against whom?
(C-2 )-Correspondence between USCGRTC and Cyber Zone Co.  Exhibits
 (a)  (b)  (c)  (d)
 (a)-July 30,1999 @ 12.16 PM from LaRae.Malinauskas LT USCG  to Larry Kelly @ cyber-
     netcafe Subject: Proposal  (3 Pages)

(b)-July 30,1999 @1.36 PM  from Larry Kelly @ cyber-netcafe to LaRae Malinausk LT.USCG
Subject:RE: You proposal (2 Pages)

(c)-Aug.06,1999 @ 1.09 PM from Larry Kelly @cyber-netcafe to LaRae Malinauskas LT. USCG.
Subject:Cyber Zone Proposal (3 Pages)

 (d)-Cyber Zone benefits plus revenue sharing .


## STATEMENTS BY WITNESSES

D. The Month of March of 2000 was a busy month for 0.4 K.E.Lunday who engineered and tried to
revoke my permit by ordering his OOD'S to explicitly to gather statements that would show a cause for
my revocation from USCGRTC .
(D-1)-Letter dated Dec.9,1999 -from 0 4 K.E.Lunday to the plaintiff for violating 1740.E1
Para:2.d "Dec.8,99 using "18 U.S.C.1382" a criminal offense that (a) requires prior notification
and a Federal  Trial, omitted is the proper venue located in DoDI 1344-07 Para:6.5.2and 6.5.5.
As stated previously because due to my health I do not hunt for the OOD if not at his office.

(D-2)-Letter dated March 2,2000 from 0-4 K.E.Lunday to plaintiff. What ever information Lunday

Page 6

received from P.O.Burrier is a absolute lie,I do not sit anywhere for 20 minute or read magazines at the

Cyber Cafe,I do not recollect going through the Cyber Cafeto see my clients "see Cyber Cafe (C-1).I

do not loiter and will not park at the Student/chapel because of the distance".

(D-3)note dated 3/2/00 the hand written by 0-4 Lunday to plaintiff's (D-4)- more of the same as (D-3).

(D-4)-Affidavit of EMC William E Smith Dated 6 Mar.00 .Plaintiff was upset because of the constant

harassment ,no profanity was  used and anyone who talks about me I want to know what was  said..I

am sitting in the lobby in front of the OOD office to see the OOD,chief smith who spells my name

correctly,I been working at USCGRTC since 1982 smith states he never seen me before and further ask

if I was still allowed on base,unbeknown to Smith I do not ask anyone for their social security numbers.

and in his class Chief Smith made more disparaging remarks about me as told to me by  students .

(D-5)-Affidavit of EM1 James E Ross Dated 5 mar,00 chief W .E .Smith and  used the same day ,same

typewriter and the same Notary Public,due to both (D-5) do not know what they are talking about the

best of their knowledge has failed.

(D-6)-Hand written note dated 9 Mar,00 by Bryan J Duncan ,this note proves statement about me by

chief Smith See (D-4)and the card that B.Duncan gave me was an appointment

(D-7)-Letter Dated 7 Mar.,00 written to 0-4 K.E.Lunday, plaintiff complaint about Chief Smith
t
(D-8)-Questioning the vindication of these sworn statements are hard to find except I did have a drink

and read a magazine but it was done in the back lobby.

(D-9)-Statement Dated 17 /00 by J.R.Rigsby . First a wrong student Smith appeared it took less 3

second to conclude it was not the right Smith, no confusion existed.
It shows a matter of fact that 0-4  K.E.Lunday did conspired with some senior NCO'S
and were instrumental in design to revoke the plaintiff permit in USCGRTC..

## E. Jack A.Schwaner revocation, TWA Attorney and TWA Trial results
-
(E-1)-Letter of Revocation/Denial concerning Trans World Assurance Co. dated 2 Aug.99

(a)-K.E.Lunday  violated USCG regulations and DoDI 1344-07 instructions in denying TWA

Page 7

without the approval of USCGRTC commander.(b) your are innocent until proven guilty (c)-3 Coast

Guard members filed a class action lawsuit, against TWA,TWA won the Class action lawsuit)

(E-2)-Letter of revocation concerning Jack A.Schwaner to TWA by 0-4 Lunday dated 2 Aug.99.

(E-3)-Letter of oversea approval to TWA by the Office of the Assistant of defense dated 5 Aug,99

(E-4)-Letter to Commander USCGRTC from Plaintiff dated Aug.20,99,requesting why the plaintiff

with no charges and no show-cause hearing as given to TWA See:(E-3).

(E-5)-Letter dated Aug.24,99 from TWA attorney to -4 K.E.Lunday ..TWA attorneys are being kind to

0-4 K.E.Lunday who had no idea of what he was doing or happening as this letter show. In the past I

represented TWA and a statement of understating had to be sign by the Insured.

(E-6)-Letter dated Aug.26,99 to 0-4 K.E.lunday from the plaintiff requesting Foia, never no response.

(E-7)-Letter dated 30 Aug.99 to the President of TWA from Jack A Schwaner resigning in order to

receive my permit to work in USCGRTC.

(E-8)-Letter dated 31 Aug,99 From 0-4 K.E.Lunday to Plaintiff reinstating my MBA permit
.
(E-9)-Letter dated Dec.8,1999 From 0-4 K.E.Lunday. Plaintiff is now granted to represent TWA .

(E-10)-Letter dated 14 Dec,99 to 0-4 K.E.Lunday from TWA President his approval of future agents.

(E-11)-USCGRTC Installation violated the plaintiff rights under Comdtinst 1740 2g dated 22 July,1992
"6.Denial and Revocation of on board Solicitation"6a (1) through (7) these violations were not related
to the Plaintiff "Para: b, plaintiff and Insurance Company were denied a show-cause hearing,contrary to
Comdtinst.1740.2g".
 List of Trans World Assurance Lawsuit results (a) through (e)
(a)-TWA wins policyholder Class action trial &Court entered a judgment against plaintiff for$71,000
(b)-(same as (a) including any misconduct by TWA agents.
(c)-TWA is cleared defrauding or misrepresent its policyholders , reversed previous Court rulings.
(d)-TWA and AMFI are seeking to recover in excess of $200,000 from Plaintiff in Court cost.
(e)-TWA and AFLI wins the class action suit and did not concealed ,or suppressed any material facts
concerning the "3 Coast Guard personnel"  .

# Conclusion

The ramification of this suit is twofold one is the zealous pursuit of 0-4 K.E.Lunday by going beyond
the scope of USCG Regulation 1740 G having the plaintiff work under unbearable conditions by the
constant threats of revocation and adding new restrictions to the USCGRTC Insurance Solicitation
Regulation such as (1)-preventing the use of business reply cards with the threat of revocation in

Page 8

USCGRTC with the back up of the USCG Command ,D.C.,(2)-parking at the Chapel a ¼ mile distance in order to meet my appointments,(3)- prevention of entering the Cyber Cafe or vicinity (4) putting off limits in the smoking area.(All these restrictions only apply primary to the since the plaintiff and is the only active Insurance agent in USCGRTC.(these restrictions do not apply to anyone unattached to USCGRTC).Second, the most destructive was the revocation of the plaintiff permit to work in USCGRTC no show-cause hearing as required and specific charges ever existed. The plaintiff revocation was based on the submission of the letter address to USCGRTC by TWA requesting the plaintiff to represent them,. USCGRTC being a small Installation needless to say the revocation regardless of being reinstated had a large negative impact on the plaintiff reputation and Insurance sales plumped among the Coast Guard personnel. .See: Para:(e) was used by 0-4 K.E.Lunday in denying TWA permission to be represented on USCGRTC The Plaintiff is Requesting this Court should enter a summary judgment for the Plaintiff because the defendant has shown complete disregard for US Court opinions, D.O.D instructions ,and violated the Plaintiff civil rights and due process .

Respectfully Summited,

Jack A.Schwaner Pro-Se
1 Great Oak Cir Apt. B-44
Newport News,Va.23606
(757) 595-2804

CERTIFICATE OF SERVICE

I hereby certify a true copy of the following plaintiff's motion for a summary judgment was mail first class prepaid postage this    day of      .,2007 to all parties as addressed below

United States District Court
For the District of Columbia
333 Constitution Ave N.W.
Washington D.C. 20001

Jack A.Schwaner Pro-Se
1 Great Oak Cir. Apt. B-44
Newport News,Va. 23606



## Department of Defense
# INSTRUCTION

March 30, 2006

**NUMBER** 1344.07

USD(P&R)

SUBJECT: Personal Commercial Solicitation on DoD Installations

References:  (a) DoD Directive 1344.7, "Personal Commercial Solicitation on DoD Installations," February 13, 1986 (hereby canceled)
     (b) Deputy Secretary of Defense Memorandum, "DoD Directives Review - Phase II," July 13, 2005
     (c) DoD Directive 5124.2, "Under Secretary of Defense for Personnel and Readiness (USD(P&R))," February 11, 2006
     (d) Section 577 of Public Law 109-163, "The National Defense Authorization Act For Fiscal Year 2006, January 6, 2006
     (e) through (s), see Enclosure 1

## 1. REISSUANCE AND PURPOSE

This Instruction:

1.1. Reissues Reference (a) as a DoD Instruction according to guidance in References (b) and (c).

1.2. Implements Section 577 of Public Law No. 109-163 (2006) Reference (d) and establishes policy and procedures for personal commercial solicitation on DoD installations.

1.3. Continues the established annual DoD registration requirement for the sale of insurance and securities on DoD installations overseas.

1.4. Identifies prohibited practices that may cause withdrawal of commercial solicitation privileges on DoD installations and establishes notification requirements

07 2351

**FILED**

DEC 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

when privileges are withdrawn.

    1.5. Establishes procedures for persons solicited on DoD installations to evaluate solicitors.

    1.6. Prescribes procedures for providing financial education programs to military personnel.

5. RESPONSIBILITIES

5.1. The Principal Deputy Under Secretary of Defense for Personnel and Readiness (PDUSD(P&R)), under the Under Secretary of Defense for Personnel and Readiness, shall:

5.1.1. Identify and publish policies and procedures governing personal commercial solicitation on DoD installations consistent with the policy set forth in this Instruction.

5.1.2. Maintain and make available to installation commanders and appropriate Federal personnel the current master file of all individual agents, dealers, and companies who have their privileges withdrawn at any DoD installation.

5.1.3. Develop and maintain a list of all State Insurance Commissioners' points of contact for DoD matters and forward this list to the Military Services.

5.2. The Heads of the DoD Components shall:

5.2.1. Ensure implementation of this Instruction and compliance with its provisions.

5.2.2. Require installations under their authority to report each instance of withdrawal of commercial solicitation privileges.

5.2.3. Submit lists of all individuals and companies who have had their commercial solicitation privileges withdrawn at installations under their authority to the PDUSD(P&R) in accordance with this Instruction.

6. PROCEDURES

6.1. General

6.1.1. No person has authority to enter a DoD installation to transact personal commercial solicitation as a matter of right. Personal commercial solicitation may be permitted only if the following requirements are met:

6.1.1.1. The solicitor is duly licensed under applicable Federal, State, or municipal laws and has complied with installation regulations.

6.1.1.2. A specific appointment has been made for each meeting with the individual concerned. Each meeting is conducted only in family quarters or in other areas designated by the installation commander.

6.1.1.3. The solicitor agrees to provide each person solicited the personal commercial solicitation evaluation included in Enclosure 5 during the initial appointment. The person being solicited is not required to complete the evaluation. However, completed evaluations should be sent by the person who was solicited to the office designated by the installation commander on the back of the evaluation form.

6.1.1.4. The solicitor agrees to provide DoD personnel with a written reminder, prior to their making a financial commitment, that free legal advice is available from the Office of the Staff Judge Advocate.

6.1.2. Solicitors on overseas installations shall be required to observe, in addition to the above, the applicable laws of the host country. Upon request, the solicitor must present documentary evidence to the installation commander that the company they represent, and its agents, meet the applicable licensing requirements of the host country.

6.2. Life Insurance Products and Securities

6.2.1. Life insurance products and securities offered and sold to DoD personnel shall meet the prerequisites described in Enclosure 3 of this Instruction.

6.2.2. Installation commanders may permit insurers and their agents to solicit on DoD installations if the requirements of paragraph 6.1. are met and if they are licensed under the insurance laws of the State where the installation is located. Commanders will ensure the agent's license status and complaint history are checked with the appropriate State or Federal regulators before granting permission to solicit on the installation.

6.2.3. In addition, before approving insurance and financial product agents' requests for permission to solicit, commanders shall review the list of agents and companies currently barred, banned, or limited from soliciting on any or all DoD installations. This list may be viewed via the *Personal Commercial Solicitation Report* "quick link" at www.commanderspage.com. In overseas areas, the DoD Components shall limit insurance solicitation to those insurers registered under the provisions of Enclosure 4 of this Instruction.

6.2.4. The conduct of all insurance business on DoD installations shall be by specific appointment. When establishing the appointment, insurance agents shall identify themselves to the prospective purchaser as an agent for a specific insurer.

6.2.5. Installation commanders shall designate areas where interviews by appointment may be conducted. The opportunity to conduct scheduled interviews shall be extended to all solicitors on an equitable basis. Where space and other considerations limit the number of agents using the interviewing area, the installation commander may develop and publish local policy consistent with this concept.

6.2.6.  Installation commanders shall make disinterested third-party insurance counseling available to DoD personnel desiring counseling.  Financial counselors shall encourage DoD personnel to seek legal assistance or other advice from a disinterested third-party before entering a contract for insurance or securities.

6.2.7.  In addition to the solicitation prohibitions contained in paragraph 6.4., the DoD Components shall prohibit the following:

6.2.7.1.  The use of DoD personnel representing any insurer, dealing directly or indirectly on behalf of any insurer or any recognized representative of any insurer on the installation, or as an agent or in any official or business capacity with or without compensation.

6.2.7.2.  The use of an agent as a participant in any Military Service-sponsored education or orientation program.

6.2.7.3.  The designation of any agent or the use by any agent of titles (for example, "Battalion Insurance Counselor," "Unit Insurance Advisor," "Servicemen's Group Life Insurance Conversion Consultant,") that in any manner, states, or implies any type of endorsement from the U.S. Government, the Armed Forces, or any State or Federal agency or government entity.

6.2.7.4.  The use of desk space for interviews for other than a specific prearranged appointment.  During such appointment, the agent shall not be permitted to display desk signs or other materials announcing his or her name or company affiliation.

6.2.7.5.  The use of an installation "daily bulletin," marquee, newsletter, webpage, or other official notice to announce the presence of an agent and/or his or her availability.

6.3.  <u>Supervision of On-Base Commercial Activities</u>

6.3.1.  All pertinent installation regulations shall be posted in a place easily accessible to those conducting and receiving personal commercial solicitation on the installation.

6.3.2.  The installation commander shall make available a copy of installation regulations to anyone conducting on-base commercial solicitation activities warning that failure to follow the regulations may result in the loss of solicitation privileges.

6.3.3.  The installation commander, or designated representative, shall inquire into any alleged violations of this Instruction or of any questionable solicitation practices.  The DD Form 2885, Personal Commercial Solicitation Evaluation, at Enclosure 5 is provided as a means to supervise solicitation activities on the installation.  DD Form 2885 is available at the Department of Defense Forms Web site under DefenseLink, Publications.

6.4. <u>Prohibited Practices</u>. The following commercial solicitation practices shall be prohibited on all DoD installations:

6.4.1. Solicitation of recruits, trainees, and transient personnel in a group setting or "mass" audience and solicitation of any DoD personnel in a "captive" audience where attendance is not voluntary.

6.4.2. Making appointments with or soliciting military or DoD civilian personnel during their normally scheduled duty hours.

6.4.3. Soliciting in barracks, day rooms, unit areas, transient personnel housing, or other areas where the installation commander has prohibited solicitation.

6.4.4. Use of official military identification cards or DoD vehicle decals by active duty, retired, or reserve members of the Military Services to gain access to DoD installations for the purpose of soliciting. When entering the installation for the purpose of solicitation, solicitors with military identification cards and/or DoD vehicle decals must present documentation issued by the installation authorizing solicitation.

6.4.5. Procuring, attempting to procure, supplying, or attempting to supply non-public listings of DoD personnel for purposes of commercial solicitation, except for releases made in accordance with DoD Directive 5400.7 (Reference (f)).

6.4.6. Offering unfair, improper, or deceptive inducements to purchase or trade.

6.4.7. Using promotional incentives to facilitate transactions or to eliminate competition.

6.4.8. Using manipulative, deceptive, or fraudulent devices, schemes, or artifices, including misleading advertising and sales literature. All financial products, which contain insurance features, must clearly explain the insurance features of those products.

6.4.9. Using oral or written representations to suggest or give the appearance that the Department of Defense sponsors or endorses any particular company, its agents, or the goods, services, and commodities it sells.

6.4.10. DoD personnel making personal commercial solicitations or sales to DoD personnel who are junior in rank or grade, or to the family members of such personnel, except as authorized in Section 2-205 and 5-409 of the Joint Ethics Regulation, DoD 5500.7-R (Reference (g)).

6.4.11. Entering into any unauthorized or restricted area.

6.4.12.  Using any portion of installation facilities, including quarters, as a showroom or store for the sale of goods or services, except as specifically authorized by DoD Directive 1330.17 and DoD Instructions 1015.10, 1000.15, and 1330.21 (References (h), (i), (j), and (k)). This does not apply to normal home enterprises that comply with applicable State and local laws and installation rules.

6.4.13.  Soliciting door to door or without an appointment.

6.4.14.  Unauthorized advertising of addresses or telephone numbers used in personal commercial solicitation activities conducted on the installation, or the use of official positions, titles, or organization names, for the purpose of personal commercial solicitation, except as authorized in Reference (g).  Military grade and military service as part of an individual's name (e.g., Captain Smith, U.S. Marine Corps) may be used in the same manner as conventional titles, such as "Mr.", "Mrs.", or "Honorable."

6.4.15.  Contacting DoD personnel by calling a government telephone, faxing to a government fax machine, or by sending e-mail to a government computer, unless a pre-existing relationship (i.e., the DoD member is a current client or requested to be contacted) exists between the parties and the DoD member has not asked for contact to be terminated.

6.5.  Denial, Suspension, and Withdrawal of Installation Solicitation Privileges

6.5.1.  The installation commander shall deny, suspend, or withdraw permission for a company and its agents to conduct commercial activities on the base if such action is in the best interests of the command.  The grounds for taking these actions may include, but are not limited to, the following:

6.5.1.1.  Failure to meet the licensing and other regulatory requirements prescribed in this Instruction, or violations of the State law where the installation is located.  Commanders will request that appropriate State officials determine whether a company or agent violated State law.

6.5.1.2.  Commission of any of the practices prohibited in paragraphs 6.2.6 and 6.4.

6.5.1.3.  Substantiated complaints and/or adverse reports regarding the quality of goods, services, and/or commodities, and the manner in which they are offered for sale.

6.5.1.4.  Knowing and willful violations of Pub. L. 90-321, "Truth in Lending Act" (Reference (l)).

6.5.1.5.  Personal misconduct by a company's agent or representative while on the installation.

6.5.1.6. The possession of, and any attempt to obtain supplies of direct deposit forms, or any other form or device used by Military Departments to direct a Service member's pay to a third party, or possession or use of facsimiles thereof. This includes using or assisting in using a Service member's "MyPay" account or other similar internet medium for the purpose of establishing a direct deposit for the purchase of insurance or other investment product.

6.5.1.7. Failure to incorporate and abide by the Standards of Fairness policies contained in DoD Instruction 1344.9 (Reference (m)).

6.5.2. The installation commander may determine that circumstances dictate the immediate suspension of solicitation privileges while an investigation is conducted. Upon suspending solicitation privileges, the commander shall promptly inform the agent and the company the agent represents, in writing.

6.5.3. In suspending or withdrawing solicitation privileges, the installation commander shall determine whether to limit such action to the agent alone or extend it to the company the agent represents. This decision shall be based on the circumstances of the particular case, including, but not limited to, the nature of the violations, frequency of violations, the extent to which other agents of the company have engaged in such practices, and any other matters tending to show the culpability of an individual and the company.

6.5.4. If the investigation determines an agent or company does not possess a valid license or the agent, company, or product has failed to meet other State or Federal regulatory requirements, the installation commander shall immediately notify the appropriate regulatory authorities.

6.5.5. In a withdrawal action, the commander shall allow the individual or company an opportunity to show cause as to why the action should not be taken. To "show cause" means an opportunity must be given for the aggrieved party to present facts on an informal basis for the consideration of the installation commander or the commander's designee. The installation commander shall make a final decision regarding withdrawal based upon the entire record in each case. Installation commanders shall report concerns or complaints involving the quality or suitability of financial products or concerns or complaints involving marketing methods used to sell these products to the appropriate State and Federal regulatory authorities. Also, installation commanders shall report any suspension or withdrawal of insurance or securities products solicitation privileges to the appropriate State or Federal regulatory authorities.

6.5.6. The installation commander shall inform the Military Department concerned of any denial, suspension, withdrawal, or reinstatement of an agent or company's solicitation privileges and the Military Department shall inform the Office of the PDUSD(P&R), which will maintain a list of insurance and financial product companies and agents currently barred, banned, or otherwise limited from soliciting on any or all DoD installations. This list may be viewed at www.commanderspage.com. If warranted, the installation commander may recommend to the Military Department concerned that the action taken be extended to other DoD installations. The Military Department may extend the action to other military installations in the Military

*DoDI 1344.07, March 30, 2006*

Department. The PDUSD(P&R), following consultation with the Military Department concerned, may order the action extended to other Military Departments.

6.5.7. All suspensions or withdrawals of privileges may be permanent or for a set period of time. If for a set period, when that period expires, the individual or company may reapply for permission to solicit through the installation commander or Military Department originally imposing the restriction. The installation commander or Military Department reinstating permission to solicit shall notify the Office of the PDUSD(P&R) and appropriate State and Federal regulatory agencies when such suspensions or withdrawals are lifted.

6.5.8. The Secretaries of the Military Departments may direct the Armed Forces Disciplinary Control Boards in all geographical areas in which the grounds for withdrawal action have occurred to consider all applicable information and take action the Boards deem appropriate.

6.5.9. Nothing in this Instruction limits the authority of the installation commander or other appropriate authority from requesting or instituting other administrative and/or criminal action against any person, including those who violate the conditions and restrictions upon which installation entry is authorized.

6.6. Advertising and Commercial Sponsorship

6.6.1. The Department of Defense expects voluntary observance of the highest business ethics by commercial enterprises soliciting DoD personnel through advertisements in unofficial military publications when describing goods, services, commodities, and the terms of the sale (including guarantees, warranties, and the like).

6.6.2. The advertising of credit terms shall conform to the provisions of Reference (l) as implemented by Federal Reserve Board Regulation Z according to 12 CFR Section 226 (Reference (n)).

6.6.3. Solicitors may provide commercial sponsorship to DoD Morale, Welfare and Recreation programs or events according to Reference (i). However, sponsorship may not be used as a means to obtain personal contact information for any participant at these events without written permission from the individual participant. In addition, commercial sponsors may not use sponsorship to advertise products and/or services not specifically agreed to in the sponsorship agreement.

6.6.4. The installation commander may permit organizations to display sales literature in designated locations subject to command policies. In accordance with DoD 7000.14-R, Volume 7(a) (Reference (o)), distribution of competitive literature or forms by off-base banks and/or credit unions is prohibited on installations where an authorized on-base bank and/or credit union exists.

6.7. Educational Programs

6.7.1. The Military Departments shall develop and disseminate information and provide educational programs for members of the Military Services on their personal financial affairs, including such subjects as insurance, Government benefits, savings, budgeting, and other financial education and assistance requirements outlined in DoD Instruction 1342.27 (Reference (p)). The Military Departments shall ensure that all instructors are qualified as appropriate for the subject matter presented. The services of representatives of authorized on-base banks and credit unions may be used for this purpose. Under no circumstances shall commercial agents, including representatives of loan, finance, insurance, or investment companies, be used for this purpose. Presentations shall only be conducted at the express request of the installation commander.

6.7.2. The Military Departments shall also make qualified personnel and facilities available for individual counseling on loans and consumer credit transactions in order to encourage thrift and financial responsibility and promote a better understanding of the wise use of credit, as prescribed in DoD 7000.14-R, Volume 5, Chapter 34 (Reference (q)).

6.7.3. The Military Departments shall encourage military members to seek advice from a legal assistance officer, the installation financial counselor, their own lawyer, or a financial counselor, before making a substantial loan or credit commitment.

6.7.4. Each Military Department shall provide advice and guidance to DoD personnel who have a complaint under Reference (m) or who allege a criminal violation of its provisions, including referral to the appropriate regulatory agency for processing of the complaint.

6.7.5. Banks and credit unions operating on DoD installations are required to provide financial counseling services as an integral part of their financial services offerings under DoD Directive 1000.11 (Reference (r)). Representatives of and materials provided by authorized banks and/or credit unions located on military installations may be used to provide the educational programs and information required by this Instruction subject to the following conditions:

6.7.5.1. If the bank or credit union operating on a DoD installation sells insurance or securities or has any affiliation with a company that sells or markets insurance or other financial products, the installation commander shall consider that company's history of complying with this Instruction before authorizing the on-base financial institution to provide financial education.

6.7.5.2. All prospective educators must agree to use appropriate disclaimers in their presentations and on their other educational materials. The disclaimers must clearly indicate that they do not endorse or favor any commercial supplier, product, or service, or promote the services of a specific financial institution.

6.7.6.  Use of other non-government organizations to provide financial education programs is limited as follows:

6.7.6.1.  Under no circumstances shall commercial agents, including employees or representatives of commercial loan, finance, insurance, or investment companies, be used.

6.7.6.2.  The limitation in subparagraph 6.7.6.1. does not apply to educational programs and information regarding the Survivor Benefits Program and other government benefits provided by tax-exempt organizations under section (c) of 26 U.S.C. 501 (Reference (s)) or by any organization providing such a benefit under a contract with the Government.

6.7.6.3.  Educators from non-government, non-commercial organizations expert in personal financial affairs and their materials may, with appropriate disclaimers, provide the educational programs and information required by this Instruction if approved by a Presidentially-appointed, Senate-confirmed civilian official of the Military Department concerned.  Presentations by approved organizations shall be conducted only at the express request of the installation commander.  The following criteria shall be used when considering whether to permit a non-government, non-commercial organization to present an educational program or provide materials on personal financial affairs:

6.7.6.3.1.  The organization must qualify as a tax-exempt organization under section (c)(3) or 1(c)(23) of Reference (s)).

6.7.6.3.2.  If the organization has any affiliation with a company that sells or markets insurance or other financial products, the approval authority shall consider that company's history of complying with this Instruction.

6.7.6.3.3.  All prospective educators must use appropriate disclaimers, in their presentations and on their other educational materials, which clearly indicate that they and the Department of Defense do not endorse or favor any commercial supplier, product, or service or promote the services of a specific financial institution.

7.  INFORMATION REQUIREMENTS

The reporting requirements concerning the suspension or withdrawal of solicitation privileges have been assigned Report Control Symbol (RCS) DD-P&R(Q)2182 in accordance with DoD 8910.1-M (Reference (t)).

## 2. APPLICABILITY AND SCOPE

2.1. This Instruction applies to the Office of the Secretary of Defense, the Military Departments, the Chairman of the Joint Chiefs of Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities in the Department of Defense (hereafter referred to collectively as the "DoD Components").

2.2. This Instruction does not apply to services furnished by residential service companies, such as deliveries of milk, laundry, newspapers, and related services to personal residences on the installation requested by the resident and authorized by the installation commander.

2.3. This Instruction applies to all other personal commercial solicitation on DoD Installations. It includes meetings on DoD installations of private, non-profit, tax-exempt organizations that involve commercial solicitation. Attendance at these meetings shall be voluntary and the time and place of such meetings are subject to the discretion of the installation commander or his or her designee.

## 3. DEFINITIONS

Terms used in this Instruction are defined in Enclosure 2 or in Joint Publication 1-02, "DoD Dictionary of Military and Associated Terms" (Reference (e)).

## 4. POLICY

4.1. It is DoD policy to safeguard and promote the welfare of DoD personnel as consumers by setting forth a uniform approach to the conduct of all personal commercial solicitation and sales to them by dealers and their agents. For those individuals and their companies that fail to follow this policy, the opportunity to solicit on military installations may be limited or denied as appropriate.

4.2. Command authority includes authority to approve or prohibit all commercial solicitation covered by this Instruction. Nothing in this Instruction limits an installation commander's inherent authority to deny access to vendors or to establish time and place restrictions on commercial activities at the installation.

6.7.6.  Use of other non-government organizations to provide financial education programs is limited as follows:

6.7.6.1.  Under no circumstances shall commercial agents, including employees or representatives of commercial loan, finance, insurance, or investment companies, be used.

6.7.6.2.  The limitation in subparagraph 6.7.6.1. does not apply to educational programs and information regarding the Survivor Benefits Program and other government benefits provided by tax-exempt organizations under section (c) of 26 U.S.C. 501 (Reference (s)) or by any organization providing such a benefit under a contract with the Government.

6.7.6.3.  Educators from non-government, non-commercial organizations expert in personal financial affairs and their materials may, with appropriate disclaimers, provide the educational programs and information required by this Instruction if approved by a Presidentially-appointed, Senate-confirmed civilian official of the Military Department concerned.  Presentations by approved organizations shall be conducted only at the express request of the installation commander.  The following criteria shall be used when considering whether to permit a non-government, non-commercial organization to present an educational program or provide materials on personal financial affairs:

6.7.6.3.1.  The organization must qualify as a tax-exempt organization under section (c)(3) or 1(c)(23) of Reference (s)).

6.7.6.3.2.  If the organization has any affiliation with a company that sells or markets insurance or other financial products, the approval authority shall consider that company's history of complying with this Instruction.

6.7.6.3.3.  All prospective educators must use appropriate disclaimers, in their presentations and on their other educational materials, which clearly indicate that they and the Department of Defense do not endorse or favor any commercial supplier, product, or service or promote the services of a specific financial institution.

7.  <u>INFORMATION REQUIREMENTS</u>

The reporting requirements concerning the suspension or withdrawal of solicitation privileges have been assigned Report Control Symbol (RCS) DD-P&R(Q)2182 in accordance with DoD 8910.1-M (Reference (t)).

6.7. Educational Programs

6.7.1.  The Military Departments shall develop and disseminate information and provide educational programs for members of the Military Services on their personal financial affairs, including such subjects as insurance, Government benefits, savings, budgeting, and other financial education and assistance requirements outlined in DoD Instruction 1342.27 (Reference (p)).  The Military Departments shall ensure that all instructors are qualified as appropriate for the subject matter presented.  The services of representatives of authorized on-base banks and credit unions may be used for this purpose.  Under no circumstances shall commercial agents, including representatives of loan, finance, insurance, or investment companies, be used for this purpose. Presentations shall only be conducted at the express request of the installation commander.

6.7.2.  The Military Departments shall also make qualified personnel and facilities available for individual counseling on loans and consumer credit transactions in order to encourage thrift and financial responsibility and promote a better understanding of the wise use of credit, as prescribed in DoD 7000.14-R, Volume 5, Chapter 34 (Reference (q)).

6.7.3.  The Military Departments shall encourage military members to seek advice from a legal assistance officer, the installation financial counselor, their own lawyer, or a financial counselor, before making a substantial loan or credit commitment.

6.7.4.  Each Military Department shall provide advice and guidance to DoD personnel who have a complaint under Reference (m) or who allege a criminal violation of its provisions, including referral to the appropriate regulatory agency for processing of the complaint.

6.7.5.  Banks and credit unions operating on DoD installations are required to provide financial counseling services as an integral part of their financial services offerings under DoD Directive 1000.11 (Reference (r)).  Representatives of and materials provided by authorized banks and/or credit unions located on military installations may be used to provide the educational programs and information required by this Instruction subject to the following conditions:

6.7.5.1.  If the bank or credit union operating on a DoD installation sells insurance or securities or has any affiliation with a company that sells or markets insurance or other financial products, the installation commander shall consider that company's history of complying with this Instruction before authorizing the on-base financial institution to provide financial education.

6.7.5.2.  All prospective educators must agree to use appropriate disclaimers in their presentations and on their other educational materials.  The disclaimers must clearly indicate that they do not endorse or favor any commercial supplier, product, or service, or promote the services of a specific financial institution.

<http://www.commanderspage.com>. If warranted, the installation commander may recommend to the Military Department concerned that the action taken be extended to other DoD installations. The Military Department may extend the action to other military installations in the Military Department. The PDUSD(P&R), following consultation with the Military Department concerned, may order the action extended to other Military Departments.

6.5.7. All suspensions or withdrawals of privileges may be permanent or for a set period of time. If for a set period, when that period expires, the individual or company may reapply for permission to solicit through the installation commander or Military Department originally imposing the restriction. The installation commander or Military Department reinstating permission to solicit shall notify the Office of the PDUSD(P&R) and appropriate State and Federal regulatory agencies when such suspensions or withdrawals are lifted.

6.5.8. The Secretaries of the Military Departments may direct the Armed Forces Disciplinary Control Boards in all geographical areas in which the grounds for withdrawal action have occurred to consider all applicable information and take action the Boards deem appropriate.

6.5.9. Nothing in this Instruction limits the authority of the installation commander or other appropriate authority from requesting or instituting other administrative and/or criminal action against any person, including those who violate the conditions and restrictions upon which installation entry is authorized.

6.6. Advertising and Commercial Sponsorship

6.6.1. The Department of Defense expects voluntary observance of the highest business ethics by commercial enterprises soliciting DoD personnel through advertisements in unofficial military publications when describing goods, services, commodities, and the terms of the sale (including guarantees, warranties, and the like).

6.6.2. The advertising of credit terms shall conform to the provisions of Reference (l) as implemented by Federal Reserve Board Regulation Z according to 12 CFR Section 226 (Reference (n)).

6.6.3. Solicitors may provide commercial sponsorship to DoD Morale, Welfare and Recreation programs or events according to Reference (i). However, sponsorship may not be used as a means to obtain personal contact information for any participant at these events without written permission from the individual participant. In addition, commercial sponsors may not use sponsorship to advertise products and/or services not specifically agreed to in the sponsorship agreement.

6.6.4. The installation commander may permit organizations to display sales literature in designated locations subject to command policies. In accordance with DoD 7000.14-R, Volume 7(a) (Reference (o)), distribution of competitive literature or forms by off-base banks and/or credit unions is prohibited on installations where an authorized

6.5.1.6.  The possession of, and any attempt to obtain supplies of direct deposit forms, or any other form or device used by Military Departments to direct a Service member's pay to a third party, or possession or use of facsimiles thereof.  This includes using or assisting in using a Service member's "MyPay" account or other similar internet medium for the purpose of establishing a direct deposit for the purchase of insurance or other investment product.

6.5.1.7.  Failure to incorporate and abide by the Standards of Fairness policies contained in DoD Instruction 1344.9 (Reference (m)).

6.5.2.  The installation commander may determine that circumstances dictate the immediate suspension of solicitation privileges while an investigation is conducted. Upon suspending solicitation privileges, the commander shall promptly inform the agent and the company the agent represents, in writing.

6.5.3.  In suspending or withdrawing solicitation privileges, the installation commander shall determine whether to limit such action to the agent alone or extend it to the company the agent represents.  This decision shall be based on the circumstances of the particular case, including, but not limited to, the nature of the violations, frequency of violations, the extent to which other agents of the company have engaged in such practices, and any other matters tending to show the culpability of an individual and the company.

6.5.4.  If the investigation determines an agent or company does not possess a valid license or the agent, company, or product has failed to meet other State or Federal regulatory requirements, the installation commander shall immediately notify the appropriate regulatory authorities.

6.5.5.  In a withdrawal action, the commander shall allow the individual or company an opportunity to show cause as to why the action should not be taken.  To "show cause" means an opportunity must be given for the aggrieved party to present facts on an informal basis for the consideration of the installation commander or the commander's designee.  The installation commander shall make a final decision regarding withdrawal based upon the entire record in each case.  Installation commanders shall report concerns or complaints involving the quality or suitability of financial products or concerns or complaints involving marketing methods used to sell these products to the appropriate State and Federal regulatory authorities.  Also, installation commanders shall report any suspension or withdrawal of insurance or securities products solicitation privileges to the appropriate State or Federal regulatory authorities.

6.5.6.  The installation commander shall inform the Military Department concerned of any denial, suspension, withdrawal, or reinstatement of an agent or company's solicitation privileges and the Military Department shall inform the Office of the PDUSD(P&R), which will maintain a list of insurance and financial product companies and agents currently barred, banned, or otherwise limited from soliciting on any or all DoD installations.  This list may be viewed at www.commanderspage.com

6.4.12.  Using any portion of installation facilities, including quarters, as a showroom or store for the sale of goods or services, except as specifically authorized by DoD Directive 1330.17 and DoD Instructions 1015.10, 1000.15, and 1330.21 (References (h), (i), (j), and (k)).  This does not apply to normal home enterprises that comply with applicable State and local laws and installation rules.

6.4.13.  Soliciting door to door or without an appointment.

6.4.14.  Unauthorized advertising of addresses or telephone numbers used in personal commercial solicitation activities conducted on the installation, or the use of official positions, titles, or organization names, for the purpose of personal commercial solicitation, except as authorized in Reference (g).  Military grade and military service as part of an individual's name (e.g., Captain Smith, U.S. Marine Corps) may be used in the same manner as conventional titles, such as "Mr.", "Mrs.", or "Honorable."

6.4.15.  Contacting DoD personnel by calling a government telephone, faxing to a government fax machine, or by sending e-mail to a government computer, unless a pre-existing relationship (i.e., the DoD member is a current client or requested to be contacted) exists between the parties and the DoD member has not asked for contact to be terminated.

6.5.  Denial, Suspension, and Withdrawal of Installation Solicitation Privileges

6.5.1.  The installation commander shall deny, suspend, or withdraw permission for a company and its agents to conduct commercial activities on the base if such action is in the best interests of the command.  The grounds for taking these actions may include, but are not limited to, the following:

6.5.1.1.  Failure to meet the licensing and other regulatory requirements prescribed in this Instruction, or violations of the State law where the installation is located.  Commanders will request that appropriate State officials determine whether a company or agent violated State law.

6.5.1.2.  Commission of any of the practices prohibited in paragraphs 6.2.6 and 6.4.

6.5.1.3.  Substantiated complaints and/or adverse reports regarding the quality of goods, services, and/or commodities, and the manner in which they are offered for sale.

6.5.1.4.  Knowing and willful violations of Pub. L. 90-321, "Truth in Lending Act" (Reference (l)).

6.5.1.5.  Personal misconduct by a company's agent or representative while on the installation.

6.4. <u>Prohibited Practices</u>. The following commercial solicitation practices shall be prohibited on all DoD installations:

6.4.1. Solicitation of recruits, trainees, and transient personnel in a group setting or "mass" audience and solicitation of any DoD personnel in a "captive" audience where attendance is not voluntary.

6.4.2. Making appointments with or soliciting military or DoD civilian personnel during their normally scheduled duty hours.

6.4.3. Soliciting in barracks, day rooms, unit areas, transient personnel housing, or other areas where the installation commander has prohibited solicitation.

6.4.4. Use of official military identification cards or DoD vehicle decals by active duty, retired, or reserve members of the Military Services to gain access to DoD installations for the purpose of soliciting. When entering the installation for the purpose of solicitation, solicitors with military identification cards and/or DoD vehicle decals must present documentation issued by the installation authorizing solicitation.

6.4.5. Procuring, attempting to procure, supplying, or attempting to supply non-public listings of DoD personnel for purposes of commercial solicitation, except for releases made in accordance with DoD Directive 5400.7 (Reference (f)).

6.4.6. Offering unfair, improper, or deceptive inducements to purchase or trade.

6.4.7. Using promotional incentives to facilitate transactions or to eliminate competition.

6.4.8. Using manipulative, deceptive, or fraudulent devices, schemes, or artifices, including misleading advertising and sales literature. All financial products, which contain insurance features, must clearly explain the insurance features of those products.

6.4.9. Using oral or written representations to suggest or give the appearance that the Department of Defense sponsors or endorses any particular company, its agents, or the goods, services, and commodities it sells.

6.4.10. DoD personnel making personal commercial solicitations or sales to DoD personnel who are junior in rank or grade, or to the family members of such personnel, except as authorized in Section 2-205 and 5-409 of the Joint Ethics Regulation, DoD 5500.7-R (Reference (g)).

6.4.11. Entering into any unauthorized or restricted area.

6.2.6. Installation commanders shall make disinterested third-party insurance counseling available to DoD personnel desiring counseling. Financial counselors shall encourage DoD personnel to seek legal assistance or other advice from a disinterested third-party before entering a contract for insurance or securities.

6.2.7. In addition to the solicitation prohibitions contained in paragraph 6.4., the DoD Components shall prohibit the following:

6.2.7.1. The use of DoD personnel representing any insurer, dealing directly or indirectly on behalf of any insurer or any recognized representative of any insurer on the installation, or as an agent or in any official or business capacity with or without compensation.

6.2.7.2. The use of an agent as a participant in any Military Service-sponsored education or orientation program.

6.2.7.3. The designation of any agent or the use by any agent of titles (for example, "Battalion Insurance Counselor," "Unit Insurance Advisor," "Servicemen's Group Life Insurance Conversion Consultant,") that in any manner, states, or implies any type of endorsement from the U.S. Government, the Armed Forces, or any State or Federal agency or government entity.

6.2.7.4. The use of desk space for interviews for other than a specific prearranged appointment. During such appointment, the agent shall not be permitted to display desk signs or other materials announcing his or her name or company affiliation.

6.2.7.5. The use of an installation "daily bulletin," marquee, newsletter, webpage, or other official notice to announce the presence of an agent and/or his or her availability.

6.3. Supervision of On-Base Commercial Activities

6.3.1. All pertinent installation regulations shall be posted in a place easily accessible to those conducting and receiving personal commercial solicitation on the installation.

6.3.2. The installation commander shall make available a copy of installation regulations to anyone conducting on-base commercial solicitation activities warning that failure to follow the regulations may result in the loss of solicitation privileges.

6.3.3. The installation commander, or designated representative, shall inquire into any alleged violations of this Instruction or of any questionable solicitation practices. The DD Form 2885, Personal Commercial Solicitation Evaluation, at Enclosure 5 is provided as a means to supervise solicitation activities on the installation. DD Form 2885 is available at the Department of Defense Forms Web site under DefenseLink, Publications.

6.1.1.3. The solicitor agrees to provide each person solicited the personal commercial solicitation evaluation included in Enclosure 5 during the initial appointment. The person being solicited is not required to complete the evaluation. However, completed evaluations should be sent by the person who was solicited to the office designated by the installation commander on the back of the evaluation form.

6.1.1.4. The solicitor agrees to provide DoD personnel with a written reminder, prior to their making a financial commitment, that free legal advice is available from the Office of the Staff Judge Advocate.

6.1.2. Solicitors on overseas installations shall be required to observe, in addition to the above, the applicable laws of the host country. Upon request, the solicitor must present documentary evidence to the installation commander that the company they represent, and its agents, meet the applicable licensing requirements of the host country.

6.2. Life Insurance Products and Securities

6.2.1. Life insurance products and securities offered and sold to DoD personnel shall meet the prerequisites described in Enclosure 3 of this Instruction.

6.2.2. Installation commanders may permit insurers and their agents to solicit on DoD installations if the requirements of paragraph 6.1. are met and if they are licensed under the insurance laws of the State where the installation is located. Commanders will ensure the agent's license status and complaint history are checked with the appropriate State or Federal regulators before granting permission to solicit on the installation.

6.2.3. In addition, before approving insurance and financial product agents' requests for permission to solicit, commanders shall review the list of agents and companies currently barred, banned, or limited from soliciting on any or all DoD installations. This list may be viewed via the *Personal Commercial Solicitation Report* "quick link" at www.commanderspage.com <http://www.commanderspage.com>. In overseas areas, the DoD Components shall limit insurance solicitation to those insurers registered under the provisions of Enclosure 4 of this Instruction.

6.2.4. The conduct of all insurance business on DoD installations shall be by specific appointment. When establishing the appointment, insurance agents shall identify themselves to the prospective purchaser as an agent for a specific insurer.

6.2.5. Installation commanders shall designate areas where interviews by appointment may be conducted. The opportunity to conduct scheduled interviews shall be extended to all solicitors on an equitable basis. Where space and other considerations limit the number of agents using the interviewing area, the installation commander may develop and publish local policy consistent with this concept.

## 5. RESPONSIBILITIES

5.1. The <u>Principal Deputy Under Secretary of Defense for Personnel and Readiness</u> (PDUSD(P&R)), under the Under Secretary of Defense for Personnel and Readiness, shall:

5.1.1. Identify and publish policies and procedures governing personal commercial solicitation on DoD installations consistent with the policy set forth in this Instruction.

5.1.2.    Maintain and make available to installation commanders and appropriate Federal
personnel the current master file of all individual agents, dealers, and companies who have their privileges withdrawn at any DoD installation.

5.1.3. Develop and maintain a list of all State Insurance Commissioners' points of contact for DoD matters and forward this list to the Military Services.

5.2.    The <u>Heads of the DoD Components</u> shall:

5.2.1. Ensure implementation of this Instruction and compliance with its provisions.

5.2.2. Require installations under their authority to report each instance of withdrawal of commercial solicitation privileges.

5.2.3. Submit lists of all individuals and companies who have had their commercial solicitation privileges withdrawn at installations under their authority to the PDUSD(P&R) in accordance with this Instruction.

## 6. PROCEDURES

6.1. <u>General</u>

6.1.1. No person has authority to enter a DoD installation to transact personal commercial solicitation as a matter of right. Personal commercial solicitation may be permitted only if the following requirements are met:

6.1.1.1. The solicitor is duly licensed under applicable Federal, State, or municipal laws and has complied with installation regulations.

6.1.1.2. A specific appointment has been made for each meeting with the individual concerned. Each meeting is conducted only in family quarters or in other areas designated by the installation commander.

8. EFFECTIVE DATE

This Instruction is effective immediately.

David S.C. Chu
**Under Secretary of Defense
(Personnel and Readiness**


Enclosures - 5
  E1. References, continued ◇
  E2. Definitions ◇
  E3. Life Insurance Products and Securities ◇
  E4. The Overseas Life Insurance Registration Program
      E5. Personal Commercial Solicitation EvaluationE1. ENCLOSURE 1

REFERENCES, continued


(e)  Joint Publication 1-02, "DoD Dictionary of Military and Associated Terms"
(f)  DoD Directive 5400.07 <..\pdf2\d54007p.pdf>, "Freedom of Information Act (FOIA) Program,"
     October 28, 2005
(g)  DoD 5500.7-R, "Joint Ethics Regulation (JER)," August 30, 1993
(h)  DoD Directive 1330.17 <http://www.dtic.mil/whs/directives/corres/pdf/d133017_031387/d133017p.pdf>, "Military Commissaries," March 13, 1987
(i)  DoD Instruction 1015.10
     <http://www.dtic.mil/whs/directives/corres/html/101510.htm>, "Programs for Military Morale, Welfare and Recreation (MWR)," November 3, 1995
(j)  DoD Instruction 1000.15
     <http://www.dtic.mil/whs/directives/corres/html/100015.htm>, "Private Organizations on DoD Installations," December 20, 2005
(k)  DoD Instruction 1330.
     <http://www.dtic.mil/whs/directives/corres/html/13309.htm>21, "Armed Services Exchange Regulations,"
     July 14, 2005
(l)  Section 1601 of title 15, United States Code <http://uscode.house.gov/uscode-cgi/fastweb.exe?getdoc+uscview+t13t16+1737+1++%28%29%20%20AND%20%28%

8. EFFECTIVE DATE

This Instruction is effective immediately.

David S.C. Chu
**Under Secretary of Defense
(Personnel and Readiness**

Enclosures - 5
    E1. References, continued
    E2. Definitions
    E3. Life Insurance Products and Securities
    E4. The Overseas Life Insurance Registration Program
    E5. Personal Commercial Solicitation Evaluation

# USCGRTC REGULATIONS

# EXHIBITS (A-1) THRU (A-10)

-1)

**U.S. Department
of Transportation**

**United States
Coast Guard**

Commanding Officer
U. S. Coast Guard
Reserve Training Center

Yo____wn, VA  23690-5000
Staff Symbol: cl
Phone: (757) 898-2374
FAX: (757) 898-2329

5720
August 2, 1999

Trans World Assurance Company
Attn:  Charles B. Royals
885 South El Camino Real
San Mateo, CA 94402

Dear Mr. Royals:

Your June 29, 1999 request for permission to solicit on board Coast Guard Reserve
Training Center is denied.  Further, prior permission for your agent, Mr. Schwaner, to solicit on
board, granted in my January 28, 1999 letter, is revoked.  Trans World Assurance and its agents
are prohibited from engaging in commercial solicitation on board Reserve Training Center for a
period of one year from the date of this letter.  You may reapply for permission upon completion
of that period.

The basis for this action is receipt of recent reports that Trans World Assurance has
engaged, and continues to engage in, misleading and/or deceptive practices toward military
members in California and Washington that violate the provisions of Commercial Solicitation
Controls at Coast Guard Units (COMDTINST 1740.2G).

I find there is good and sufficient reason under paragraph 6.a of COMDTINST 1740.2G
for this action, specifically under subparagraphs (2), (3), and (4).

Under COMDTINST 1740.2G, you have the opportunity to show cause why this
denial/revocation should not have been issued.  You may respond in writing to the above
address.

Sincerely,

K. E. LUNDAY
Lieutenant Commander, U. S. Coast Guard
Legal Officer
By direction of the Commanding Officer

Encl:  Commercial Solicitation Controls at Coast Guard Units (COMDTINST 1740.2G)

(E-2)

U.S. Department
of Transportation

**United States
Coast Guard**

# Memorandum

| | | | |
|---|---|---|---|
| Subject: | REVOCATION/DENIAL OF PERMISSION FOR TRANS WORLD ASSURANCE TO SOLICIT ON BOARD | Date: | 2 Aug 99 5720 |
| | | Reply to Attn. of: | cl |
| From: | cl | | LCDR Lunday x2376 |
| To: | cx | | |

1. As we discussed last Friday, I recommend (and unless otherwise directed) will issue the attached letter revoking and denying permission for Trans World Assurance (TrWA) and its agents to solicit on board RTC for one year.

2. RTC granted Mr. Schwaner permission to solicit on 28 Jan 99 for one year. I received a letter from (TrWA) dated 29 Jun 99 requesting renewal of permission for Mr. Schwaner to solicit on board.

3. MLCPAC recently reported that three Coast Guard members filed a class action lawsuit against TrWA in California for misleading and deceptive trade practices. TrWA is selling a product called Flex Dollar Builder that is advertised as a savings/investment plan but is actually life insurance. Clients are led to believe that 100% of funds contributed go toward savings or investment, when in reality only a portion of the funds are saved, the rest going toward insurance premiums. Additionally, TrWA has not stopped allotments in many cases when the client has cancelled the plan.

4. I spoke to the U. S. Attorney's Office in Seattle. Dept. of Justice filed a civil suit against TrWA for misrepresentation in Apr 98, based on a three-year investigation into the company by Defense Criminal Investigative Service. The U. S. settled with TrWA in Dec 98, although TrWA still has not met the conditions of the settlement. Finally, the U. S. Attorney's Office reported that Ohio and Florida were currently conducting investigations against TrWA and its sister company, American Fidelity Insurance.

5. In my opinion the above information provides "good and sufficient reason" required for revoking solicitation permission per COMDTINST 1740.2G. TrWA has the opportunity to show cause why the determination should not be made.

K. E. LUNDAY

(E-4)

TO:                                           AUG.20,1999
    COMMANDING OFFICER
    U.S.COAST GUARD
    RESERVE TRAINING CENTER
    YORKTOWN,VA.23690-5000

FROM:
    JACK A.SCHWANER
    816 CHATSWORTH DR.
    NEWPORT NEWS VA.23601.

Dear Sir,


       I was recently informed verbally and followed up by
letter dated 2 Aug,1999 by Lt.Cdr.K.E.Lunday addressed to
Trans World Assoc.Co.stating their privilege to solicit on
on board USCGRTC denied,because of the Company has engage in
and continue to engage in misleading and/or deceptive practices
toward Military members in CALIFORNIA AND Washington.
       Their problems is secondary to mine,In the same letter
it states that my letter granted me the privilege to solicit
for the Military Benefit Assoc.dated Jan.28,1999 was revoked.
       In this letter is a list voilations committed on board
USCGRTC,if any of these allegations may pertain to me,I will
response accordingly which is complicated because all are vague
and no specific alleged charges are included,so I will do my
best to identify the meaning located in (COMDTINST 1740-3G sub-
paragraphs (2),(3),(4) and 5.C as indicated by Lt Cdr.Lunday.
       6.A-DENIAL AND REVOCATION OF ON BOARD SOLICIATION.
A UNIT COMMANDING OFFICER SHALL DENY OR REVOKE PERMISSION FOR
A COMPANY AND ITS AGENTS TO COMDUCT COMMERCIAL ACTIVITIES AT
THE UNIT FOR A GOOD AND SUFFICIENT REASON,AND NOT LIMITED TO:

       6.A.(2) COMMISSION OF ANY OF THE SOLICTATION PROHIBITED
IN PARAGRAPH 5.C.

       6.A.(3) SUBSTANTIATED COMPLAINTS OR ADVERVSE REPORTS
REGARDING,EITHER THEIR QUALITY OF GOODS,SERVICES OR COMMODITIES.
THE MANNER IN WHICH THEY ARE OFFERED FOR SALE,OR THE METHOD
AND TERM OF FINNACING.

       6.A.(4)  KNOWING AND WILLFUL VOILATIONS OF THE COMSUMER
CREDIT LAWS IN 15 U.S.C.15 1601-1693(R).

---

       IF THESE ARE THE FINDINGS:PERTAINING TO (COMDTINST
1740.2G) I WILL ANSWER EACH PARAGRAPHS IN THE SAME ORDER AS
STATED ABOVE.


            Page 1 of 3

(A-2)



**DEPARTMENT OF TRANSPORTATION**
**UNITED STATES COAST GUARD**

MAILING ADDRESS
COMMANDING OFFICER
U. S. COAST GUARD RESERVE
TRAINING CENTER
YORKTOWN, VA. 23690
PHONE:

1700
18 January 1982

American Fidelity Life Insurance Company
Attn: Mr. R. E. Mauch
Administrative Vice President
4060 Barrancas Avenue
Pensacola, Florida 32507

                              Re:  Jack A. Schwaner, Jr.

Dear Mr. Mauch:

Mr. Jack A. Schwaner, Jr. is hereby granted permission to conduct business as
representative of American Fidelity Insurance Company within the boundaries
of the U. S. Coast Guard Reserve Training Center, Yorktown, Virginia subject
to the following restrictions.

He may not make general solicitation for customers.  He may, however make
specific prearranged appointments aboard the Training Center outside of our
working hours, 8:00 AM to 4:30 PM.

He may not schedule appointments or conduct business within the living
quarters area of barracks aboard this center.  He may use areas such as the
Snack Bar, and other recreation areas for the purpose of conducting business
with the Coast Guard personnel.

He may not infer or imply that his presence aboard the station expresses or
denotes any official U. S. Coast Guard support of your company's insurance
programs.

Please have him present a copy of this letter of authorization to our main
gate when entering the station in order to be given a Visitor's Pass.  His
automobile must carry State required liability insurance.

Violation or abuse of these privileges will result in the cancellation of
this authorization.  In addition, this authorization may be cancelled at any
time depending upon the requirements of the service.

                              Sincerely,

                              J. P. WIESE
                              Lieutenant Commander
                              U. S. Coast Guard
                              Legal Officer
                              By direction of the Commanding Officer

U.S. Department
of Transportation
United States
Coast Guard

Commanding Officer
United States Coast Guard

Reserve Training Center
Yorktown VA 23690
Staff Symbol: (cl)
Phone: (804) 898-2374

RTCINST 1740.1C
8 OCT 1989

RESERVE TRAINING CENTER INSTRUCTION 1740.1C

Subj: Commercial Solicitation Controls

Ref:    (a) Article 7-1-4, Coast Guard Regulations Manual,
            COMDTINST M5000.3
        (b) Commercial Solicitation Controls On Board
            Installations of the Coast Guard, COMDTINST 1740.2(Series)

1. PURPOSE. This instruction sets forth local policy regarding solicitation
of Coast Guard personnel for personal business on board Reserve Training
Center Yorktown. These regulations are in addition to references (a) and
(b).

2. DIRECTIVES AFFECTED. RTCINST 1740.1B is hereby cancelled.

3. ACTION.

   a. Persons may not solicit for the sale of insurance, mutual funds,
      investment plans, securities, and other commodities on board Reserve
      Training Center Yorktown unless they have been authorized in writing
      by the Commanding Officer. Applications for authorization shall
      conform with reference (b) and shall include a statement signed by
      each agent that the agent understands reference (b) and this
      instruction and that any violation of the instructions could result in
      the withdrawal of the privileges for the agent and the company
      represented. Authorizations shall be effective for one year unless
      sooner revoked by the Commanding Officer. The aforementioned
      authorizations and statements of understanding shall be prepared by
      the Legal Office.

   b. The solicitation of military personnel and their dependents shall be
      on an individual basis by appointment. Appointments may be conducted
      in offices, snack bar, and lounge areas of the barracks buildings
      outside of normal work hours. Appointments may not be conducted in
      berthing areas of any barracks buildings.

   c. The authority to issue and revoke authorizations to solicit the sale
      of insurance, mutual funds, investment plans, securities, and other
      commodities is delegated to the Legal Officer.

4. EFFECTIVE DATE. This instruction is effective upon receipt.

DOUGLAS H. TEESON

(A-4)        2:50p    R. Michael Mc Bride        619-702-0673        P. 4



U.S. Department
of Transportation
United States
Coast Guard

Commanding Officer
U.S. Coast Guard
Reserve Training Center

Yorktown, VA 23690-5000
Staff Symbol: cl
Phone: (757) 898-2374

RTCINST 1740.1E
SEP 29 1999

RESERVE TRAINING CENTER INSTRUCTION 1740.1E

Subj:   COMMERCIAL SOLICITATION CONTROLS

Ref:    (a) Coast Guard Regulations Manual, COMDTINST M5000.3B, Article 7-1-4
        (b) Commercial Solicitation Controls On Board Installations of the Coast Guard,
            COMDTINST 1740.2G
        (c) Personnel Manual, COMDTINST M1000.6 (series), ch.16.E

1.  <u>PURPOSE.</u>  This instruction sets forth policy regarding solicitation of Coast Guard personnel
    for personal business on board Reserve Training Center (RTC).  These regulations are in
    addition to references (a) through (c).

2.  <u>ACTION.</u>

    a.  Persons may not solicit for the sale of insurance, mutual funds, investment plans,
        securities, and other commodities on board RTC unless they have been authorized in
        writing by the Commanding Officer.  Applications for authorizations shall conform
        with reference (b) and shall include a statement signed by each agent that the agent
        understands reference (b) and this instruction.  Any violation to these provisions could
        result in the withdrawal of the privileges for the agent and the company represented.
        Authorizations shall be effective for one year unless revoked sooner by the
        Commanding Officer.  These authorizations and statements of understanding shall be
        prepared by the Legal Officer.

    b.  Companies or agents shall not directly or indirectly encourage or request persons, such
        as Coast Guard employees, to distribute commercial literature, business materials, or
        other promotional information on behalf of a company or agent aboard RTC.  Such
        practices are strictly prohibited in accordance with reference (c), regardless of whether
        compensation is provided.

    c.  The solicitation of military personnel and their dependents shall be on an individual
        basis, by scheduled appointment only.  A "scheduled appointment" is a pre-arranged
        meeting with a named individual at a specific time for the purpose of conducting
        commercial solicitation.  Agents authorized to solicit on board may not enter RTC for
        the purpose of scheduling appointments or delivering materials without an appointment
        and shall not loiter prior to or after scheduled appointments.

ɔOp    R. Michael Mc Bride          619-702-0673          EXHIB # 16

RTCINST 1740.2E
FE  29 1999

d.  All agents arriving at RTC must first personally check in with the Officer of the Day (OOD) and provide a written list of scheduled appointments for that visit.

e.  Scheduled appointments may be conducted in offices and lounge areas of the barracks buildings outside of normal work hours.  Scheduled appointments may not be conducted in berthing areas of any buildings.

f.  Some agents may have separate authority to enter RTC for purposes unrelated to commercial solicitation (e.g., retired military person with exchange privileges).  Persons with such separate authority to enter RTC shall not use it to bypass the requirements of this instruction in order to conduct commercial solicitation.

g.  The authority to issue and revoke authorizations to solicit the sale of insurance, mutual funds, investment plans, securities, and other commodities is delegated to the Legal Officer.

3.  DIRECTIVES AFFECTED.  RTCINST 1740.1D is cancelled.

J. S. BURHOE
Acting

Encl:  (1) Certification of understanding

(A-5)

**U.S. Department
of Transportation**

**United States
Coast Guard**

# Memorandum

| | |
|---|---|
| Subject: **NOTICE OF REGISTRATION OF AGENT** | Date: **3 Nov 93**<br>**1741** |
| | Reply to: **cla** |
| From: **cl** | Attn. of: **YN2 Campbell**<br>**xt 2374** |

To: **Distribution**

Ref: (a) RTCINST 1740.1C
     (b) COMDTINST 1740.2G

1.  The bearer, Jack A. Schwaner, representing United Services
Planning Association, Inc., and the Armed Forces Benefit
Association, registered with the Commanding Officer, Coast
Guard Reserve Training Center Yorktown, to solicit sales of
the policies and programs held in the legal office, and has
filed qualification statements in accordance with references
(a) and (b) for solicitation within the Reserve Training
Center.

2.  The bearer has been furnished a copy of references (a) and
(b) and has signified his understanding thereof and the fact
that non-compliance will be grounds for revoking his
registration.

3.  Authorization to come aboard Coast Gu... Reserve Training
Center may be granted, denied or removed  hin the discretion
of the Commanding Officer in accordance w..  references (a)
and (b).

4.  The solicitation of military personnel and their
dependents shall be on an individual basis by appointment.
Appointments may be conducted in the library, offices, snack
bar, and lounge areas of the barracks buildings outside of
normal work hours.  Appointments may not be conducted in
berthing areas of any barracks buildings.

5.  This registration shall remain in effect for a period of
one year from the date of this memorandum.

R. E. KORROCH

Dist: **t, a, e, k, x, f, cea**

R. Michael Mc Bride          619-702-0673          P.

(A-6)



U.S. Department
of Transportation

**United States
Coast Guard**

Commanding Officer
U.S. Coast Guard
Reserve Training Center

Yorktown, VA 23690-5000
Staff Symbol: cl
Phone: (757) 898-2374

RTCINST 1740.1E
SEP 29 1999

RESERVE TRAINING CENTER INSTRUCTION 1740.1E

Subj:    COMMERCIAL SOLICITATION CONTROLS

Ref:     (a) Coast Guard Regulations Manual, COMDTINST M5000.3B, Article 7-1-4
         (b) Commercial Solicitation Controls On Board Installations of the Coast Guard,
             COMDTINST 1740.2G
         (c) Personnel Manual, COMDTINST M1000.6 (series), ch.16.E

1.  <u>PURPOSE.</u> This instruction sets forth policy regarding solicitation of Coast Guard personnel
    for personal business on board Reserve Training Center (RTC). These regulations are in
    addition to references (a) through (c).

2.  <u>ACTION.</u>

    a.  Persons may not solicit for the sale of insurance, mutual funds, investment plans,
        securities, and other commodities on board RTC unless they have been authorized in
        writing by the Commanding Officer. Applications for authorizations shall conform
        with reference (b) and shall include a statement signed by each agent that the agent
        understands reference (b) and this instruction. Any violation to these provisions could
        result in the withdrawal of the privileges for the agent and the company represented.
        Authorizations shall be effective for one year unless revoked sooner by the
        Commanding Officer. These authorizations and statements of understanding shall be
        prepared by the Legal Officer.

    b.  Companies or agents shall not directly or indirectly encourage or request persons, such
        as Coast Guard employees, to distribute commercial literature, business materials, or
        other promotional information on behalf of a company or agent aboard RTC. Such
        practices are strictly prohibited in accordance with reference (c), regardless of whether
        compensation is provided.

    c.  The solicitation of military personnel and their dependents shall be on an individual
        basis, by scheduled appointment only. A "scheduled appointment" is a pre-arranged
        meeting with a named individual at a specific time for the purpose of conducting
        commercial solicitation. Agents authorized to solicit on board may not enter RTC for
        the purpose of scheduling appointments or delivering materials without an appointment
        and shall not loiter prior to or after scheduled appointments.

2:50p    R. Michael Mc Bride         619-702-0673

EXHIB #_16_

RTCINST 1740.2E
SEP 29 1999

d. All agents arriving at RTC must first personally check in with the Officer of the Day (OOD) and provide a written list of scheduled appointments for that visit.

e. Scheduled appointments may be conducted in offices and lounge areas of the barracks buildings outside of normal work hours. Scheduled appointments may not be conducted in berthing areas of any buildings.

f. Some agents may have separate authority to enter RTC for purposes unrelated to commercial solicitation (e.g., retired military person with exchange privileges). Persons with such separate authority to enter RTC shall not use it to bypass the requirements of this instruction in order to conduct commercial solicitation.

g. The authority to issue and revoke authorizations to solicit the sale of insurance, mutual funds, investment plans, securities, and other commodities is delegated to the Legal Officer.

3. <u>DIRECTIVES AFFECTED.</u> RTCINST 1740.1D is cancelled.

J. S. BURHOE
Acting

Encl: (1) Certification of understanding

U.S. Department
of Transportation

**United States
Coast Guard**

(A-7)

# Memorandum

| | | | |
|---|---|---|---|
| Subject: | RECOMMENDED CHANGE TO RTCINST 1740.1E | Date: | 10 Dec 99 |
| | | | 5720 |

Reply to
Attn. of:    cl

From:    cl

LCDR Lunday
x2376

To:    CX

1. Enclosed is a draft of TRACEN YORKTOWNINST 1740.1F for the CO's signature. Based on our discussion yesterday concerning the importance of safeguarding the Cyber Café environment, the instruction is revised to specifically prohibit commercial solicitation in or in the vicinity of the Cyber Café. This additional restriction on commercial solicitation is reasonable under the circumstances per COMDTINST 1740.2G (Commercial Solicitation Controls at Coast Guard Units).

2. Also attached is a letter I hand delivered to Mr. Schwaner on base last evening, warning him of non-compliance with the instruction (he failed to check in with the OOD as required on 8 Dec 99). I spoke with Mr. Schwaner at length and reinforced the consequences of failing to comply with the requirements. Mr. Schwaner asserted that he felt he was being treated unfairly and that the Training Center's rules and enforcement policies were unnecessarily strict compared to other military installations in the area. I repeated the requirements and the command position on enforcing them equally on all commercial solicitors.

3. I do not recommend revoking Mr. Schwaner's solicitation privilege based on this incident; however, I will continue to closely monitor his activities.

4. Currently, the following persons are authorized to conduct commercial solicitation on the base:

| Name | Company | Expiration |
|---|---|---|
| Jack Schwaner | Lincoln Financial Group | 28 Jan 99 |
| | and Trans World Assurance | 8 Dec 00 |
| Mark A. Brilliant | USPA/IRA | 23 Jun 00 |
| Charles F. Carmichael | USPA/IRA | 23 Jun 00 |
| Ronald R. Dorenbush | USPA/IRA | 23 Jun 00 |
| Jeffrey M. Dunham | USPA/IRA | 23 Jun 00 |
| Mark D. Moncure | USPA/IRA | 23 Jun 00 |

(1-0)

**U.S. Department
of Transportation**

**United States
Coast Guard**

Commanding Officer
U.S. Coast Guard
Training Center Yorktown

Yorktown, VA 23690-5000
Staff Symbol: cl
Phone: (757) 898-2374

TRACEN YORKTOWNINST 1740.1F

DEC 1 3 1999

TRAINING CENTER YORKTOWN INSTRUCTION 1740.1F

Subj:   COMMERCIAL SOLICITATION CONTROLS

Ref:    (a) Coast Guard Regulations Manual, COMDTINST M5000.3B, Article 7-1-4
        (b) Commercial Solicitation Controls at Coast Guard Units, COMDTINST 1740.2G
        (c) Personnel Manual, COMDTINST M1000.6 (series), ch.16.E

1. <u>PURPOSE.</u> This instruction sets forth policy regarding solicitation of Coast Guard personnel for personal business on board Training Center Yorktown. These regulations are in addition to references (a) through (c).

2. <u>ACTION.</u>

   a. Persons may not solicit for the sale of insurance, mutual funds, investment plans, securities, and other commodities on board the Training Center unless they have been authorized in writing by the Commanding Officer. Applications for authorizations shall conform with reference (b) and shall include a statement signed by each agent that the agent understands reference (b) and this instruction. Any violation to these provisions could result in the withdrawal of the privileges for the agent and the company represented. Authorizations shall be effective for one year unless revoked sooner by the Commanding Officer. These authorizations and statements of understanding shall be prepared by the Legal Officer.

   b. Companies or agents shall not directly or indirectly encourage or request persons, such as Coast Guard employees, to distribute commercial literature, business materials, or other promotional information on behalf of a company or agent aboard the Training Center. Such practices are strictly prohibited in accordance with reference (c), regardless of whether compensation is provided.

   c. The solicitation of military personnel and their dependents shall be on an individual basis, by scheduled appointment only. A "scheduled appointment" is a pre-arranged meeting with a named individual at a specific time for the purpose of conducting commercial solicitation. Agents authorized to solicit on board may not enter the Training Center for the purpose of scheduling appointments or delivering materials without an appointment and shall not loiter prior to or after scheduled appointments.

TRACEN YORKTOWNINST 1740.1G

conducted in berthing areas of any buildings. For the purpose of this instruction, the Cyber Café and all smoking areas are not considered an office or lounge area of the barracks; therefore, commercial solicitation in, or in the immediate vicinity of, the Cyber Café or smoking areas are prohibited.

f.  Some agents may have separate authority to enter the Training Center for purposes unrelated to commercial solicitation; e.g., retired military person with exchange privileges. Persons with such separate authority to enter the Training Center shall not use it to bypass the requirements of this instruction in order to conduct commercial solicitation.

g.  The authority to issue and revoke authorizations to solicit the sale of insurance, mutual funds, investment plans, securities, and other commodities is delegated to the Staff Judge Advocate.

//s//

J. SCOTT BURHOE

Enclosure:  (1) Certification of Understanding

Copy:  CG TRACEN Yorktown Security Officer

(A-9)



| U.S. Department of Homeland Security<br><br>United States Coast Guard | | Commanding Officer<br>U. S. Coast Guard<br>Training Center Yorktown | End of Route 238<br>Yorktown, VA  23690-5000<br>Staff Symbol: cl<br>Phone:  (757) 856-2374 |

                                        TRACEN YORKTOWNINST 1740.1G
                                                   7 Jul 04

TRAINING CENTER YORKTOWN INSTRUCTION 1740.1G

SUBJ: COMMERCIAL SOLICITATION CONTROLS

Ref:   (a)  Coast Guard Regulations Manual, COMDTINST M5000.3B, Article 7-1-4
       (b)  Commercial Solicitation Controls at Coast Guard Units, COMDTINST 1740.2G
       (c)  Personnel Manual, COMDTINST M1000.6 (series), Chapter 16.E.

1. PURPOSE. This instruction sets forth policy regarding solicitation of Coast Guard personnel for personal business on board Training Center Yorktown. These regulations are in addition to references (a) through (c).

2. ACTION. Division Chiefs shall ensure their personnel are aware of and comply with the policies and procedures in this instruction.

3. DIRECTIVE AFFECTED. TRACEN YORKTOWNINST 1710.1F is cancelled.

4. POLICY AND PROCEDURES.

   a. Persons may not solicit for the sale of insurance, mutual funds, investment plans, securities, and other commodities on board the Training Center unless they have been authorized in writing by the Commanding Officer. Applications for authorizations shall conform with reference (b) and shall include a statement signed by each agent that the agent understands reference (b) and this instruction. Any violation of these provisions could result in the withdrawal of the privileges for the agent and the company represented. Authorizations shall be effective for one year unless revoked sooner by the Commanding Officer. These authorizations and statements of understanding shall be prepared by the Staff Judge Advocate.

   b. Companies or agents shall not directly or indirectly encourage or request persons, such as Coast Guard employees, to distribute commercial literature, business materials, or other promotional information on behalf of a company or agent aboard the Training Center. Such practices are strictly prohibited in accordance with reference (c), regardless of whether compensation is provided.

   c. The solicitation of military personnel and their dependents shall be on an individual basis, by scheduled appointment only. A "scheduled appointment" is a pre-arranged meeting with a named individual at a specific time for the purpose of conducting commercial solicitation. Agents authorized to solicit on board may not enter the Training Center for the purpose of scheduling appointments or delivering materials without an appointment and shall not loiter prior to or after scheduled appointments.

   d. All agents arriving at the Training Center must first personally check in with the Security Officer, located in Steuben Hall, during normal working hours 0800 – 1530; and during non-working hours, with the Officer of the Day (OOD). All agents shall provide a written list of scheduled appointments for each visit.

   e. Scheduled appointments may be conducted in offices and lounge areas of the barracks buildings outside of normal work hours. Scheduled appointments may not be

U.S. Department
of Transportation

**United States
Coast Guard**

Commandant **(G-PS-2)**
United States Coast Guard

MAILING ADDRESS:
2100 SECOND ST., S.W.
WASHINGTON, DC 20593-0001
PHONE: (202) 267-2248

COMDTINST 1740.2G

22 JUL 1992

COMMANDANT INSTRUCTION 1740.2G

Subj: Commercial Solicitation Controls at Coast Guard Units

Ref: (a) Navy Mutual Aid Association, COMDTINST 5760.4 (series)

1. **PURPOSE**. This Instruction sets forth policy and procedures regarding the solicitation, by commercial activities, of Coast Guard personnel for the transaction of personal business at Coast Guard units.

2. **DIRECTIVES AFFECTED**. Commandant Instruction 1740.2F is cancelled.

3. **DISCUSSION**. Coast Guard policy is to safeguard and promote the welfare of Coast Guard personnel as consumers and to preserve the efficiency of Coast Guard units by regulating personal commercial solicitation. The solicitation and transaction of commercial business with employees of the Coast Guard while on board Coast Guard units is at the discretion of the commanding officer. Such solicitations and transactions must conform to applicable regulations. Unit commanding officers may impose reasonable restrictions on the character and conduct of commercial activities. Of special concern is the need to assure that Coast Guard personnel are not subject to fraudulent and unethical business practices, and that reasonable and consistent standards are applied to each company and its agents in conducting commercial transactions at the unit.

4. **PROCEDURES**.

   a. **Coast Guard Units Located in Domestic Areas**. Unit commanding officers shall ensure that those seeking to conduct personal commercial transactions on board Coast Guard units in the United States, its territories, and the Commonwealth of Puerto Rico comply with the licensing requirements as well as any other applicable regulatory requirements of the civil authorities with jurisdiction over the area where the unit is located (Federal, State, county, or municipality).

**DISTRIBUTION - SDL No.** 130

|   | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | 2 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |   | 2 | 1 |   |   |   |   |
| B |   | 8 | 20+1 | 1 | 5 | 3 | 2 | 3 | 1 | 1 | 2 | 2 | 2 | 3 | 1 | 1 | 2 | 3 | 1 |   | 1 |   | 3 |   |   |   |
| C | 2 | 1 | 1 | 1 | 1 | 1 |   |   | 1 |   | 2 | 1 | 1 |   | 1 | 1 | 3 | 1 | 1 | 1 | 1 | 3 |   |   |   | 1 |
| D | 2 | 1 | 2 |   |   |   |   |   |   |   |   |   | 1 |   |   |   |   |   |   |   |   |   | 1 | 1 |   | 1 |
| E | 1 | 1 |   |   | 1 | 1 | 1 | 1 |   | 1 | 1 |   |   |   | 1 |   |   |   | 1 | 1 |   |   |   |   |   | 1 |
| F | 2 | 1 |   |   |   |   |   |   |   |   | 1 |   |   | 1 |   | 1 |   |   |   |   |   |   |   |   |   |   |
| G |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

**NON-STANDARD DISTRIBUTION:** B:c (MLC's) 6 extra

COMDTINST 1740.2G
22 JUL 1992

7.  a.  (cont'd) their personal commercial affairs (consumer credit and financing, insurance, Government benefits, savings and budgeting, etc.).  Educational materials prepared by outside organizations, expert in this field, may be adapted and used provided such material is entirely educational in nature and does not contain or refer to any particular commercial product, service, or company.  Unit commanding officers shall encourage military members and their dependents to seek legal advice before making substantial loan or credit commitments or if they feel they have a complaint under the consumer credit protection laws.

    b.  Nonprofit, voluntary membership associations which are independent, self-insured, and not commercially underwritten or affiliated are exempt from the provisions of this Instruction.  This exemption only applies to those organizations which have been granted tax-exempt status under Section 501(c)(23) of the Internal Revenue Code. Commanding officers may enforce those provisions of this Instruction necessary to maintain the efficiency and preparedness of the unit.

    c.  An example of an organization meeting the exemption criteria is the Navy Mutual Aid Association (NMAA).  NMAA is a membership association of sea service personnel and their families.  Reference (a) provides further information concerning the services available from NMAA.

8.  ACTION.  Area and district commanders, commanders of maintenance and logistics commands, unit commanding officers, Commander Activities Europe, and Chiefs of Offices, and special staff divisions in Headquarters shall comply with the contents of this Instruction.

G. D. PASSMORE
Chief, Office of Personnel
and Training

5

COMDTINST 1740.2G
22 JUL 1992
4.  b.  <u>Coast Guard Units Located in Foreign Countries</u>.

    (1) Prior to granting permission to conduct personal commercial transactions aboard a Coast Guard unit in a foreign country, unit commanding officers shall ensure that the companies and their agents observe the applicable laws of the host country and they meet the licensing requirements of the host country.  If the company and its agents also conduct business in the United States, unit commanding officers shall ensure that they also meet the licensing requirements and any other applicable regulatory requirements of the State in which they conduct their principal business.

    (2) The Department of Defense (DoD) annually accredits companies to solicit life insurance on DoD installations in foreign overseas areas.  Requirements and procedures for accreditation are located in 32 CFR Part 43.  Commanding officers of Coast Guard units located in foreign overseas areas shall ensure life insurance companies are accredited by DoD prior to granting solicitation privileges.  Accreditation is not an endorsement of the product, and advertising suggesting endorsement by DoD is prohibited.

  c.  <u>Applications</u>.  Prior to granting solicitation privileges, unit commanding officers shall require companies to submit a letter, signed by a company official, requesting permission to solicit on the unit.  The letter shall, as a minimum, contain:

    (1) A statement that the company meets the applicable licensing requirements;

    (2) The names of the individuals who are the company's agents;

    (3) A statement that the company assumes full responsibility for the acts of the agents actually connected with the sale of its products;

    (4) A statement that the company is accredited by DoD to solicit life insurance in foreign overseas areas (if applicable); and

    (5) An acknowledgment that a knowing and willful false statement is punishable by fine or imprisonment (18 U.S.C. 1001).

5.  <u>SUPERVISION OF COMMERCIAL ACTIVITIES</u>.

  a.  The solicitation of Coast Guard employees and their dependents shall be on an individual basis, at the request of the individual.

COMDTINST 1740.2G
22 JUL 1992

5.  b.  Unit commanding officers shall present those conducting commercial
        activities at Coast Guard units with a copy of these regulations and
        any applicable unit regulations and advise them that disregarding
        the regulations may result in the withdrawal of solicitation
        privileges.

    c.  The following solicitation practices are prohibited:

        (1) The use of any manipulative, deceptive or fraudulent device,
            scheme or artifice, including misleading advertising and sales
            literature.

        (2) Any discriminatory practice by race, color, religion, sex,
            national origin, or other basis as defined and prohibited by
            current Federal or Service regulations and directives.

        (3) Solicitation of recruits, trainees, or other "mass" or "captive"
            audiences.

        (4) Military personnel on active duty are expressly prohibited from
            representing any commercial company for the solicitation of life
            insurance, mutual funds and other investment plans, commodities,
            and services on any Coast Guard unit with or without
            compensation.

        (5) Any oral or written representations which suggest or give rise
            to the appearance that the Coast Guard sponsors or endorses the
            company, its agents, or the goods, services, or commodities it
            sells.

        (6) The use of official identification cards by Retired or Reserve
            members of the Armed Forces to gain access to military units for
            the purpose of soliciting.

        (7) The assignment of desk space for interviews other than specific
            prearranged appointments.  During such appointments the agent
            will not be permitted to display signs announcing name or
            company affiliation.

        (8) The use of the "Plan of the Day" or any other notice, official
            or unofficial, announcing the presence and availability of an
            agent.

6.  DENIAL AND REVOCATION OF ON BOARD SOLICITATION.

    a.  Unit commanding officers shall deny or revoke permission for a
        company and its agents to conduct commercial activities at the unit
        for a good and sufficient reason, such as, but not limited to:

3

COMDTINST 1740.2G
22 JUL 1992

6.  a.  (1) Failure to meet the licensing and other regulatory requirements
            prescribed by paragraph 4.

        (2) Commission of any of the solicitation practices prohibited by
            paragraph 5.c.

        (3) Substantiated complaints or adverse reports regarding either
            their quality of goods, services or commodities, the manner in
            which they are offered for sale, or the method and terms of
            financing.

        (4) Knowing and willful violations of the consumer credit
            protection laws in 15 U.S.C. 1601-1693(r).

        (5) Personal misconduct by a company's agents or representatives
            while on the military unit.

        (6) The possession of or any attempts to obtain allotment forms.

        (7) Distributing or making available for distribution literature
            other than to the person being interviewed.

    b.  The decision as to whether the denial or revocation action shall be
        limited to the agent, or whether it shall also be extended to the
        company, shall depend on the circumstances of the particular case.
        Unit commanding officers shall consider the nature of the
        violations, their frequency, the extent to which other agents of the
        company have engaged in such practices, and any other matters
        tending to show the company's culpability.  Upon denying or revoking
        solicitation privileges, the agent and the company represented will
        be promptly notified orally or in writing of the reasons and
        duration, after which the individual or the company may reapply for
        permission to solicit.  The individual and/or the company
        represented should be afforded the opportunity to show cause why the
        denial or revocation should not have been issued.  If the grounds
        for the action bear significantly on the eligibility of the agent
        and/or the company to hold a State license or to meet other
        regulatory requirements, the appropriate civil authorities will be
        notified.  If the denial or revocation action should be extended to
        additional military units, the unit commanding officer shall make
        this recommendation to Commandant (G-PS) after affording the
        individual and/or company the opportunity to show cause why it
        should not be extended.

7.  EDUCATION PROGRAMS.

    a.  Insofar as practicable, unit commanding officers shall maintain
        information and implement education programs for the purpose of
        providing Coast Guard personnel with guidance on the conduct of

4



SOCIAL SECURITY
CARDS
WITH USCG EMBEM

EXHIBITS (B-1) THRU.(B-10)

(B-1

Army Regulation 210-7

Installations

# Commercial Solicitation on Army Installations

**Headquarters**
**Department of the Army**
**Washington, DC**
**22 April 1986**

UNCLASSIFIED

**METAL SOCIAL SECURITY BUSINESS REPLY CARDS**
**WITH COAST GUARD EMBLEM**

B-AR-210-7 Chapter 2 Paragraph 2-8f (18)g. In this regulation this paragraph is designed for agents who desire to use the business reply card system Following exhibits (B1) through (A-)the plaintiff with the enclose exhibits will prove that 0-4 K.E.Lunday went beyond his spectrum of his assigned duty and was also abetted by US Coast Guard Headquarters..

EXHIBITS

(b-1)Army regulation 210-7 2-8f (18)g "use of business reply cards..

(B-2)-Letter dated 8 Mar,2000 to Commandant (G-IPA) by 0-4 K.E.lunday..Lincoln Fin.Grp or MBA had no input concerning metal social security card, (see the card that bares USCG emblem) the metal S S cards is a business transaction between the plaintiff and Perma*Products"Distributor" in.Para:3,-0-4 Lunday it states "I am not seeking permission for them to use the same".

(B-3)-Letter dated 31 May,2000 by M.J. Devine Captain, USCG. to plaintiff".For the record the plaintiff states I did not represent Transworld Assurance Co. at USCGRTC and never did or was I a distributor, I use the business reply card system as stated in(B-1).Captain states using this metal S S Card with USCG emblem is a violation of Federal law and it also jeopardizes my solicitor permit at USCGRTC,I do not consider this a improper activities.

(B-4)-Letter dated 18 Mar,2000 to 0-4 Lunday by plaintiff in a follow up telephone call by Ms Tara Jennings May to the plaintiff.reiterating the contents of (B-3).In this letter I interjected a Foia request concerning para:(1) and (2) with copies going to the Sec of Transportation and Ms Tara Jennings May. I never received a reply pertaining to this Foia request.

(B-5)-Perma Products letter head.

(B-6)-picture of social security cards manufactured by Perma* Products.

(b-7)-photo copies of other USCG public advertisement that includes USCG emblems & wording. Exhibits (1)-through (4).

(B-8)-Business reply card. designed by plaintiff.. Exhibit (1) see problem on exhibits (B-2), (B-3) (B-3) and (B-4).

(B-9)-Foia Letter dated 15 Feb,07 ,and received a response.

(B-10)-recent Letter dated 4 April,07 written by William G. Haskin,,Jr Chief Office of General Law responding to plaintiff letter (B-9) ,it shows a reversal to the letter of (B-3) written by M.J..Devine Capt .USCG. This is further proof of a conspiracy led by 0-4 K.E .Lunday the USCGRTC. And abetted by USCG Headquarters D.C. .

(B-2)

 U.S. Department
of Transportation

**United States
Coast Guard**

Commanding Officer
U. S. Coast Guard
Training Center Yorktown

Yorktown, VA 23690-5000
Staff Symbol: cl
Phone: (757) 898-2376
FAX: (757 ) 898-2329

5728

MAR    8  2000

From:   Commanding Officer, Coast Guard Training Center Yorktown
To:     Commandant (G-IPA)

Subj:   USE OF THE U. S. COAST GUARD EMBLEM AND NAME

Ref:    (a) PHONCON between Mr. Thorne COMDT (G-IPA) and LCDR Lunday TRACEN
        Yorktown (cl) of 7 Feb 00
        (b) Commercial Solicitation Controls at Coast Guard Units, COMDTINST 1740.2G

1. As discussed in reference (a), I am seeking to determine whether your office has granted
permission for Military Benefit Association, Lincoln Financial Group, or Mr. Jack A. Schwaner
to use the words "U. S. Coast Guard" and the Coast Guard emblem.

2. This command has granted permission for an agent of Lincoln Financial Group (affiliated
with Military Benefit Association) to conduct commercial solicitation aboard the command,
pursuant to reference (b). As part of meeting with clients (military members), the Lincoln
Financial Group agent offers a free, gold-colored, metal card with the name and social security
number of the client engraved on the front. The client voluntarily provides the information to the
agent, who has the card engraved and returns it to the member. A copy of this card, with name
and social security number redacted, is attached as enclosure (1). After this process, the agent
then offers the client a membership with Military Benefit Association and commercial life
insurance with Lincoln Financial Group at a set fee or rate.

3. As you can see from enclosure (1), each metal card bears the Coast Guard emblem and the
words "U. S. Coast Guard" underneath in the upper left corner. The name of the company does
not appear on the front or back of the card. I am trying to determine whether Lincoln Financial
Group, Military Benefit Association, or Mr. Schwaner have authority to use the service title and
emblem or are acting in violation of 14 U.S.C. § 639. I am not seeking permission for them to
use the same.

4. If you have any questions, please contact me at (757) 898-2376.

K. E. LUNDAY
Legal Officer
By direction

Encl:  (1) Copy of social security card offered by Lincoln Financial Group

Case 1:07-cv-02351-EGS    Document 1-2    Filed 12/19/2007    Page 48 of 112

(B-3)

U.S. Department
of Transportation

**United States
Coast Guard**

Commandant
United States Coast Guard

2100 Second Street, S.W,
Washington, D.C. 20593-0001
Staff Symbol: G-LGL
Phone: (202) 267-0060
FAX: (202) 267-4287

5800

MAY 3 1 2000

Mr. Jack A. Schwaner
816 Chatsworth Drive
Newport News, Virginia 23601

Mr. Schwaner:

I am the Chief of the Office of General Law at Coast Guard Headquarters. It has come to my
attention that you have a commercial solicitation permit for the Coast Guard's Yorktown Training
Center and that you are employed by and represent Transworld Assurance Company, Lincoln
Financial Group, Lincoln National Life Insurance Company and the Military Benefit Association
aboard the Yorktown Training Center as a result of obtaining that solicitor's permit, that you have
been distributing embossed metal cards to clients or potential clients during your solicitor
activities, that these metal cards contain the imprinted image of the official Coast Guard Insignia
and the words "U.S. Coast Guard" and that you have not obtained permission to reproduce or
use the Coast Guard Insignia image or the words "U.S. Coast Guard" for this commercial
purpose.

You are hereby notified that the Coast Guard Insignia is a federally protected symbol, that
"U.S. Coast Guard" is the official Coast Guard name and also federally protected, that you must
obtain express written permission from Coast Guard Headquarters to use and reproduce that
federally protected material for commercial purposes, and that failure to do so constitutes not
only a violation of federal law but may also separately jeopardize your solicitor's permit and the
ability of the entities listed in the preceding paragraph to conduct business aboard Coast Guard
facilities.

You must immediately stop using the Coast Guard Insignia and "U.S. Coast Guard" as described
above. After you stop your improper activity, you can submit a written request to use those
words and that symbol to the Coast Guard's Office of Public Affairs in Washington, D.C. You
can obtain the mailing address for that office by contacting the Yorktown Legal Officer,
LCDR Kevin Lunday.

M. J. DEVINE
Captain, U.S. Coast Guard
Chief, Office of General Law
By direction of the Commandant

Copy to: Yorktown Legal Officer
Public Affairs
Lincoln National Life Insurance
Lincoln Financial Group
Military Benefits Association
Transworld Assurance Company

Post-It® Fax Note    7671    Date 27 June    # of pages 1

To DR Kevin LUNDAY    From Lt P.

Co./Dept. Legal OFFICER    Co.

Phone #    Phone #

Fax # (757) 898-2329    Fax #

3-4)

TO:
K.E.LUNDAY                                              18 MAR,00
LTCDR.USCG.
LEGAL OFFICER,USCGTC


FROM:
JACK A.SCHWANER
816 CHATSWORTH DR.
N,N,VA.23601


DEAR SIR,


              IT HAS BEEN BROUGHT TO MY ATTENTION THAT YOU MADE
"ONE" INQUIRY TO COAST GUARD HEADQUARTERS WASHINGTON,D.C.
ON THE LEGALITY CONCERNING A SOCIAL SERCURITY CARD ON A SMALL
METAL PLATE SHOWING THE COAST GUARD EMBLEM.
           A CALL WAS MADE TO ME BY MS TARA JENNINGS MAY STATING
THESE CARDS COULD NOT BE MADE BECAUSE IT DID NOT HAVE COAST
GUARD APPROVAL,IF THIS IS SO,AND IS USED AS A COAST GUARD GUIDE.
"THAN I AM MAKING A FOIA REQUST TO THE FOLLOWING".

(1)IS COATS,TEE SHIRTS,BELT BUCKLES,CAPS,RINGS AND TATOOS SHOWING
    THE COAST GUARD EMBLEM,BUT LACKS COAST GUARD APPROVAL BE
    ALLOWED ON USCGTC,YORKTOWN,VA.

(2)COPIES OF ANY OR ALL MATERIAL,MEMO,S ETC.SENT TO THE COAST
    GUARD HEADQUARTERS WASHINGTON D.C.CNCERNING THIS RELATED
    MATTER.


                      RESPECTFULLY,

                      JACK A.SCHWANER SR

CC:SEC.OF TRANSPORTATION
CC:MS TARA JENNINGS MAY

(B-5)



F U - 5554
Direitou 9909

## CONFIDENTIAL COST/PRICE LIST

## FOR ORDERS & INFORMATION: 1-800-224-1123
## FAX: 1 (305) 999-9090 • 1 (305) 945-1123 • 1 (305) 945-1140

### WE ACCEPT
### VISA, MASTER CARD
### & AMERICAN EXPRESS

---

**THESE ARE THE LATEST PRICES OF PERMA PRODUCTS
AS OF JANUARY 1, 2001
(THEY CANCEL ALL PREVIOUS PRICES)**

**IT IS OUR POLICY TO NEVER BE UNDERSOLD!**

(B-6)

# THE SOCIAL SECURITY PERMA ☆ PLATES



U.S. SOCIAL SECURITY
ACCOUNT NUMBER
JOHN CARSON

2 U.S. FLAGS / STYLE NO. T-101

## $5.00 WITH 2-POCKET WALLET & I.D. CARD

### PERMA-PLATE FEATURES

**GOLDEN BRASS-A-LITE**
solid brass finished, lightweight, machine polished aluminum

**YOUR NAME & SOCIAL SECURITY NUMBER**
personal, engraved in perfect alignment, a permanent reference record . . .

**SAVE MONEY, TIME, AND TROUBLE**
replacing your original paper social security card when it is lost or spoiled. keep original in a safe place and carry your PERMA-PLATE at all times; never be without its protection

**GAIN EXTRA FAVORS AND RESPECT**
select the PERMA-PLATE that represents your loyalty and affiliation . . .

**LIFETIME GUARANTEE**
complete satisfaction or your Money Back by REGULAR AIRMAIL

**CREATES GOOD IMPRESSION**
when applying for a new job, credit, government benefits, etc. saves embarrassment of showing a ragged and dirty social security card . . .

**INDESTRUCTIBLE**
will never soil, fade, tear, burn or wear out like your present paper card . . .

**BRIGHT FOUR COLORS**
makes you proud to show it: prestige identification; PERMA-PLATE always looks brand new and strong . . . red, blue, maize and gold on each PERMA-PLATE . . .

NEVER SOLD IN STORES! Only available from your family products distributor

| Plate | Code |
|---|---|
| Afro | B-280 |
| Serenity Prayer | S-293 |
| Christian | C-112 |
| Peace | P-270 |
| Mason | Z-103 |
| St. Christopher | S-108 |
| U.S. Veterans | B-111 |
| Shriner | Z-237 |
| U.S. Sacred Heart | S-222 |
| Truckin' | R-295 |
| U.S. Army | B-230 |
| Eastern Star | Z-233 |
| Heart of Jesus | C-243 |
| Playboy | F-366 |
| U.S. Navy | B-229 |
| Elks | E-102 |
| Jewish | J-155 |
| Democrat | T-225 |
| U.S. Air Force | B-228 |
| Eagles | A-104 |
| Irish | F-274 |
| Republican | T-224 |
| U.S. Marines | B-226 |
| Moose | V-105 |
| Italian | F-273 |
| AFL/CIO | R-118 |
| U.S. Coast Guard | B-227 |
| Women of the Moose | V-268 |
| Polish | F-271 |
| Medical | M-259 |
| Jay Cee | N-261 |
| Confederate | Y-233 |
| Odd Fellows | W-115 |
| Greek | F-179 |
| Good Luck | Q-113 |
| Smile | T-500 |
| Nurse (L.P.N.) | P-262 |
| Nurse (R.N.) | P-254 |
| Knights of Columbus | K-107 |
| Puerto Rican | H-116 |

                                    

### ALL 12" ZODIAC PLATES WITH YOUR EXACT BIRTH DATE STAMPED IN

- Capricorn / Z-284 (Dec. 22-Jan. 19)
- Aquarius / Z-283 (Jan. 20-Feb. 18)
- Pisces / Z-285 (Feb. 19-Mar. 20)
- Aries / Z-292 (Mar. 21-April 19)
- Taurus / Z-291 (April 20-May 20)
- Gemini / Z-281 (May 21-June 20)
- Cancer / Z-286 (June 21-July 22)
- Leo / Z-288 (July 23-Aug. 22)
- Virgo / Z-287 (Aug. 23-Sept. 22)
- Libra / Z-282 (Sept. 23-Oct. 22)
- Scorpio / Z-290 (Oct. 23-Nov. 21)
- Sagittarius Z-289 (Nov. 22-Dec. 21)

| Plate | Code |
|---|---|
| Mexican | X-117 |

   

| Plate | Code |
|---|---|
| Knights of Pythias | P-114 |
| N.A.A.C.P. | F-263 |
| Lic. Vocational Nurse | P-269 |
| California | F-257 |
| Cuban St. Christopher | F-221 |
| Cuban | M-120 |

         

Exhibit (1)













(A-8)-



FREE!

FOR MILITARY PERSONNEL
WITHOUT COST OR OBLIGATION

A
"PERSONALIZED"
Social Security Card
with your Branch of Service
on an everlasting
Golden-Brass-A-Lite Plate

Please deliver my FREE
personalized Social
Security Card together
with an analysis of
Government In-Service
Benefits. Also, I would like
an explanation on your
Insurance Program with
Annuity Fund.

(APPOINTMENT CARD)
Specific Times & Date:

NAME

MILITARY ADDRESS (or designated area)

LOCAL ADDRESS

| RANK | SOCIAL SECURITY # | ROOM OR DIV. | SINGLE ☐ |
| DATE OF BIRTH | DUTY PHONE NO. | HOME PHONE NO. | MARRIED ☐ |

MAIL THIS CARD TODAY

(B-8)

(B-9)

15 Feb.07

**Jack  A.Schwaner
1 Great Oak Cir. Apt B-44
Newport News Va 123606**

**U.S. Coast Guard  Hg
Office of General Law
2100 Second Street S.W
Washington D.C. 20593-0060**

**Dear Sir:**

        **I am making  a FOIA request and it will be limited in scope
to the following:**

**(1)- If a Coast Guardsman or civilian have a tattoo on his/her
    chest showing the U.S. Coast Guard Insignia or words " U.S.
    Coast Guard " is this a USCG violation.**

**(2)- List of all commercial companies approved to sell items with
    the USCG insignia and words USCG.**

**(3)- U.S. Coast Guard Office of General Law states that USCG is a
    Federal protected  Emblem ,if it is a federal  violation under
    14 U.S.C 639 please be specific concerning  that paragraph.**

**(4)- Has the U.S.C.G. Command ever order a commercial
    company or individual to stop using its emblem or U.S.C.G.
    or words USCG.**

**(5)- Has any commercial companies or individuals ever been
    prosecuted under 14  U.S.C.*639 for using the U.S. Coast
    Guard  Emblem or U.S.C.G. word or letters.**

**Respectfully,**

**Jack A. Schwaner**





★ ★ ★ TO HONOR WAR VETERANS AND PURPLE HEART RECIPIENTS ★ ★ ★

# EXCLUSIVE UNITED STATES MILITARY
# EMBLEMS OF GOLD
## COMMEMORATIVE VETERAN'S BIRTHSTONE RINGS
*Personalized With Your Military Emblem or Purple Heart, Birthstones, Initials and Year Dates of Service*

**PURPLE HEART**

We proudly present our Official United States Military Gold Emblem Rings set with eight birthstones of your choice to honor your service to Country!

Your Service Emblem, or Purple Heart Medal, will be sculpted in solid 10 Karat Gold, boldly displayed on genuine polished Black Onyx. Set atop an exclusive "Pillars of Strength" Ring design crafted of solid sterling silver richly finished in 22 Karat Gold.



Your initials and service years will be engraved on the inner band, which is solid and smooth for comfort fit. Our rings are never hollowed out!

Thank you priced at a remarkably low $199*, our rings are not sold in stores. An affordable payment plan is available, and if not satisfied, you may return your ring within 30 days for replacement or refund–no questions asked. So, order yours today!



| JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE |
|---|---|---|---|---|---|
| GARNET | AMETHYST | AQUAMARINE | DIAMOND* | EMERALD | PEARL |
| JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER |
| RUBY | PERIDOT | SAPPHIRE | ROSE ZIRCON | GOLDEN SAPPHIRE | BLUE ZIRCON |

Birthstone names refer to color. *Genuine Diamond birthstone rings are $299*.



**ALSO AVAILABLE!**
MERCHANT MARINE,
NAVY SEAL & SEABEE



**FOR FASTEST DELIVERY
CALL TOLL FREE TO ORDER**
# 1-800-255-3048
Monday-Friday from 9am-8pm EST.
Have ring size and credit card available.

NOTE: BEWARE OF IMITATORS WHO SELL YOU LOOK-ALIKE, UNAUTHORIZED AND INFERIOR QUALITY RINGS.
TRUST VETERANS COMMEMORATIVES – PROUDLY SERVING AND HONORING VETERANS LIKE YOU SINCE 1987.

**ORDER FORM**

Mail to: Veterans Commemoratives Gold Emblem Ring, Two Radnor Corporate Center, Suite 120, Radnor, PA 19087-4599

□ **YES.** I wish to order the following Exclusive Military Gold Emblem Ring(s) set with my birthstones. *PLEASE SEND ME A FREE AMERICAN FLAG PIN.*
□ Army □ Navy □ Air Force □ Marine Corps □ Coast Guard
□ Merchant Marine □ Navy Seal □ Seabee OR,

□ **I am a Purple Heart Recipient.** Please put my medal on my ring.
NOTE: A copy of your DD214 must be sent with your order. Thank You.

Birthstone/Mo._____ Ring Size*:_____ *(use ring sizer below or consult jeweler)*

My Initials (3) _____ _____ _____    Service Yrs:_____ to _____

**I NEED SEND NO MONEY NOW.** Bill me in four monthly installments of $49.75* each, with the first payment due prior to shipment.
*And my satisfaction is completely guaranteed.*

□ Shipping Address *(We CANNOT ship to P.O. Boxes)*

Name _____

Address _____

City_____ State_____ Zip _____
Allow 6-8 weeks for delivery.

Daytime Phone (_____) _____

* Check with jeweler or use ring sizer at left.
* Diamonds (April birthstones) add $25.00 per payment.
* Plus $9.95 for engraving, shipping, and handling. PA residents add 6% sales tax.
©2002-2007 These rings have been registered with the United States Copyright Office, as sculpture.

**FREE
FLAG PIN**
WITH EVERY ORDER

BRSRIN-ALM0807

RING SIZE GUIDE
CUT THIS OUT CAREFULLY
USE AS SHOWN ON FINGER

-10)-

U.S. Department of
Homeland Security

United States
Coast Guard

Commandant
United States Coast Guard

2100 Second Street, S.W.
Washington, DC 20593-0001
Staff Symbol: CG-0944
Phone: (202) 372-3762
Fax: (202) 372-3969
Email:

5720

APR - 4 2007

Mr. Jack Schwaner
1 Great Oak Cir., Apt. B-44
Newport News, VA 123606

Dear Mr. Schwaner:

The following are answers to the 5 questions you asked in your 15 February 2007 letter to Coast
Guard Headquarters.

Response (1). There is no violation of Coast Guard policy.

Response (2). The Coast Guard does not have a list of commercial companies approved to sell
items with the Coast Guard insignia or the Coast Guard words.

Response (3). The entire text of 14 U.S.C. § 639 is as follows:

"No individual, association, partnership, or corporation shall, without authority of the
Commandant, use the combination of letters "USCG" or "USCGR", the words "Coast Guard,"
"United States Coast Guard," "Coast Guard Reserve," "United States Coast Guard Reserve,"
"Coast Guard Auxiliary," "United States Coast Guard Auxiliary," "Lighthouse Service," "Life
Saving Service," or any combination or variation of such letters or words alone or with other
letters or words, as the name under which he or it shall do business, for the purpose of trade, or
by way of advertisement to induce the effect of leading the public to believe that any such
individual, association, partnership, or corporation has any connection with the Coast Guard. No
individual, association, partnership, or corporation shall falsely advertise, or otherwise represent
falsely by any device whatsoever, that any project or business in which he or it is engaged, or
product which he or it manufactures, deals in, or sells, has been in any way endorsed, authorized,
or approved by the Coast Guard. Every person violating this section shall be fined not more than
$1,000, or imprisoned not more than one year, or both."

Response (4). The Coast Guard requests, but does not order, persons or entities to stop using the
protected Coast Guard words or symbols in violation of 14 U.S.C. § 639.

Response (5). The Coast Guard has no record of any company or person being prosecuted for
violating 14 U.S.C. § 639.

Sincerely,

WILLIAM G. HASKIN, JR.
Chief, Office of General Law
U. S. Coast Guard
By direction



USCGRTC

CYBER CAFE

EXHIBITS (C-1) THRU.(C-3)

INCLUDING .
(a) (b) (c) (d)

# CYBER CAFE

C   USCGRTC Regulation designed by 0-4 K.E.Lunday and approved by D.A.Sande Captain, has many folds against a Insurance agent, (1)-safeguarding Cyber Cafe and its vicinity,(2)-no longer lounges or offices existed to work as in the past ,many Foia requests raising these issues never had responses.(3)-I was a smoker, the smoking area is in the court yard and has a open sheltered from the elements was used by plaintiff for many years ,is now prohibited to the plaintiff or anyone of the same status."see (A-9) USCGRTC 1740 1G Para:e.

see (A-5)-USCGRTC Memo dated 24 Feb.,1998:Commander gives authorization to Legal Officer.
see (A-7)-USCGRTC memorandum dated 10 Dec.1999, 0 -4 K.E.Lunday and Commander prohibiting Insurance agent in the Cyber Cafe.

see (A-8)-USCGRTC 1740.1F. Para: e  new instruction states Cyber Cafe is not a office or lounge therefore commercial solicitation in or in the immediate vicinity of the Cyber Cafe is prohibited.

(C-1)-A partial denial D.A.Sande Capt. USCG Commanding Officer USCGRTC concerning my 7 April,2000 Foia request .about the Cyber Cafe This disclosure Proves the act was arbitrary and capricious ,a conspiracy purposely devised by Capt.D.A.Sande Commanding Officer and 0-4 K.E.Lunday legal officer USCGRTC toward the plaintiff by using the excuse of "the importance" of safeguarding Cyber Cafe environment (see (A-7)Memorandum USCGRTC1740 dated 10 Dec.1999  In reality it is operated by a Computer company called Cyber Zone that claims the best and most extensive array of software for gaming, no classified clearances. This clearly shows where the mindset is "Profit for USCGRTC using computers and Coast Guard students as bait."

(This is why USCGRTC never answered my Foia requests concerning the safeguarding against whom.

(C-2)-Letter from 0-4 K.E.lunday -Date 14 April,2000 could not locate my requested Foia ,but tack a bill of $214.84

(C-3)- USCGRTC Correspondence between Cyber Zone dated 30 99

Commandant (G-SII-2)
U. S. Coast Guard
ATTN: FOIA/PA Officer
2100 Second Street, S.W.
Washington, DC 20593-0001

There is no additional fee for processing this portion of your request F-004-00.

Sincerely,

D. A. SANDE
Captain, U. S. Coast Guard
Commanding Officer
U. S. Coast Guard Training Center Yorktown

Encl: (1) Releasable records

(C-1)-

**U.S. Department
of Transportation**

**United States
Coast Guard**

Commanding Officer
U. S. Coast Guard
Training Center Yorktown

Yorktown, VA  23690-5000
Staff Symbol: c
Phone: (757) 898-2374
FAX: (757) 898-2329

5720

MAY  5  2000

CERTIFIED MAIL – RETURN RECEIPT

Mr. Jack A. Schwaner
816 Chatsworth Drive
Newport News, VA  23601

Dear Mr. Schwaner:

This is a follow up to my April 7, 2000 response to your Freedom of Information Act request F-004-00.

I wrote in that letter that the following information you requested is contained in records that may contain trade secrets and confidential commercial or financial information, voluntarily obtained from a person, that are privileged:

   a.  "IS THE CYBER CAFE RAN OR OPORATE BY A CIVILIAN ENTERPRISE."

   b.  IF THE CYBER CAFE IS BEING RAN BY A CIVILIAN ENTERPRISE THAN I REQUEST A COPY OF THE CONTRACT."

   c.  "WAS THE OPENING OF THE CYBER CAFE BASED ON COMPETITIVE BIDS."

With regard to those records, your request is approved in part and denied in part. I have provided 12 pages of records that are responsive to your request. I have denied the release of 14 pages in their entirety. My partial denial of your request is based on exemption (b)(4) of the Freedom of Information Act in that release of that information would reveal trade secrets and confidential commercial or financial information, voluntary obtained from a person, that are privileged and not customarily available to the public.

Captain Dennis A. Sande, USCG and Lieutenant Commander Kevin E. Lunday, USCG participated in this decision.

This letter constitutes a partial denial of your request. However, you may appeal this decision. Your appeal must be made in writing and must be submitted within 30 days from the date of receipt of this letter. Your letter should indicate that you are making an appeal based on a partial denial of a request made under the Freedom of Information Act, and the envelope should be prominently marked 'FOIA Appeal.' Include in your appeal reason(s) for a reconsideration of the denial and a copy of the letter of denial. Send your appeal to:

(C-2)-Correspondence between USCGRTC and Cyber Zone Co.

Exhibits (a)                    C · L

**Malinauskas, LaRae LT**

| | |
|---|---|
| From: | Malinauskas, LaRae LT |
| Sent: | Friday, July 30, 1999 12:16 PM |
| To: | 'larrykelly@cyber-netcafe.com' |
| Subject: | Your proposal |

Mr. Kelly -

I have attached a summary of some of the highlights of your contract.  Could you please take a look at it and let me know if anything's changed?  Also, I just have a few questions.

- Are you still using Windows 95 and if so can you upgrade to Windows 98?
- Do you have both a color and black & white printer?  It only lists one printer on the AFNAFPO contract.
- How much would you want to charge for the printouts from the computer?

Thanks!



Cyber Zone -
Summary.doc

*LT LaRae M. Malinauskas*
LT LaRae M. Malinauskas
Deputy Comptroller, RTC Yorktown
(757) 898-2323

6.2

>I have attached a summary of some of the highlights of your contract. Could

>you please take a look at it and let me know if anything's changed? Also, I

>just have a few questions.

>

> - Are you still using Windows 95 and if so can you upgrade to Windows 98?

> - Do you have both a color and black & white printer? It only lists one

>printer on the AFNAFPO contract.

> - How much would you want to charge for the printouts from the computer?

>

>Thanks!

>

> <>

>

>LT LaRae M. Malinauskas

>LT LaRae M. Malinauskas

>Deputy Comptroller, RTC Yorktown

>(757) 898-2323

>

>

>Attachment Converted: "c:\eudora\attach\Cyber Zone - Summary.doc"

>

Exhibit (b)

Page 1 of 2

## Malinauskas, LaRae LT

| | |
|---|---|
| **From:** | Lawrence M. Kelly [larrykelly@cyber-netcafe.com] |
| **Sent:** | Friday, July 30, 1999 1:36 PM |
| **To:** | Malinauskas, LaRae LT |
| **Subject:** | Re: Your proposal |

Lt Malinauskas,

I have noted changes and comments in RED on your document, attached.

In answer to your questions:

> - Are you still using Windows 95 and if so can you upgrade to Windows 98? WE ARE STILL USING WINDOWS 95, WITH SERVICE PACK 2, INTEGRATED WITH MS INTERNET EXPLORER 4.X. WE HAVE FOUND THIS TO BE MORE STABLE, PARTICULARLY FOR GAMING. HOWEVER, IF THERE IS A REASON WHY YOU'D LIKE WINDOWS 98, THAT'S NO PROBLEM.

> - Do you have both a color and black & white printer? It only lists one

>printer on the AFNAFPO contract. WE ARE CURRENTLY SPECIFYING THE HIGHEST END HP INKJET PRINTER (895Cxi). IT PRINTS IN HIGH QUALITY COLOR OR BLACK AND WHITE. GENERALLY, OUR LOCATIONS DON'T SEE HIGH VOLUME PRINTING AND THIS HAS PROVEN MORE THAN ADEQUATE. THE PRINTER HAS 2MB RAM AND CAN EASILY HANDLE MULTIPLE PRINT JOBS ARRIVING AT THE SAME TIME.

Please let me know if you have any further questions or points of clarification. Please also know that most aspects of our contract are open to discussion/negotiation.

Thanks!

Larry Kelly

> - How much would you want to charge for the printouts from the computer? AS THIS TENDS NOT TO BE A SIGNIFICANT PORTION OF OVERALL REVENUE, WE'RE NOT STUCK ON ANY PARTICULAR PRICE - THIS IS SUBJECT TO MUTUAL AGREEMENT. THE CURRENT RANGE AMONG OUR LOCATIONS IS 10-25 CENTS PER PAGE. WE FIND NO PARTICULAR CUSTOMER RESISTANCE AT THE HIGH END OF THE RANGE.

At 12:15 PM 7/30/99 -0400, you wrote:

>Mr. Kelly -

Exhibit (c)

## Malinauskas, LaRae LT

| | |
|---|---|
| From: | Lawrence M. Kelly [larrykelly@cyber-netcafe.com] |
| Sent: | Friday, August 06, 1999 1:09 PM |
| To: | Malinauskas, LaRae LT |
| Subject: CyberZone Proposal | |

LT Malinauskas,

Thank you for your continued interest in CyberZone and the opportunity to submit this enhanced proposal to the Command. As the largest and most experienced provider of Public Internet Access terminals for the military, with locations in all branches of the services (except the Coast Guard!), our business is exclusively with the military, making us highly attuned to the unique needs of your customers and your management needs.

We have reviewed our normal revenue split and considered your unique situation and are prepared to offer a more agressive revenue sharing arrangement, detailed below.

As you evaluate our proposal, we trust you will see we offer the most customer and management friendly package available. Based on my personal experience in Military recreation, while percentages are good, ultimately it's dollars in the bank that count. We are confident we have the most comprehensive and powerful package, especially for gaming, available anywhere, sure to generate greater gross revenue than other available system. This has been proven at our own locations where we have introduced the new CyberZone package and seen same-location revenues increase as much as 30 - 50%.

Some specific advantages CyberZone offers over our competitors are:

- The only system in which games are installed within the server, obviating the need to handle CD-ROMS and enabling ALL stations to play ALL games, even simultaneously.

- The only system in which all accounts are user maintained - no attendant required.

- The only system in which computers may be personalized by individual users with Web bookmarks, notes and email address.

- The best and most extensive array of software for gaming, Web browsing, messaging, chat, e-mail, word processing and more.

- The most aggressive in maintaining a commitment to keep your system current. Our customers have gotten complete system upgrades 18-24 months after initial installation,

Exhibit D

as well as routine improvements. Additionally, and a reason for my question re cable connection, as bandwidth improves, we're committed to adding other attractive features to our locations, such as video cameras, voice capability, etc., as technology emerges.

- As part of our service commitment, we provide an array of system support options, from an email support group, to phone support to on-site assistance within 24 hours.

In short, and with all due modesty, we know we are the best at what we do.

Now for the numbers. CyberZone proposes to offer you the following revenue share for an installation of 6 computer stations at your location.

Percentages will be calculated monthly to determine weekly revenue per installed computer. Basic split is calculated on ENTIRE revenue for the month. Bonus split is calculated on INCREMENTAL revenue over $275/computer/week.

Weekly Revenue/Computer Yorktown Share

| < $175 | 20% |
|--------|-----|
| > $175 | 25% |
| > $200 | 28% |
| > $225 | 31% |
| > $250 | 35% |
| > $275 | 40% |

>

> BONUS Additional 10% of revenue over $275/computer/week (or 50% of

> incremental revenue).

Furthermore, if operations indicate additional machines are required, we are able to respond quickly with increased e-mail or gaming solutions.

LT Malinauskas, we have tried to be as generous as we can. Clearly, the more revenue your

location produces, supported by an aggressive marketing program, the better for us both.

We have maintained our basic 80/20 split to protect both of our interests for a low revenue situation. If revenues were to fall below $175/week, we would be unable to support our

investment. However, based on everything we have discussed and the volume of usage you're experiencing now, we expect you'll be in the upper ranges of revenue, up to the 50% bonus split. Given the quality of our system, and the demand you are currently experiencing, and an agressive promotional program, your weekly revenue could be between $1,600 and $1,800 per week.

We look forward to having the opportunity to work with you in building a highly successful recreational computing location and positioning the Base for the coming innovations available with faster internet connections.

Thank you agin for giving us this opportunity! If you have any aditional questions, please do not hesitate to call.

Larry Kelly

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Larry Kelly

Executive Director

CyberNet Cafe

6312 Seven Corners Center

Suite 153

Falls Church, VA 22044

Phone:  (703) 536-9842

Fax:   (703) 536-9843

E-Mail: larrykelly@cyber-netcafe.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Exhibit (c)

**Malinauskas, LaRae LT**

**From:**   Lawrence M. Kelly [larryKelly@cyber-netcafe.com]
**Sent:**   Friday, August 06, 1999 1:09 PM
**To:**     Malinauskas, LaRae LT
**Subject:** CyberZone Proposal

LT Malinauskas,

Thank you for your continued interest in CyberZone and the opportunity to submit this enhanced proposal to the Command. As the largest and most experienced provider of Public Internet Access terminals for the military, with locations in all branches of the services (except the Coast Guard!), our business is exclusively with the military, making us highly attuned to the unique needs of your customers and your management needs.

We have reviewed our normal revenue split and considered your unique situation and are prepared to offer a more aggressive revenue sharing arrangement, detailed below.

As you evaluate our proposal, we trust you will see we offer the most customer and management friendly package available. Based on my personal experience in Military recreation, while percentages are good, ultimately it's dollars in the bank that count. We are confident we have the most comprehensive and powerful package, especially for gaming, available anywhere. This has been proven, sure to generate greater gross revenue than other available system. This has been proven at our own locations where we have introduced the new CyberZone package and seen same-location revenues increase as much as 30 - 50%.

Some specific advantages CyberZone offers over our competitors are:

- The only system in which games are installed within the server, obviating the need to handle CD-ROMS and enabling ALL stations to play ALL games, even simultaneously.

- The only system in which all accounts are user maintained - no attendant required.

- The only system in which computers may be personalized by individual users with Web bookmarks, notes and email address.

- The best and most extensive array of software for gaming, Web browsing, messaging, chat, e-mail, word processing and more.

- The most aggressive in maintaining a commitment to keep your system current. Our customers have gotten complete system upgrades 18-24 months after initial installation,

Exhibit (d)

(1. of 4)

| | CyberZone |
|---|---|
| Number of computers | 6-8 |
| Equipment | Intel Pentium III (450mhz, minimum) Computers with:<br>- 64 mb RAM<br>- Vooodoo III Card 16 mb video RAM<br>- 8.4 gigabyte hard drive in removable drive bay for instant replacement.<br>- 512 kb pipeline burst cache, flash BIOS .<br>- 3.5" floppy drive<br>- 56K V.90 modem<br>- Sound Blaster 32 wavetable 3D stereo sound card w/spkrs<br>- Mouse/keyboard<br>- MS Sidewinder Pro Joystick<br>- 17' color monitors (PCI 64-bit 3D video, MPEG, 16Mb EDO RAM)<br>1 Intel Pentium III 450 minimum Mhz game and account server<br>1 Hewlett Packard DeskJet Printer HP 895Cxi color printer 2mg RAM; print at 9ppm<br>NOTE: WE DO NOT INSTALL A CD-ROM DRIVE AS ALL GAMES RESIDE PERMANENTLY ON THE SERVER. WE OFFER THE ONLY SYSTEM WITH THIS CAPABILITY. |
| Software | Microsoft Windows 95, Microsoft Internet Explorer and Associated Programs, Netscape Communicator and Associated Programs, Microsoft Word, Microsoft Chat, MIRC, AOL and AOL instant messenger, ICQ, Yahoo Pager, Real Audio/Video, MPEG Video Player, McAfee Virus Protector.  Games include: Starcraft, Quake II, Doom 2000, Diablo, MLB 98, WWF War Zone, Half-Life, Jedi Knight, Deer Hunter II, Battle Zone, NBA Live 99, Caesar III, Heretic II, Clancy's Rainbow Six, Shogo Mobile Armor Division, Grim Fandango, NFL Game Day 99, Age of Empires: Rise of Rome, Grand Theft Auto, Civilization II, Need for Speed III, Motocross Madness, MS Golf, F-22 Raptor, |

2 of 4

| | F-1 Racing Sim, Quake World – Quake Spy, NFL Blitz, Combat Flight Simulator, You Don't Know Jack XXL. Note: All titles available on all stations all the time – no need for insertion of CD's. Titles frequently updated and we will any software for which there is demonstrated demand. |
|---|---|
| Internet Connection | Needs 1 phone line per computer unless we can go with Cox Cable We have experience and are able to connect to T-1, DSL, ISDN also – whatever you can provide. |
| Card system | No employee required to set up user – all done by customer. Cash inserted in bill acceptor, only requiring harvest commensurate with volume (1-3 times per week) |

2 of 4

| | F-1 Racing Sim, Quake World – Quake Spy, NFL Blitz, Combat Flight Simulator, You Don't Know Jack XXL. Note: All titles available on all stations all the time – no need for insertion of CD's. Titles frequently updated and we will any software for which there is demonstrated demand. |
|---|---|
| Internet Connection | Needs 1 phone line per computer unless we can go with Cox Cable We have experience and are able to connect to T-1, DSL, ISDN also – whatever you can provide. |
| Card system | No employee required to set up user – all done by customer. Cash inserted in bill acceptor, only requiring harvest commensurate with volume (1-3 times per week) |

| | CyberZone |
|---|---|
| Training | Provide training for RTC personnel. |
| Technical support | Will respond to problems within 3 working days. Our contract stipulates we will make every effort to replace hardware within two working days. On-site technical support (within 24 hrs) is 7 days. Also, we have telephone support and a special email support group. |
| User fees | Computer use: $5.40. Will negotiate with us for reduced usage fees. |
| Hours of operation | At least 45 hours per week. |
| Delete computers | If after 90 days the ave. revenue for a computer workstation (payable to CyberZone) is less than $140 per week for any continuous 8-week period, CyberZone may remove the computer. (Need approx. 4.7 hours per computer per day). |
| Add computers | If RTC demonstrates the need is greater, CyberZone will add computer(s). |
| Escape clause | If RTC doesn't meet the above (under delete computers) or any obligations in Section 3 of contract (i.e. proper security measures, record keeping, etc.), CyberZone can take out any or all computers. |
| Revenue Sharing | $4.30 to CyberZone (approx. 80%), $1.10 to RTC (approx. 20%). Discount to RTC, as follows, if ave. gross weekly revenue per computer for all computers exceeds the amount in ():<br>- 1% ($175) $\cong$ RTC gets 21% if >4.7 hrs per computer per day.<br>- 2% ($200) $\cong$ 22% if 5.4 hrs per computer per day.<br>- 3% ($225) $\cong$ 23% if 6.1 hrs per computer per day.<br>- 4% ($250) $\cong$ 24% if 6.7 hrs per computer per day.<br>- 5% ($275) $\cong$ 25% if 7.4 hrs per computer per day.<br>If gross weekly revenue per computer for all computers exceeds $275, then in addition to |

2 of 4

3 of 4

| | CyberZone |
|---|---|
| Training | Provide training for RTC personnel |
| Technical support | Will respond to problems within 3 working days. Our contract stipulates we will make every effort to replace hardware within two working days. On-site technical support (within 24 hrs) is 7 days. Also, we have telephone support and a special email support group. |
| User fees | Computer use: $5.40. Will negotiate with us for reduced usage fees. |
| Hours of operation | At least 45 hours per week. |
| Delete computers | If after 90 days the ave. revenue for a computer workstation (payable to CyberZone) is less than $140 per week for any continuous 8-week period, CyberZone may remove the computer. (Need approx. 4.7 hours per computer per day). |
| Add computers | If RTC demonstrates the need is greater, CyberZone will add computer (s). |
| Escape clause | If RTC doesn't meet the above (under delete computers) or any obligations in Section 3 of contract (i.e. proper security measures, record keeping, etc.), CyberZone can take out any or all computers. |
| Revenue Sharing | $4.30 to CyberZone (approx. 80%), $1.10 to RTC (approx. 20%). Discount to RTC, as follows, if ave. gross weekly revenue per computer for all computers exceeds the amount in ( ): <br> - 1% ($175) $\cong$ RTC gets 21% if > 4.7 hrs per computer per day. <br> - 2% ($200) $\cong$ 22% if 5.4 hrs per computer per day. <br> - 3% ($225) $\cong$ 23% if 6.1 hrs per computer per day. <br> - 4% ($250) $\cong$ 24% if 6.7 hrs per computer per day. <br> - 5% ($275) $\cong$ 25% if 7.4 hrs per computer per day. <br> If gross weekly revenue per computer for all computers exceeds $275, then in addition to |



# USCGRTC

# WITNESS STATEMENTS

# EXHIBITS (D-1) THRU (D-10)

# STATEMENTS BY WITNESS

**D.** The Month of March of 2000 was a busy month for 0.4 K.E.Lunday who engineered and tried to revoke my permit by ordering his OOD'S to explicitly pass the word and gather statements that would show a cause for my revocation from USCGRTC .

(D-1)-Letter dated Dec.9,1999 0-from 4 K.E.Lunday to the plaintiff for violating 1740.E1 Para:2.d

on "Dec.8,1999"and using "18 U.S.C.1382" a criminal offense ,which (a) requires prior notification

and a Trial,purposely omitted the proper venue located in DoD 1344-07 Para:6.5.2and 6.5.5

as stated previously because due to my health I do not hunt for the OOD if not at his office.

(D-2)-Letter dated March 2,2000 from 0-4 K.E.Lunday to plaintiff. What ever information Lunday received from P.O.Burner is a absolute lie,I do not sit anywhere for 20 minute or read magazines at the

Cyber Cafe,I pass through to see my clients "see Cyber Cafe (C-1).I do not loiter and will not park at

the Student/chapel because of the distance".

(D-3-)-note dated 3/2/00 the hand written note by 0-4 Lunday to plaintiff's

(D-4)- more of the same as (D-3).

(D-5)-Affidavit of EMC William E Smith Dated 6 Mar.00 .Plaintiff was upset because of the constant

harassment ,no profanity was  used and anyone who talks about me I want to know what was said..I

am sitting in the lobby in front of the OOD office to see the OOD,chief smith who spells my name

correctly,I been working at USCGRTC since 1982 smith states he never seen me before and further ask

if I was still allowed on base,unbeknown to Smith I do not ask anyone for their social security numbers.

and in his class Chief Smith made more then those disparaging remarks about me as told to me by

students .

(D-6)-Affidavit of EM1 James E Ross Dated 5 mar,00 chief W .E .Smith and  used the same day ,same

typewriter and the same Notary Public,due to both (D-5) do not know what they are talking about the

best of their knowledge has failed.

(D-7)-Hand written note dated 9 Mar,00 by Bryan J Duncan ,this note proves statement about me by

chief Smith See (D-5)and the card that B.Duncan gave me was an appointment

(D-8)-Letter Dated 7 Mar.00 written by plaintiff to 0-4 K.E.Lunday my complaint about chief Smith.

(D-9)-Questioning the vindication of these sworn statenents are hard to find except I did have a drink

and read a magazine but it was done in the back lobby.

(D-10)-Statement Dated 17 00 by J.R.Rigsby . First a wrong student Smith appeared it took less 3

(D-1)-

**U.S. Department
of Transportation**

**United States
Coast Guard**

Commanding Officer
U. S. Coast Guard
Training Center Yorktown

Yorktown, VA  23690-5000
Staff Symbol: cl
Phone: (757) 898-2374
FAX: (757) 898-2329

5720
December 9, 1999

Mr. Jack A. Schwaner
816 Chatsworth Drive
Newport News, VA  23601

Dear Mr. Schwaner:

     I received information that on December 8, 1999 at approximately 5:00pm the Officer of the Day, Chief Petty Officer Bach, discovered you aboard Training Center Yorktown conducting commercial solicitation.  You had not checked in with the Officer of the Day as required by paragraph 2.d of Training Center Yorktown Instruction 1740.1E.  You previously signed a certificate on January 20, 1999 that you understood and would abide by Training Center Yorktown requirements.

     Your actions in failing to check in with the Officer of the Day are in violation of those requirements.  Prior to conducting commercial solicitation aboard the base you must check in with the Officer of the Day.  It is unacceptable to merely inform Security or a member of the duty section other than the Officer of the Day.

     Future violations of Training Center Yorktown Instruction 1740.1E will result in revocation of your permission to solicit aboard the Training Center and may result in the Commanding Officer barring your access to the base, with violation of that bar enforceable under 18 U.S.C. §1382.

     If you have any questions, please contact me at (757) 898-2376.

Sincerely,

K. E. LUNDAY
Lieutenant Commander, U. S. Coast Guard
Legal Officer
By direction of the Commanding Officer

(D-2)-

On Thursday February 17, 2000 approximately 1900 I saw Mr. Schwaner in the cyber café. Mr. Schwaner was sitting at the table in front of the drink machine reading a magazine. He did not speak to me but I remember him saying something to YN1 McDonald whom was working the café that night. He stated that his appointments did not show up and he was left hanging.

Jimmy L. Burrier, MK1, USCG

(D-3)-

3/2/00

Talked to Mr S. By phone. Explained he would be getting warning re: CyberCafe incident on 17 Feb. No revocation ATT.

- explained CyberCafe essentially "off line" w solicitors — said even pass thru C.C.

- he can park in chapel area lot rather than walk thru from behind Lincoln.

- he asked for chairs in office in Lincoln. I didn't commit.

- he asserted CMC was gunning for him — and relayed that 2OODs said same — I asked for names to investigate but he didn't have any.

- I reclarified need to check in w/ OOD.

- I'll send warning letter.

(D-4)-

## AFFIDAVIT OF EMC WILLIAM E. SMITH

This statement concerns the events happening on the night of 06 March 2000 and are true to the best of my knowledge and recollection. While performing my duties as the OOD, I proceeded out of the OOD office at @1900. I am unsure as to the exact time I noticed Mr. Jack Schwaner sitting in the lobby of Lafayette Hall but this was the first time I had noticed him on base and Security had not notified me of his arrival. As the OOD Mr. Schwaner did not make his presence known to me and having failed to check in with me I approached Mr. Schwaner and asked if he was still allowed on base. He informed me that his pass was still valid and that if I didn't believe him to call LCDR Lunday and verify it. I told Mr. Schwaner that is exactly what I was going to do because I was under the impression that he was no longer allowed onboard the Training Center. I told Mr. Schwaner that his pass appeared to be valid but that the Cyber Cafe was off limits. He stated that he was aware of this fact. I proceeded back to the OOD office and Mr. Schwaner approached me as I was opening the door. I asked him if I could help him with something and he informed me that he was going to listen to my conversation with the Legal Officer. I informed him that it was none of his business what my discussion with the Legal Officer was and that all I was doing was verifying whether he was still allowed onboard or not. I phoned LCDR Lunday and he informed me that Mr. Schwaner was still authorized to be onboard Training Center Yorktown. After my phone call with Mr. Lunday I proceeded back out to make a round of the base and Mr. Schwaner was in the Lobby waiting. I informed him that his pass was still valid and that he was authorized to be onboard. Mr. Schwaner became very hostile and said that me and the Legal Officer were back there G-- Damn talking about him. He wanted to know why he didn't have the right to listen. I informed him there was no reason to get upset that all I was doing was verifying his pass. He became very agitated and finally I told him to calm down or I would have to ask him to leave the base. He said you're damn right I'm upset and I told him once again to calm down or Security would escort him off the base. He proceeded to talk about his appointments and that he knew where he was and was not allowed. I informed him I didn't care about any of the other details, he was allowed on base and that was all I needed to know. Sometime later I proceeded to the Cyber Cafe and told the watchstander that if he happened to see Mr. Schwaner in the Cyber Cafe to let me know. I did not need to explain who Mr. Schwaner was, he was very aware of who I was talking about. At no time did I tell anyone on base including my students to avoid Mr. Schwaner.

(D-5)

## AFFIDAVIT OF EM1 JAMES E. ROSS

The following is my statement for my duty night on Monday, 06 Mar 00. I stand my watches as the SMAA/FIW onboard TRACEN Yorktown. The SMAA's duty room is located in Lincoln Hall, on the first deck, in room 138. It was approximately 1905 on my watch, and I was talking to one of the students in the EM-A 03/00 class, when the OOD appeared at my door. He asked if all was well? At that time he informed me about his discussion with an Insurance Agent on base. He told me he was in an unauthorized area of the base. I asked the OOD, what did he look like? He told me that he was in the Lincoln Hall lobby looking around. I told the OOD that I wanted to get a look to see what he looked like, so I would know in the future. I walked out into the lobby, and he approached me and asked if I knew the OOD's name. I told him the OOD's name was Chief Smith. He then asked if I knew his first name. At that time I told him the OOD's first name was Chief. He asked again if I knew what his first name was, again I told him I knew him as Chief. At that time he glanced at my name tag, and I started another round. While on my rounds during the night , students who I knew asked me did I see an older man asking individuals for their SSN. I told them, you never want to give any personal info to anyone. After the 2000 round, I didn't see the Insurance salesman again. The next morning in class I asked the two classes that are in session if they have been approached/hassled by an Insurance salesman. That is when I realized how much the students are being hassled. At that time I talked to EMC Smith and called you.

I swear that this statement is true and correct to the best of my knowledge.

_____
JAMES E. ROSS
Electricians Mate First Class
U.S. Coast Guard

COMMONWEALTH OF VIRGINIA          )
                                  ) ss:
COUNTY OF YORK                    )

SUBSCRIBED TO AND SWORN TO before me this 9th day of March, 2000.

_____
JAMES R. JEFFERY
NOTARY PUBLIC for the Commonwealth of Virginia
My Commission Expires on March 31, 2003

(D-6)-

09 MAR 00

ON MONDAY MARCH 6th a gentleman came into LINCOLN hall. He was there to give out the social security cards he had made for people. We ingaged in conversation and he brang up the fact, I could get a card for free, he said he was a retired veteran, worked for a non-profit organization. I agreed to get one. and he took down my social and left. He said he would probably see me the next day.

On Tuesday march 7th I saw this man again. He gave me my card. He then tried to show me some insurance papers. I said people had asked about him to our class advisor (Chief Smith) and teacher (EMI Ross) and they said we didn't really need his insurance, since most of us already had insurance. He took offense to this and became angry when he found out it was Chief Smith. He asked if I new about thier altercation at Lafayete and how Chief Smith attacked him. I said I new Chief Smith talked to him from other classmates. He asked if I would make a statement against Chief Smith for badgering him. I said I didn't see anything it was just hear-say. He then showed me a letter that stated he had a right to be on the base. He made the comment that he was sorry I had to cancel my appointment since it was the only one he had. He'd made No Reference the previous evening that to get a social security card, it ment that I had to hear his pitch for insurance. I had no knowledge of any appointment other than maybe just receiving my card. he then said he would see me again when all of this was straighting out.

I SWEAR THIS STATEMENT is true to the best of my Knowledge.                              (1)          Ryan A Duncan

COMMONWEALTH OF VIRGINIA     )
                            ) ss:
COUNTY OF YORK               )

SUBSCRIBED TO AND SWORN TO before me this 9th day of March, 2000.

_____

JAMES R. JEFFERY
NOTARY PUBLIC for the Commonwealth of Virginia
My Commission Expires on March 31, 2003

2

(D-7)-


TO:                                          7 MAR.2000
K.E.LUNDAY LTCDR
USCG
USCGTC.


FROM:
JACK A.SCHWANER


DEAR SIR,

        THIS IS A FOLLOW UP LETTTER CONCERNING CHIEF SMITH
THAT ACCURED ON MAR.7,2000 AFTER I CLEARED WITH THE OOD,I WENT
TO LINCOLN HALL QUARTERDECK TO MEET WITH MY APPOINTMENT WHO
WAS TOLD BY CHIEF SMITH THAT I WAS UNDER INVESTIGATION AND NOT
TO TALK TO ME,AND THIS INDIVIDUAL FURTHER STATED THAT CHIEF
SMITH STATED THE SAME BEFORE THE WHOLE CLASS I HAVE NO REASON
TO DISBELIEVE IT---HE FOLLOWS ME LIKE A HOUND DOG AFTER A BONE
AND QUESTIONS ANY PERSONNEL ON THE QUARTERDECK AFTER I LEAVE
ABOUT MY ACTIVITY LOOKING FOR A MISSTEP,ANY REPORTS FROM THIS
CHARACTER SHOULD BE TAKEN WITH A GRAIN OF SALT.
        MONEY IS SECONDARY,MY REPUTATION IS FIRST THEREFORE
I WILL CONSULT WITH A ATTORNEY TO SEEK WHAT EVER LEGAL ACTION
I CAN ATTAIN AGAINST THIS INDIVIDUAL.



                        RESPECTFULLY,

                        JACK A.SCHWANER

## AFFIDAVIT OF EM1 JAMES E ROSS
### (9 MAR.2000)
IT APPEARS THAT I AM PRESENT AND OUT OF NO WHERES THE OOD
MATERIALIZES AT THE SMAA DOOR AND STATES I WAS IN A UNAUTHORIZED
AREA OF THE BASE AND IN LINCOLN HALL LOOKING AROUND AND LATER
HE STATES I WAS ASKING INDIVIDUALS FOR THEIR SSN,THE ONLY THING
THATS FACTUAL IS I DID ASK EM1 ROSS WHAT THE OOD,S NAME WAS
AND HE SAID SMITH AND I ASKED HIS FIRST NAME AND HE SAID CHIEF
AFTER THAT CONVERSATION I STOPPED TALKING AND LEFT.THE FACT
I TALKED TO ONE PERSON THAT NIGHT(DUNCAN)AS FAR AS STUDENTS
BEING HASSLED BY ME FIRST I DO NOT NEED TOO AND I DO NOT DO
IT PERIOD.I AM SURE THAT HE DID GET TOGETHER WITH EMC.SMITH
AND STILL DID NOT GET IT RIGHT OUTSIDE OF EMC SMITH GETTING
MY NAME SPELL RIGHT,AND THE CALL I PRESUME WAS TO YOU.

## SWORN STATEMENT OF BRYAN DUNCAN
### (9 MAR.2000)
THIS IS THE CLOSEST STATEMENT TO THE TRUTH,I WAS THERE FOR AN
APPOINTMENT 6 MAR,2000,BUT NOT TO PASS OUT SNN CARDS ,IT WAS
 HE WHO ENGAGED IN A CONVERSATION,I STATED IT WAS FREE AND
THAT I REPRESENTED A NON-PROFIT ASSO.AND WILL EXPLAIN IT TO
HIM THE NEXT DAY,THE NEXT DAY I ARRIVED AS I SAID,I MET B.DUNCAN
GAVE HIS SSN CARD,ASKED HIM IF EVERYTHING WAS CORRECT,HE SAID
YES
AND I WAS ABOUT TO PROCEED TO EXPLAIN MBA WHEN HE SAID TO ME
THAT CHIEF SMITH STATED I WAS UNDER INVESTIGATION AND NOT TO
TALK TO ME AND THAT HE SPOKE TO EVERYONE IN HIS CLASS,AND YES
I WAS UPSET AND I STATED I WILL SEE HIM NEXT WEEK AND THAT WILL
PROVE THAT CHIEF SMITH LIED,ANYTHING OTHER IN HIS STATEMENT
WAS COACHED(AFTER FINDING THE REAL FACTS ABOUT CHIEF SMITH
STATEMENTS MY INTENTIONS WERE TO HAVE B.DUNCAN MAKE A TRUE
STATEMENT)I FIND IT RATHER STRANGE HOW B.DUNCAN SWORN STATEMENT
POPPED OUT OF THE GENIE BOTTLE AND THE WORD PITCH CAME OUT OF
HIS MOUTH,IT SEEMS THE 9TH OF MARCH WAS A BUSY DAY FOR SWORN
STATEMENTS.

## STATEMENT OF J.R,RIGSBY TC1
### (17 FEB,2000)
STATES I APPEAR CONFUSED BECAUSE I HAD THE WRONG STUDENT SMITH
SHOW UP,I CAN ASSURE ANYONE THAT I DO NOT SUFFER FROM MEMORY
LOST AND KNEW IMMEDIATELY IT WAS THE WRONG SMITH AND  I NEVER
TALK TO 2 OR 3 STUDENTS AT ONE TIME,NOT ONLY IS IT AGAINST
REGULATIONS,AND TALKING TO ONE IN ONE DAY IS ENOUGH FOR ME,ITS
ALL I DO.AND SAYING I VIOLATED THE LETTER ???? HE COULD OF
QUICKLY COMMUNICATED WITH THE OOD INSTEAD OF WALKING TO LAFAYETTE
HALL,HE DID DO SOMETHING RIGHT JUST LIKE CHIEF SMITH HE DID
SPELL MY NAME RIGHT.

## STATEMENT OF JIMMY L BURRIER MK1
### (17 FEB,2000)
THAT MAY BE TRUE I PROBABLY WAS SITTING AT A TABLE DRINKING
A COKE AND READING A MAGAZINE,AND YOU DID CONSIDER THIS A
VOILATION IN ACCORDANCE TO YOUR PERSONAL DEFINATION OF
SOLICITATION WHICH I WAS NOT AWARE,AND AS FAR AS ME SAYING I

(D-10)-

On Thursday, 17 Feb 2000, I observed Mr Jack Schwaner on the Quarterdeck of Steuben hall. He had advised the student watchstander that he had an appointment with a certain Brian Smith. The watchstander knew of a student in Steuben with the last name of Smith and departed to bring him to the quarterdeck. Upon arrival the student advised Mr Schwaner that he was not named Brian, and did not have an appointment with him. Mr Schwaner appeared confused for a short time, and then appeared satisfied with the response. I departed to continue my round. Approximately 20 minutes later, I returned to Steuben Hall and observed Mr Schwaner sitting in the rec deck TV lounge with the student "Smith" and 2 other students, both of which were in uniform. I immediately departed to Lafayette Hall to contact the OOD, as it had appeared that Mr Schwaner had violated his letter. Upon returning to Steuben hall, Mr Schwaner had previously departed; this was recorded by the student watchstander.

J.R. Rigsby, TC1, USCG



# USCGRTC

# JACK A.SCHWANER REVOCATION
# &
# TWA ATTORNEY LETTERS
# EXHIBITS (1) THRU (10)

# E.  Jack A.Schwaner revocation, TWA Attorney and TWA Trial results

(E-1)-Letter of Revocation/Denial concerning Trans World Assurance Co. dated 2 Aug.99

(a)-K.E.Lunday  violated USCG regulations and DoDI 1344-07 instructions in denying TWA

with out the approval of USCGRTC commander.(b)-In the United State your are innocent until

proven guilty ,0-4 K..E. Lunday missed that point. (c)-3 Coast Guard member filed a class action

lawsuit,don;t the Coast Guard wish to be that lucky. TWA did not need a opportunity for a Show-

Cause Hearing. (won the lawsuit)

(E-2)-Letter of revocation concerning Jack A.Schwaner to TWA by 0-4 Lunday dated 2 Aug.99.

(E-3)-Letter of oversea approval to TWA by the Office of the Assistant of defense dated 5 Aug,99

(E-4)-Letter to Commander USCGRTC from Plaintiff dated Aug.20,99,requesting why the plaintiff

with no charges and no show-cause hearing as given to TWA See:(E-3).

(E-5)-Letter dated Aug.24,99 from TWA attorney to -4 K.E.Lunday ..TWA attorneys are being kind to

0-4 K.E.Lunday who had no idea of what he was doing or happening as this letter show. In the past I

represented TWA and a statement of understating had to be sign by the Insured.

(E-6)-Letter dated Aug.26,99 to 0-4 K.E.lunday from the plaintiff requesting Foia that was never

answered;

(E-7)-Letter dated 30 Aug.99 to the President of TWA from Jack A Schwaner resigning. under duress.

Missing is the fact that in order to receive my permit back to go to work in USCGRTC I must first

resign from TWA.

(E-8)-Letter dated 31 Aug,99 From 0-4 K.E.Lunday to Plaintiff reinstating my MBA permit

(E-9)-Letter dated 28 Sept.99 from 0-4 K.E.Lunday to TWA attorneys the TWA denial to USCGRTC

is resented and 0-4 Lunday has the audacity to justify the damage he created & TWA past performance.

TWA was awarded $200,000 against the3 Coast Guardsmen.

(E-10)-Letter dated 14 Dec,99 to 0-4 K.E.Lunday from TWA President his approval of future agents.

-1)

**U.S. Department of Transportation**

**United States Coast Guard**

Commanding Officer
U. S. Coast Guard
Reserve Training Center

Yorktown, VA  23690-5000
Staff Symbol: cl
Phone: (757) 898-2374
FAX: (757) 898-2329

5720
August 2, 1999

Trans World Assurance Company
Attn:  Charles B. Royals
885 South El Camino Real
San Mateo, CA 94402

Dear Mr. Royals:

Your June 29, 1999 request for permission to solicit on board Coast Guard Reserve Training Center is denied.  Further, prior permission for your agent, Mr. Schwaner, to solicit on board, granted in my January 28, 1999 letter, is revoked.  Trans World Assurance and its agents are prohibited from engaging in commercial solicitation on board Reserve Training Center for a period of one year from the date of this letter.  You may reapply for permission upon completion of that period.

The basis for this action is receipt of recent reports that Trans World Assurance has engaged, and continues to engage in, misleading and/or deceptive practices toward military members in California and Washington that violate the provisions of Commercial Solicitation Controls at Coast Guard Units (COMDTINST 1740.2G).

I find there is good and sufficient reason under paragraph 6.a of COMDTINST 1740.2G for this action, specifically under subparagraphs (2), (3), and (4).

Under COMDTINST 1740.2G, you have the opportunity to show cause why this denial/revocation should not have been issued.  You may respond in writing to the above address.

Sincerely,

K. E. LUNDAY
Lieutenant Commander, U. S. Coast Guard
Legal Officer
By direction of the Commanding Officer

Encl:  Commercial Solicitation Controls at Coast Guard Units (COMDTINST 1740.2G)

(E-2)



U.S. Department
of Transportation

**United States
Coast Guard**

# Memorandum

| | | | |
|---|---|---|---|
| Subject: | REVOCATION/DENIAL OF PERMISSION FOR TRANS WORLD ASSURANCE TO SOLICIT ON BOARD | Date: | 2 Aug 99<br>5720 |
| | | Reply to<br>Attn. of: | cl |
| From: | cl | | LCDR Lunday<br>x2376 |
| To: | cx | | |

1. As we discussed last Friday, I recommend (and unless otherwise directed) will issue the attached letter revoking and denying permission for Trans World Assurance (TrWA) and its agents to solicit on board RTC for one year.

2. RTC granted Mr. Schwaner permission to solicit on 28 Jan 99 for one year. I received a letter from (TrWA) dated 29 Jun 99 requesting renewal of permission for Mr. Schwaner to solicit on board.

3. MLCPAC recently reported that three Coast Guard members filed a class action lawsuit against TrWA in California for misleading and deceptive trade practices. TrWA is selling a product called Flex Dollar Builder that is advertised as a savings/investment plan but is actually life insurance. Clients are led to believe that 100% of funds contributed go toward savings or investment, when in reality only a portion of the funds are saved, the rest going toward insurance premiums. Additionally, TrWA has not stopped allotments in many cases when the client has cancelled the plan.

4. I spoke to the U. S. Attorney's Office in Seattle. Dept. of Justice filed a civil suit against TrWA for misrepresentation in Apr 98, based on a three-year investigation into the company by Defense Criminal Investigative Service. The U. S. settled with TrWA in Dec 98, although TrWA still has not met the conditions of the settlement. Finally, the U. S. Attorney's Office reported that Ohio and Florida were currently conducting investigations against TrWA and its sister company, American Fidelity Insurance.

5. In my opinion the above information provides "good and sufficient reason" required for revoking solicitation permission per COMDTINST 1740.2G. TrWA has the opportunity to show cause why the determination should not be made.

K. E. LUNDAY

(E-3)

Exhib. (6)



**OFFICE OF THE ASSISTANT SECRETARY OF DEFENSE**
4000 DEFENSE PENTAGON
WASHINGTON, DC 20301-4000

AUG - 5 1999

FORCE MANAGEMENT
POLICY

Mr. Charles B. Royals
President, Trans World Assurance Company
885 So. El Camino Real
San Mateo, CA 94402

Dear Mr. Royals:

This is in reply to your letter requesting the privilege to solicit life insurance sales on Defense installations in foreign areas during Fiscal Year 2000 beginning October 1, 1999. In accordance with DoD Directive 1344.7, "Personal Commercial Solicitation on DoD Installations," dated February 13, 1986, your application is approved.

We invite your attention to the provision of the above-cited Directive that requires the accredited insurer upon receipt of this letter to send to the applicable unified commander a verified list of agents currently accredited for overseas solicitation.

Material changes affecting the corporate status or financial conditions of the insurer, which may occur during the fiscal year of accreditation, must be reported to the Department of Defense at the time of occurrence. Failure to report such material changes can result in termination of accreditation.

Sincerely,

Victor Vasquez, Jr.
Deputy Assistant Secretary of Defense
(Personnel Support, Families and Education)

(E-4)

TO:

    COMMANDING OFFICER                         AUG.20,1999
    U.S.COAST GUARD
    RESERVE TRAINING CENTER
    YORKTOWN,VA.23690-5000

FROM:

    JACK A.SCHWANER
    816 CHATSWORTH DR.
    NEWPORT NEWS VA.23601.

Dear Sir,


       I was recently informed verbally and followed up by
letter dated 2 Aug,1999 by Lt.Cdr.K.E.Lunday addressed to
Trans World Assoc.Co.stating their privilege to solicit on
on board USCGRTC denied,because of the Company has engage in
and continue to engage in misleading and/or deceptive practices
toward Military members in CALIFORNIA AND Washington.
       Their problems is secondary to mine,In the same letter
it states that my letter granted me the privilege to solicit
for the Military Benefit Assoc.dated Jan.28,1999 was revoked.
       In this letter is a list voilations committed on board
USCGRTC,if any of these allegations may pertain to me,I will
response accordingly which is complicated because all are vague
and no specific alleged charges are included,so I will do my
best to identify the meaning located in (COMDTINST 1740-3G sub-
paragraphs (2),(3),(4) and 5.C as indicated by Lt Cdr.Lunday.
       6.A-DENIAL AND REVOCATION OF ON BOARD SOLICIATION.
A UNIT COMMANDING OFFICER SHALL DENY OR REVOKE PERMISSION FOR
A COMPANY AND ITS AGENTS TO COMDUCT COMMERCIAL ACTIVITIES AT
THE UNIT FOR A GOOD AND SUFFICIENT REASON,AND NOT LIMITED TO:


       6.A.(2) COMMISSION OF ANY OF THE SOLICTATION PROHIBITED
IN PARAGRAPH 5.C.


       6.A.(3) SUBSTANTIATED COMPLAINTS OR ADVERVSE REPORTS
REGARDING,EITHER THEIR QUALITY OF GOODS,SERVICES OR COMMODITIES.
THE MANNER IN WHICH THEY ARE OFFERED FOR SALE,OR THE METHOD
AND TERM OF FINNACING.


       6.A.(4)   KNOWING AND WILLFUL VOILATIONS OF THE COMSUMER
CREDIT LAWS IN 15 U.S.C.15 1601-1693(R).

---

       IF THESE ARE THE FINDINGS:PERTAINING TO (COMDTINST
1740.2G) I WILL ANSWER EACH PARAGRAPHS IN THE SAME ORDER AS
STATED ABOVE.


Page 1 of 3

6.A.(2)-is related to 5.C,listing 8 prohibited practices if
          these findings or finding may pertain to me I
          categorically deny any and all parts of 5.C.

6.A.(3)*this paragraph of prohibited practices will be addressed
          in my final summation,by my interpretation,it seems
          to pertain to use car salesmen.

6.A.(4)-this paragraph shows absolutely no relationship
          regarding life insurance agents because it deals
          only with consumer protection laws.

        * Concerning paragraphs 5.C and 6.A.(3) and having no
idea if any of these findings pertains to me,Therefore I am
invoking a FOIA REQUEST that should be responded within 20
daya to the Following:

(1)Any and and all names,positions,ranks who has or had
    substantiate conplaints or adverse reports to my conduct.

(2)any and all letters,memos,notes that had any bearing in my
    revocation on USCGRTC,including existing web pages imformation
    concerning this matter.

(3)any and all names,rank and positions of personnel who
    instituted or participated in my revocation on USCGRTC.

I request to have the presence of all my accusers in a imformal
show cause hearing that was denied to me on by USCGRTC to defend
myself,--Cdr.Lunday told me to write a letter addressed to the
Commanding Officer in USCGRTC for final consideration.
            For me to write a letter to a task I cannot complete
because of the unknown findings I am inclosing Regulation
D.O.D.1344-7 page 14 (B.1)in support to instituted a show cause
hearing without Command influence or prejudice.I,m not a neophyte
in the fairness of the established Military,some times it fails
to inplement and uphold the U.S.constitution and the laws of
the land the Military were sworn to protect,and any injustice
within the system voiding the rights of individuals only
leavesone recoarse to have anyones grievance heard in Federal
Court and for the defendant presenting abutting evidence that
the charges brought forth by the Military
for a final decision.I have no qualms to challenge the Military
establishment.I did this before and won (article inclosed),but
because its trivial nature I prefer to have a informal show
cause hearing.
            I was also denied as well as Trans World Assur.Co.
the solicitation privileges on board USCGRTC through effords
of Lt.Cdr.Lunday or the powers to be concerning the Federal
Court case in the involvement in the states of California and
Washington and was told by me that all charges were dismissed,
Lt.Cdr.Lunday stated he had information to the contrary and
I am assuming this because of a third party imformation that

Lt.Cdr.Lunday called the prosecuting attorney I believe
his name is Jennings for a input concerning Trans World Assur.
and the the charges were dismissed,but to get intouch with
a attorney who have pending suits in what I call nuisance
cases hoping to make a fast buck and settle out of court,
a ploy commonly used by lawyers,I am sure that he gave
Lt.Cdr.Lunday a inpartial rendition,and if you believe that
I have a bridge to sell Coast Guard.

    I am sure USCGRTC solicitation  privileges would not
be denied to Prudential,New York life and many other large
insurance companies who were sued for misreprenting their
policys to the public that created class action suits and paid
millions in refunds,pulse what ever.

    That brings again the D.O.D.regulations that are
copiedby the Coast Guard in almost the same identical manner.

(A) D.O.D.approves all Insurance companies the privilege of
all Federal Instllation here and over seas with the
exception of National Security or by order of the
Commanding Officer of a Military installation for good
and sufficient reasons such as welfare,health and morale.

(B) D.O.D.requires submission of all Life Insurance Company
policys to conform and be approved under D.O.D.guidlines
and state clearly if any exceptions exist.

(C) Trans World Assoc.was never ban to conduct business on any
Military Installation in the states which are approved by
the Bureau of Insurance,with one exception USCGRTC in Va.

(D) Trans World Assoc.has no Insurance Agents on the bar list
that includes the D.O.D,Army,Navy and airforce as I stated
and the Company as stated in paragraph (C).

(E) Trans World Assoc.is duly licensed and meets all requirements
in the Sate of Virginia.

A second time I am invoking a FIOA request to the following:

(1) All and any written correspondence,communiques,letters
memos,notes and web information including names,rank if
it applies,and thier positions inside or out of the Legal
office cammanded by Lt.Cdr.K.E.Lunday who took a active
part in denying Trans World Assoc.solicitation privilege
in USCGRTC Yorktown,Va.

(2) exception to paragraph (1) a new FOIA request I am including
civilians name,position if any and a point of contact who
knowingly or unknowingly he or she that participated
in the denial concerning Trans World Assoc.in or out of
the State of Vinginia.

                Respectfully,

P.S. Please excuse my errors in spelling and grammar my word
processor has a mine of its own.

(Oage 3

(E-5)

LAW OFFICES
PRAHL & McBRIDE
A PROFESSIONAL CORPORATION
101 WEST BROADWAY, SUITE 1410
SAN DIEGO, CALIFORNIA 92101-8215

ROBERT A. PRAHL
R. MICHAEL McBRIDE

TELEPHONE: (619) 236-1277
FACSIMILE: (619) 702-0673

August 24, 1999

Lieutenant Commander K.E. Lunday
U.S. Coast Guard Reserve Training Center
Yorktown, VA 23690-5000

     Re:    Trans World Assurance Company

Dear Lieutenant Commander Lunday:

     I appreciate your taking the time to discuss with me your letter of August 2, 1999 to the President of Trans World Assurance Company ("TWA"). I am even more appreciative of your professional approach to the matters contained in your letter and willingness to reconsider your decision to deny permission to solicit insurance sales aboard your installation based upon information provided by the company. The three issues you requested be addressed are as follows:

     1.    You have talked with staff members in the United States Attorney's office in the state of Washington who have advised that their office had filed a lawsuit against TWA and American Fidelity Life Insurance ("AMFI") for fraud and misrepresentation. While the lawsuit has been settled and dismissed, they advised you that the company has not as yet complied with all of the provisions of the settlement agreement. You asked for substantiation of compliance with the settlement agreement.

     2.    The staff member in the U.S. Attorney's office also advised you that a lawsuit involving three Coast Guardsmen has been recently filed against both companies in California alleging the same type of conduct as was detailed in the Washington lawsuit. I am unclear as to whether you personally talked to the plaintiff's attorney for the three Coast Guardsmen regarding the case or were merely repeating information from the U.S. Attorney's office. You expressed concern based upon both cases that the company's agents were misrepresenting the product they were selling to Coast Guardsmen. You asked for information regarding the California case.

     3.    Apparently the U.S. Attorney's office related to you that the portion of the settlement agreement that had not been complied with by the company relates to the Florida Insurance Commissioner. You related you had visited the Florida Commissioner's website and had read a September 1998 press release involving AMFI and its policy, the Flexible Dollar Builder, that led you to believe that Florida also felt that AMFI was misrepresenting its product. You asked that I address the Florida situation as it related to TWA.

C:\B-99\Royals\Lunday L0824.wpd

Lieutenant Commander K.E. Lunday
August 24, 1999
Page 3

Some background may be useful to you in understanding the situation in which the company now finds itself. Two insurance agents at Fort Lewis, Washington were charged by that base with violating various military regulations in soliciting sales. In accordance with Army regulations, a hearing was conducted and following the hearing the agents were barred from the installation. As often happens in these cases, the Washington insurance commissioner's office learned of the case and conducted their own investigation. When I was on active duty there was a common expression, "timing isn't important, it's everything." Unfortunately for the company, their timing was poor. Located in the same building as the insurance commissioner is a branch office of the Inspector General of the Department of Defense.

An investigator in the Inspector General's office, a Henry Mungle, heard about the Washington investigation and conducted his own investigation of the companies. Apparently because of their close prior relationship and similar policies, Mr. Mungle investigated both companies. Mr. Mungle produced an investigation in which he alleged numerous violations of law. Based upon the investigation and Mr. Mungle's affidavit, an assistant U.S. attorney in the state of Washington filed a legal action against both AMFI and TWA. Shortly after filing the case, the assistant U.S. attorney made a motion in federal court to enjoin the companies from any future sales of their insurance products to military personnel. In denying the motion, the federal judge assigned to the case expressed the opinion, after carefully reviewing Mr. Mungle's affidavit and other documents generated by the U.S. Attorney, that the injunction would not be issued and he doubted seriously that the U.S. Attorney would win the underlying case. Following the denial of the motion for an injunction, the parties entered into negotiations for settlement of the action. The companies in the settlement negotiations agreed to address the areas of greatest concern to the U.S. Attorney. Of interest to you is that the companies agreed to increase the training of their agents to ensure their products were correctly represented to consumers and that agents representing the companies fully understand and comply with all Department of Defense regulations. Other matters addressed by the settlement agreement are discussed below.

The settlement agreement only took a few days to prepare and be approved by AMFI, TWA and the U.S. Attorney in Washington state, but the Justice Department in Washington, D.C. took several months to finally approve the settlement. It is our understanding that prior to agreement the Justice Department sent the settlement to the Department of Defense who concurred fully in its terms. For your information, attached at **tab 3** is the settlement agreement. Please note in the Settlement that while the United States attorney had asked for substantial money damages, the companies paid no fines, penalties or damages, nor did the company admit any wrongdoing of any type whatsoever.

As you can see from the settlement agreement, the companies generally agreed to address five areas. These include that the Flexible Dollar Builder would be correctly represented as an insurance policy, each purchaser would be provided a copy of a Statement of Understanding at point of sale, the agents of the company would comply with all Department of Defense regulations, the company would offer a refund to the 215 soldiers who bought the company's policy at Fort Lewis, Washington, and finally the company would bring to conclusion the accounting for various policies to the satisfaction of the state of Florida.

C:\B-99\Royals\Lunday L0824.wpd

Lieutenant Commander K.E. Lunday
August 24, 1999
Page 2

I informed you that I was in the United States Marine Corps for 26 years so I can appreciate both you and your commanders' concern about a company doing business on your installation against which serious allegations have been made. Hopefully, this letter will raise both of your comfort levels that TWA is highly reputable company that has been doing business with personnel of the Department of Defense for decades before the current allegations with few complaints.

As a preliminary matter, during the telephone conversation you raised a fourth point. You stated you had been told by someone in the U.S. Attorney's office that the company was under investigation by numerous state insurance commissioners. I advised you that I believed that the source of this information was from an investigator by the name of Henry Mungle who had made this statement as part of an affidavit that formed the basis of the Washington action. The companies do not know of the source of this statement but their certificate to sell insurance has been renewed by all states. The companies are proud of their overall record of few complaints. This seemed to satisfy you and this issue is not herein discussed. Should you have any other concerns in this area, please advise and we can discuss this issue further.

Also as a preliminary matter, during the course of the telephone conversation you raised the issue of the relationship between AMFI and TWA. Apparently you had been told by the U.S. Attorney's office that you should consider TWA and AMFI as the same company marketing the same product. You wanted to confirm this was correct advice as the article you reviewed on the website only involved AMFI and not TWA. I related to you that both companies had been founded by the same man and both market a similar life insurance policy (commonly called a Flexible Dollar Builder) primarily to military personnel; however, the companies could not now be considered as a single entity. AMFI is located in Florida and has its own officers and sales force completely separate and apart from TWA. The TWA home office and its officers are located in California. AMFI does provide to TWA accounting and the computer services. Therefore, TWA has a business relationship to AMFI.

As I related to you on the phone, I primarily represent TWA but because of the U.S. attorney's representation to other military installations in addition to yours that both companies should be considered a single company, I have on occasion also responded to inquiries on behalf of AMFI. I therefore feel qualified to answer your questions with regard to the relationship of the companies and the Florida Insurance Commissioner's allegations of about one year ago regarding AMFI.

In this regard, the first two attachments (**tab 1** and **tab 2**) to this letter are the most recent A.M. Best report regarding the two companies. As you are probably aware, A.M. Best provides ratings for insurance companies to enable consumers to make informed choices between companies. I believe these reports speak for themselves as to the reputable nature of the company and confirms my representation to you that these are two separate companies.

C:\B-99\Royals\Lunday L0824.wpd

Lieutenant Commander K.E. Lunday
August 24, 1999
Page 3

Some background may be useful to you in understanding the situation in which the company now finds itself. Two insurance agents at Fort Lewis, Washington were charged by that base with violating various military regulations in soliciting sales. In accordance with Army regulations, a hearing was conducted and following the hearing the agents were barred from the installation. As often happens in these cases, the Washington insurance commissioner's office learned of the case and conducted their own investigation. When I was on active duty there was a common expression, "timing isn't important, it's everything." Unfortunately for the company, their timing was poor. Located in the same building as the insurance commissioner is a branch office of the Inspector General of the Department of Defense.

An investigator in the Inspector General's office, a Henry Mungle, heard about the Washington investigation and conducted his own investigation of the companies. Apparently because of their close prior relationship and similar policies, Mr. Mungle investigated both companies. Mr. Mungle produced an investigation in which he alleged numerous violations of law. Based upon the investigation and Mr. Mungle's affidavit, an assistant U.S. attorney in the state of Washington filed a legal action against both AMFI and TWA. Shortly after filing the case, the assistant U.S. attorney made a motion in federal court to enjoin the companies from any future sales of their insurance products to military personnel. In denying the motion, the federal judge assigned to the case expressed the opinion, after carefully reviewing Mr. Mungle's affidavit and other documents generated by the U.S. Attorney, that the injunction would not be issued and he doubted seriously that the U.S. Attorney would win the underlying case. Following the denial of the motion for an injunction, the parties entered into negotiations for settlement of the action. The companies in the settlement negotiations agreed to address the areas of greatest concern to the U.S. Attorney. Of interest to you is that the companies agreed to increase the training of their agents to ensure their products were correctly represented to consumers and that agents representing the companies fully understand and comply with all Department of Defense regulations. Other matters addressed by the settlement agreement are discussed below.

The settlement agreement only took a few days to prepare and be approved by AMFI, TWA and the U.S. Attorney in Washington state, but the Justice Department in Washington, D.C. took several months to finally approve the settlement. It is our understanding that prior to agreement the Justice Department sent the settlement to the Department of Defense who concurred fully in its terms. For your information, attached at **tab 3** is the settlement agreement. Please note in the Settlement that while the United States attorney had asked for substantial money damages, the companies paid no fines, penalties or damages, nor did the company admit any wrongdoing of any type whatsoever.

As you can see from the settlement agreement, the companies generally agreed to address five areas. These include that the Flexible Dollar Builder would be correctly represented as an insurance policy, each purchaser would be provided a copy of a Statement of Understanding at point of sale, the agents of the company would comply with all Department of Defense regulations, the company would offer a refund to the 215 soldiers who bought the company's policy at Fort Lewis, Washington, and finally the company would bring to conclusion the accounting for various policies to the satisfaction of the state of Florida.

C:\B-99\Royals\Lunday L0824.wpd

Lieutenant Commander K.E. Lunday
August 24, 1999
Page 4

The concern of the U.S. Attorney expressed to the companies was that young service members purchasing a policy felt they were purchasing something other than an insurance policy. The typical policy has a substantial portion of the premium go into a high-interest side fund. As a result, the company was well aware of possible misrepresentation of the product by agents. Therefore, for each policy sold both companies required agents to have a short concise statement executed by the prospective purchaser that the purchaser understood they were purchasing an insurance policy. This Statement of Understanding was required by the company to be submitted with the application for insurance and was returned to the policyholder as part of their policy. The U.S. Attorney felt that the salespersons should be required to leave the Statement of Understanding with the prospective policyholder at the time of sale. The company agreed to this procedure if it resolved any confusion on the part of young service members. A copy of the Statement of Understanding is attached at **tab 4**. To further ensure no misrepresentation the companies increased their training. The companies also established guidelines, attached at **tab 5,** for its agents to sign following training to absolutely ensure that each agent understands they are only to represent the company's insurance policies as an insurance policy.

I would be amazed if in your conversations with the assistant U.S. attorney they in any way alleged the companies were not complying with Department of Defense regulations. As a result of the lawsuit in Washington, the Inspector General of the Department of Defense conducted their own worldwide investigation of insurance sales practices on military installations. This report was released on February 10, 1998. You may be well familiar with this report because, as a result of the IG's investigation, the Non-Commissioners Officer's Association ("NCOA") who then marketed an insurance policy from Academy Life Insurance Company was barred from making any insurance sales on all military installations worldwide. Because of the high visibility of AMFI and TWA generated by the Washington lawsuit, the IG also looked at practices of both companies. The report is hundreds of pages long but found no violations by either company.

There are no insurance commissioners to monitor companies or policies for overseas commands. The Department of Defense, therefore, has taken upon itself the responsibility for monitoring insurance companies, the policies being marketed by these companies and the agents of the companies selling at military installations outside the United States. As further confirmation that the Department of Defense has no difficulty with the company, attached at **tab 6** is the latest approval for TWA to sell its policy at overseas commands. The policy approved by the Department of Defense, incidentally, is TWA's version of the Flexible Dollar Builder policy about which you expressed considerable concern based upon the Florida article about AMFI.

The companies are exceptionally proud of their record in complying with all Department of Defense regulations and the infrequent complaints about either agents or the companies since the inception of the companies. As stated above, the lawsuit pointed out a shortcoming on the part of the companies' training program. Both companies always required the training of agents with regard to military regulations but this training was inconsistent and not documented. Attached at **tab 7** are guidelines developed by the company that are required to be signed by each agent following their initial training by the company to document the training and the agent's understanding of regulations.

C:\B-99\Royals\Lunday L0824.wpd

Lieutenant Commander K.E. Lunday
August 24, 1999
Page 5

These training guidelines along with the guidelines required to be signed by the agents regarding the marketing of the product have placed the company in a position of now being a model for all other companies wishing to do business with Department of Defense personnel.

Full refunds were offered to all 215 service members with the refunds monitored by the Department of Defense.

Regarding your second inquiry about the California lawsuit, it is very early in the litigation and I am unable to provide you much information. The first notice the company had of any dissatisfaction with the policies or the company was the filing of the lawsuit. The one fact I can relate to you is that all three Coast Guardsmen have had their policies in full force and effect since 1992 without complaint to the company. Further, it is important to note that all three purchased their policies in the state of Washington, not California. They purchased their policies from an agent named Nicolette Griffith. As part of the investigation leading to the Washington lawsuit, Nicolette Griffith was secretly taped while making a sales presentation to anther policyholder. The federal judge in Washington reviewed the transcript of this tape and found nothing improper or misleading in the agent's presentation.

Generally, law firms throughout the country watch for the filing of actions by the U.S. Attorney. They then attempt to profit from these lawsuits by copying the causes of action then filing civil actions in state courts that are virtually identical to the federal action. Several lawsuits were filed in various state courts against the companies based upon the federal action. Most have been dismissed. The California complaint is almost identical to that filed in the federal action and in the other state actions. There may be facts of which I am unaware and obviously, I am not in a position to state what will happen in the California case; however, there is certainly a very high likelihood that the case will also be dismissed. I might add that the company has begun seeking restitution from the law firms who file these claims for filing frivolous lawsuits and has been successful to date in one case.

The final issue involving Florida is more administrative and of a nature engaged in by insurance companies and insurance commissioners on a frequent basis. I informed you that the issue of concern in the settlement agreement involves policy cancellations. On occasion AMFI will receive notice from a service member that they are canceling their policy; however, it will sometimes take the military finance office a month or two or even longer to stop the allotment. The army finance centers are the most frequent offender and generally will not take the money back. The Florida courts have held that each payment received after cancellation is a renewal of the policy for that month. The company is therefore responsible to pay and has paid any death benefit claim from a survivor should the service member die during that one month renewal period. The insurance commissioner is now, however, of the opinion that the money should be refunded. Under the circumstances, AMFI feels itself caught between competing agencies of the state of Florida. That being said, the companies are committed to resolving any issues of accounting to Florida's satisfaction and have been working with the Florida Insurance Commissioner on this issue. In this respect, I fail to see how the U.S.

Lieutenant Commander K.E. Lunday
August 24, 1999
Page 6

Attorney's office can contend there is any portion of the settlement agreement to which the company is not in compliance. For your information, should the company not comply with the settlement agreement, the U.S. Attorney is completely at liberty to so allege and reinstitute their action against the companies.

I would hope from the above you can see that the companies have found themselves in an exceptionally difficult position and have garnered a tremendous amount of adverse publicity as a result of the violation of regulations at Fort Lewis, Washington. Be assured that as a result of this experience, the company is particularly sensitive to any allegation that one of their agents has misrepresented the product or has violated Department of Defense regulations. If notified of any problem, the company will institute its own investigation of the agent and, if appropriate, will take action against the agent, including terminating their right to market any policy of TWA.

In entering into the settlement agreement and establishment of a rigorous training program, the companies feel that they have become the leader and model for all companies who wish to do business with military personnel. To deny them access to your installation when they have never been shown to have done anything improper and have voluntarily undertaken increased training certainly fails to encourage other companies to do likewise. I would hope that now that you have all of the facts you will reconsider your decision.

I realize this memo and attachments are lengthy and that you have your regular military duties. I will contact you in a few days to determine if I can assist you in any way in reviewing the materials, if there are any other questions I can provide answers or you desire any additional information.

Sincerely,

R. Michael McBride

R. Michael McBride

cc:     Charles B. Royals, President
        Trans World Assurance

C:\B-99\Royals\Lunday L0824.wpd

FAX # 898-2329

AUG.26,1999.

DEAR LT.CDR.LUNDAY,

      I JUST DISCOVERED THAT I MAY OF SENT YOU (2) LETTERS OF PAGE(3) MISSING I ASSUME IS. PAGE (2) IN MY LETTER DATED AUG. 20th. I CONSIDER THIS CRUCIAL CONCERNING YOUR LETTER OF OF REVOCATION, I AM SORRY TO ADMIT THAT I HAVE NO COPIES OF THE SECOND PART OF THE LETTER, THEREFORE I WILL TRY TO SURMISE TO ITS CONTENTS TO THE BEST OF MY ABILITY.
      IT IS INPOSSABLE FOR ME WRITE A SHOW CAUSE LETTER FOR THE COMMAND,S CONSIDERATION NOT KNOWING SPECIFIC ALLEGATIONS. THEREFORE I AM REQUESTING A INFORMAL SHOW CAUSE HEARING AS STATED IN D.O.D.1344-7 PARAGRAPH B-(3).
      I WILL RESPOND TO MY LETTER,S LAST PARAGRAPH IN FIRST PAGE.

6A.(1)- TO REVOKE A PERMIT FOR GOOD AND SUFFICIENT REASONS.

5.C-    PERTAINS TO 8 PROHIBITED PRACTICES, INCLUDED IS 5.C I DENY IT CATEGORICALLY IF IT CONCERNS MY CONDUCT ON BOARD OF USCGRTC.

6A.(2)    MY RESPONSE TO THAT PARAGRPH IS THE SAME AS 5.C.

6A.(3)    I AM NOT AWARE OF ANY CONPLAINTS OR ADVERSE REPORTS SINCE WORKING USCGRTC BEGINING IN 1982 TO THE PRESENT.

6A.(4)    THIS PARAGRPH SEEMS NOT TO PERTAIN TO INSURANCE AGENTS, BUT IT MAY BE REMOTELY REFLECTED TO PARAGRAPH 5.C

DUE TO THE FACT THAT NO SPECIFIC CHARGES ARE STATED, I AM MAKING A FOIA REQUEST IN ORDER FOR ME"THE GRIEVED PARTY"IN PRESENTING THE FACTS ON MY BEHALF TO THE FOLLOWING:

(A)-A LIST OF NAMES, RANK OF THE ACCUSERS INCLUDING THEIR WRITTEN STATEMENTS IN THE CONSIDERATION OF MY REVOCATION.

(B)-ANY AND ALL COMMUNIQUES, LETTERS, NOTES AND MEMOS RELATED TO MY REVOCATION.

      I WOULD MOST PREFER TO HAVE A MEETING IN THE OFFICE OF LT.CDR.K.E.LUNDAY TO DISCUSS THE CAUSES OF MY REVOCATION AND FOR ME TO DEFEND MY ACTIONS.

        RESPECTFULLY,

        JACK A. SCHWANER

PLEASE DISREGARD THIS LETTER IF YOU HAVE PAGE 2.
P.S. I ALSO FAXED SOME OF INSURANCE CO.WHO HAD PROBLEMS.

Page (2)

(E-7)

TO:
    MR.CHARLES ROYALS
    PRESIDENT                    AUG.30,1999.
    TRANS WORLD ASSUR.


FROM:
    JACK A.SCHWANER SR
    816 CHATSWORTH DR.
    NEWPORT NEWS,VA.23601

 DEAR MR.ROYALS,

       I AM REGRETFULLY RESIGNING AS A LIFE INSURANCE
REPRESENTATIVE OF TRANS WORLD ASSUR.CO.ENCLOSED IS MY LICENSE
FOR TRANS WORLD ASSUR.DATED JUNE 2,1999 AND IT IS TO BE EFFECTIVE
UPON THE RECEIPT OF THIS LETTER.

                      RESPECTFULLY,
                      JACK A.SCHWANER

(E-8)

| | | | |
|---|---|---|---|
| U.S. Department of Transportation<br>**United States Coast Guard** | | Commanding Officer<br>U. S. Coast Guard<br>Reserve Training Center | Yorktown, VA  23690-5000<br>Staff Symbol: cl<br>Phone: (757) 898-2374<br>FAX: (757) 898-2329 |

**Exhib. (10)**

5720
August 31, 1999

Mr. Jack A. Schwaner
816 Chatsworth Drive
Newport News, VA  23601

Dear Mr. Schwaner:

    I have received a copy of your August 30 letter resigning as an agent for Trans World Assurance Company and returning your Virginia license to the company.

    As we discussed on several occasions, the August 2, 1999 revocation of permission for you to solicit on board Reserve Training Center (RTC) was based on your status as an agent for Trans World Assurance and that company's practices, not from specific complaints about your conduct aboard this installation.

    Because you are no longer an agent for Trans World Assurance, there is no basis to deny you access as an agent for other companies that have received permission to conduct commercial solicitation aboard RTC.

    You had previously been granted permission on January 28, 1999 to solicit aboard RTC as an agent for Lincoln Financial Group (d/b/a Military Benefit Association).   Your permission to solicit as an agent for Lincoln Financial Group aboard RTC is reinstated, to expire as before on January 20, 2000.  You are required to adhere to the provisions of COMDTINST 1740.2G and RTCINST 1740.1, which you acknowledged by signature on January 20, 1999.

    If you have any questions, please contact me at (757) 898-2376.

                Sincerely,

                K. E. LUNDAY
                Lieutenant Commander, U. S. Coast Guard
                Legal Officer
                By direction of the Commanding Officer

(E-9)

**U.S. Department of Transportation**

**United States Coast Guard**

Commanding Officer
U. S. Coast Guard
Training Center Yorktown

Yorktown, VA 23690-5000
Staff Symbol: cl
Phone: (757) 898-2374
FAX: (757) 898-2329

1740

DEC  8 1999

Trans World Assurance Company
Attn: Mr. Charles B. Royals
885 South El Camino Real
San Mateo, CA 94402

Dear Mr. Royals:

As requested in your letter of November 18, 1999, Mr. Jack A. Schwaner is hereby granted permission to conduct business as a representative of Trans World Assurance Company within the boundaries of U. S. Coast Guard Training Center Yorktown, Virginia.

This authorization is valid for one year from date of signature and is subject to the following restrictions:

a.  Mr. Schwaner shall not directly or indirectly encourage or request persons, such as Coast Guard employees, to distribute commercial literature, business materials, or other promotional information on behalf of your company aboard the Training Center.  Such practices are strictly prohibited, regardless of whether compensation is provided. "

b.  Mr. Schwaner may only solicit military personnel and their dependents on an individual basis, by scheduled appointment only. A "scheduled appointment" is a pre-arranged meeting with a named individual at a specific time for the purpose of conducting commercial solicitation. Mr. Schwaner may not enter the Training Center for the purpose of scheduling appointments or delivering materials without an appointment and shall not loiter prior to or after scheduled appointments.

c.  Mr. Schwaner must first personally check in with the Officer of the Day (OOD) and provide a written list of scheduled appointments for that visit.

d.  Scheduled appointments may be conducted in offices and lounge areas of the barracks buildings outside of normal work hours.  Scheduled appointments may not be conducted in berthing areas of any buildings.

e.  Although Mr. Schwaner may have separate authority to enter the Training Center for purposes unrelated to commercial solicitation (e.g., retired military person with exchange privileges), he shall not use it to bypass these requirements in order to conduct commercial solicitation.

f. Mr. Schwaner may not infer or imply that his presence aboard this installation expresses or denotes any official U. S. Coast Guard support of your company's insurance programs.

Please have Mr. Schwaner present a copy of this letter of authorization to our main gate security guard when entering Training Center Yorktown in order to receive a visitor's pass. His automobile must carry state required liability insurance.

Violation or abuse of these privileges may result in the cancellation of this authorization. In addition, this authorization may be cancelled at any time depending on the requirements of the service.

Sincerely,

K. E. LUNDAY
Lieutenant Commander, U. S. Coast Guard
Legal Officer
By direction of the Commanding Officer

Copy: Mr. Schwaner

(E-10)

# TRANS WORLD ASSURANCE COMPANY

885 SOUTH EL CAMINO REAL  /  SAN MATEO, CALIFORNIA 94402  /  TEL: (650) 348-2300  /  FAX: (650) 348-7318

December 14, 1999

Lieutenant Commander K.E. Lunday,
U.S. Coast Guard
Training Center Yorktown
Yorktown, VA 23690-5000

Re: Mr. Jack A. Schwarner

Dear Commander Lunday,

Thank you for your letter of Authorization for the above.  We appreciate your approval of our agents to conduct business at your installation.  They have acknowledged the rules as outlined in your letter.

We fully understand that it is a privilege and not a right to be on your installation.  We have been serving the needs of the military community for over thirty years, and will do the best we can to follow all the rules and regulations both in spirit and to the letter of the law.  If there are any problems or if I can be of service in any way, please let me know.  I can promise you that we will deal with it immediately and to your complete satisfaction.  My business card is enclosed for your convenience.  Thank you again for your courtesy and don't hesitate to let me know if I can be of service.

Sincerely yours,

Charles B. Royals
President

CBR: emm

cc:



CHARLES B. ROYALS
PRESIDENT

TRANS WORLD ASSURANCE CO.
885 S. EL CAMINO REAL / SAN MATEO, CA 94402 / 650-348-2300



# USCGRTC

# JACK A.SCHWANER

# TWA TRAIL FINAL RESULTS

# EXHIBITS (a) THRU (e)    )

(a)  LIST OF TRANS WORLD ASSURANCE LAWSUITS RESULTS (a) THRU (e)



| Login | Home | Agents | Forms | Contact Us | Help |

**Recent Press Release**

**FOR MORE INFORMATION CONTACT:**
**Trans World Assurance Company**
**885 South El Camino Real**
**San mateo, California 94402**
**(650)348-2300**

**Trans World Assurance Co. Wins Policyholder Class Action Trial**

Recent Jury Verdicts and a Court decision found that Trans World Assurance Co. did not defraud its policyholders. In the highly publicized California class action lawsuit Heathcock v. Trans World Assurance Company, the Jury's Special Verdict rejected the class plaintiffs' claims and specifically found that no misrepresentations were made and that there was no breach of the covenant of good faith and fair dealing. In its Decision, the Court concurred in the Jury's findings and found that Trans World did not act unlawfully, fraudulently or unfairly in selling and servicing its Flexible Dollar Builder (FDB) life insurance policies. The Court also reversed earlier rulings certifying the case as a class. The Court also entered a judgment against the plaintiffs for $71,000 for costs. All appeals by the plaintiffs have now been dismissed.

The Jury Verdicts and Court Decision are consistent with the results of other cases that have gone to trial and prove once and for all that TWA's agents fairly disclose the material terms of the FDB. Unfortunately, while the Heathcock lawsuit was pending, its unproved allegations received much notoriety and cited inappropriately as evidence of misconduct by TWA's agents. The Jury Verdicts and Court Decision confirm that Trans World and its agents involved with the plaintiffs are innocent of any wrongdoing. "We are pleased that Trans World and its agent sales force have been vindicated by the Jury Verdicts and the Court Decision," stated Trans World Assurance Co.'s management.

In summarizing the Jury's decision the Court stated:

*"On March 21, 2003, the jury returned its special verdicts in favor of both TWA and AFLI. These special verdicts included the following findings: (1) Neither TWA nor AFLI made any false*

*representation, whether intentionally or negligently, to Heathcock, Cavanaugh or Bremer; (2) Neither TWA nor AFLI concealed or suppressed any material fact to Heathcock, Cavanaugh or Bremer; (3) Neither TWA nor AFLI breached the implied covenant of good faith and fair dealing, which breach caused damage to Heathcock, Cavanaugh or Bremer."*

**FINANCIAL SECURITY FOR EVERY AMERICAN**

All Rights Reserved Trans World Assurance 2003

Privacy Notice    Terms and Conditions

Trans World Assurance Co. Wins Policy Holder Class Action Trial M...      http://www.findarticles.com/p/articles/mi_pwwi/is_200307/ai_mark1...

(b)

Home

LookSmart
FIND ARTICLES | 10,000,000 Articles
Where To Look For What You Need."



FindArticles > Publications > Free > Business & Finance > Market Wire > July, 2003 > Article

Ads by Google

FIND trans world assurance c IN  free and premium articles   **Look**  **Advanced Search**

Find Magazines by Topic
| ▼    CLICK TO VIEW    ▼ |     🖭 SAVE    🖶 PRINT    🖸 EMAIL    🖅 LINK

## Trans World Assurance Co. Wins Policy Holder Class Action Trial

Market Wire, July, 2003

Recent Jury Verdicts found that Trans World Assurance Co. did not defraud its policy holders in the highly publicized California class action lawsuit Heathcock v. Trans World Assurance Company. In rejecting the plaintiffs' claims, the Jury's Special Verdict specifically found that no misrepresentations were made to the plaintiffs and that there was no breach of the covenant of good faith and fair dealing. In the Decision, the Court found that Trans World did not act unlawfully, fraudulently or unfairly in selling and servicing the Flexible Dollar Builder (FDB) life insurance policies. The Court also reversed earlier rulings certifying the case as a class action.

**Find More Results for: "trans world assurance co. "**
Trans World Assurance...
Trans World Assurance:...
A.M. Best Takes...
Trans World Assurance...

The Special Verdicts and Court Decision are consistent with the results of other cases that have gone to trial and prove once and for all that TWA's agents fairly disclose the material terms of the FDB. Unfortunately, while the Heathcock lawsuit was pending, its unproved allegations received much notoriety and often were cited as evidence of misconduct by TWA's agents. The Jury Verdicts and Court Decision confirm that Trans Word and its agents involved with the plaintiffs are innocent of any wrongdoing. "We are pleased that Trans World and its agent sales force have been vindicated by the Jury Verdicts and the Court Decision," as stated by Trans World Assurance Co.'s management.

In summarizing the Jury's decision the Court stated:

"On March 21, 2003, the jury returned its special verdicts in favor of both TWA and AFLI. These special verdicts included the following findings: (1) Neither TWA nor AFLI made any false representation, whether intentionally or negligently, to Heathcock, Cavanaugh or Bremer. (2) Neither TWA nor AFLI concealed or suppressed any material fact to Heathcock, Cavanaugh or Bremer. (3) Neither TWA nor AFLI breached the implied covenant of good faith and fair dealing, which breach caused damage to Heathcock, Cavanaugh or Bremer."

In its own opinion, the Court stated:

"The only inferences that can reasonably be drawn from the jury's special verdicts are that either (a) Heathcock, Cavanaugh and Bremer knew that the FDB was life insurance, or (b) Defendants' agents fully disclosed the true nature of the FDB to each of the three named plaintiffs and ye, for some reason through no fault of Defendants (e.g., the three named plaintiffs did not listen to what they were being told by Defendants agents), Heathcock, Bremmer and Cavanaugh still did not understand what they were buying."

Settlements and Verdicts: Trans World Assurance Company.          http://www.lawyersandsettlements.com/case/transworldassurancecompany

(c)

Settlements >> Trans World Assurance Company.

# Settlements and Verdicts

## Trans World Assurance Company.

A jury has found in favor of Trans World Assurance Co. in the class action lawsuit filed against the company by policy holders. The decision states that the jury found that the company did not defraud its policy holders, made no misrepresentations to the plaintiffs and that there was no breach of the covenant of good faith and fair dealing. The ruling also reversed the previous rulings which had certified the case as a class action. (Jul-24-03) [PRESS RELEASE]

## Register your Case

If you have a similar problem and would like to be contacted by a lawyer at no obligation, please click the link below to submit your complaint.

Click here to submit your complaint through a secure form

*Posted on Sep-5-03*

Search

Services for Lawyers

Home

**Lawsuits:**
Personal Injury
Unpaid Overtime
Dangerous Drugs
Defective Products
Stock Fraud
News Articles

**Hot Lawsuits:**
All Hot Lawsuits
SSRI Birth Defects
California Labor Laws
Cell Phone Termination Fees
Composix Kugel Mesh Patches
Credit Card Rate Hikes
Defective Product
Elidel
Employee Stock Options/ERISA
Florida Cigarettes Side Effects
Fresh Bagged Spinach
Immigration Citizenship
Ink Jet Printer Cartridges
Ketek
Kitec XPA Pipe
Paxil Birth Defects
Propane Explosions
Protopic
Ralphs Grocery
Trasylol
Unpaid Overtime
UnumProvident

https://www.transworldassurance.com/twa/TWaboutus.pgm?TASK=p.

(d)

*representation, whether intentionally or negligently, to Heathcock, Cavanaugh or Bremer; (2) Neither TWA nor AFLI concealed or suppressed any material fact to Heathcock, Cavanaugh or Bremer; (3) Neither TWA nor AFLI breached the implied covenant of good faith and fair dealing, which breach caused damage to Heathcock, Cavanaugh or Bremer."*

**FINANCIAL SECURITY FOR EVERY AMERICAN**

All Rights Reserved Trans World Assura· ® 2003

Privacy Notice    Terms and Conditions

World Assurance Co. Wins Policy Holder Class Action Trial M...     http://www.findarticles.com/p/articles/mi_pwwi/is_200307/ai_markl...

Still pending are proceedings in which the companies are seeking to recover in excess of $200,000 from the plaintiffs in court costs.

```
Trans World Assurance Company
885 South El Camino Real
San Mateo, California  94402
```

Company: Trans World Assurance Company Voice: 650-348-2300

Ads by Google

Life Insurance Company
Life Insurance Company Options! Life Insurance Company Starts Here.
Local.Cars.AlltheAutomotive.com

Life assurance
Save Time & Money with Top Carriers Instant issue, term, whole life ins
www.PremiumComparisons.com

Get Life Insurance Rates
Find Life Insurance Vendors & Rates in Your Area with Superpages.com
www.superpages.com

1 - 2 - Next

Find Featured Titles for: Business & Finance
| ▼    CLICK TO VIEW    ▼ |



Content provided in partnership with

market WIRE

© 2006 FindArticles™ - LookSmart, Ltd. · About Us · Privacy Policy · Terms of Service · Advertise with Us · Site Map · RSS Site Map

07-2351
EGS

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

### I (a) PLAINTIFFS

JACK A. SCHWANER

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _58806_
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE (N/A)

### DEFENDANTS

USCG, ETAL

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Case: 1:07-cv-02351
Assigned To : Sullivan, Emmet G.
Assign. Date : 12/19/2007
Description: Civil Rights-Non-Employ.

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

### III CITIZEN
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

### ☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (If not administrative agency review or Privacy Act |

| □ G. *Habeas Corpus/ 2255*<br><br>□ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ H. *Employment Discrimination*<br><br>□ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ I. *FOIA/PRIVACY ACT*<br><br>□ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | □ J. *Student Loan*<br><br>□ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| □ K. *Labor/ERISA (non-employment)*<br><br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | ■ L. *Other Civil Rights (non-employment)*<br><br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>■ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ M. *Contract*<br><br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ N. *Three-Judge Court*<br><br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

■ 1 Original Proceeding  □ 2 Removed from State Court  □ 3 Remanded from Appellate Court  □ 4 Reinstated or Reopened  □ 5 Transferred from another district (specify)  □ Multi district Litigation  □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

*42 USC 1983*

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS<br>□ ACTION UNDER F.R.C.P. 23 | **DEMAND $** | Check YES only if demanded in complaint<br>**JURY DEMAND:** □ YES  ■ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ■ YES   □ NO    If yes, please complete related case form.

DATE *12/19/07*    SIGNATURE OF ATTORNEY OF RECORD    *NCD*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed *only* if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the *primary* cause of action found in your complaint. You may select only *one* category. You *must* also select *one* corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.