UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACK A. SCHWANER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 07-2351 (EGS) |
| | ) |
| UNITED STATES COAST GUARD, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

The United States Coast Guard and Captain Kevin Lunday demonstrated in their Motion

to Dismiss (Dkt. 12) that there are six reasons why the Court should dismiss the *pro se* plaintiff's

Complaint in this case.  First, sovereign immunity bars Jack Schwaner's claims for damages

against the Coast Guard.  Second, Schwaner's claims are untimely because the restrictions took

effect in 1999, but he did not file suit until 2007.  Third, Schwaner has failed to state a viable

constitutional claim.  Fourth, Schwaner has not served Captain Lunday with a copy of the

Complaint.  Fifth, Captain Lunday is entitled to qualified immunity.  And finally, venue is

improper in this District.

In his opposition – which is attached hereto as Exhibit A since he did not file it with the

Court – Schwaner fails to respond to these arguments.[1]  The Court should treat these arguments

as conceded and dismiss the Complaint in this case.  *Tnaib v. Document Tech., Inc.*, 450 F.

---

[1]  Schwaner does assert that the Coast Guard's sovereign immunity should be waived
because it acted arbitrarily, but he fails to provide any support for that argument.  (Pl.'s Opp. at
2.)  The cases cited in the Coast Guard's motion to dismiss show that the government's
sovereign immunity must be affirmatively waived, and cannot be waived simply because a
plaintiff believes that the government is acting unfairly.  (Dkt. 12 at 3-4.)

Supp.2d 87, 91 (D.D.C. 2006) ("When a plaintiff files a response to a motion to dismiss but fails

to address certain arguments made by the defendant, the court may treat those arguments as

conceded.")

The Coast Guard and Captain Lunday do not understand the majority of plaintiff's

opposition.  If the Court would like further briefing on any issue, the defendants will supplement

their Motion to Dismiss upon request by the Court.[2]

Respectfully submitted,

_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/ Harry B. Roback
_____
HARRY B. ROBACK, D.C. Bar # 485145
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W.
Washington, D.C. 20530
Tel: 202-616-5309
harry.roback@usdoj.gov

---

[2] The Coast Guard notes that Schwaner appears to allege that it did not fully respond to a
request he made under the Freedom of Information Act ("FOIA").  (Pl.'s Opp. at 2.)  However,
Schwaner does not refer to any specific FOIA request.  Nor did he assert a claim under FOIA in
the Complaint in this case.  *Cf. Schwaner v. United States Coast Guard*, 07-2350 (EGS)
(asserting FOIA claim against the Coast Guard).  If Schwaner believes that the Coast Guard
violated FOIA, he should file a separate civil action.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2008 I served plaintiff with Defendant's Reply in Support

of Its Motion to Dismiss by mailing it to the following address:

Jack A. Schwaner
1 Great Oak Cir., Apt. B-44
Newport News, VA 23606

/s/ Harry B. Roback
Harry B. Roback
Assistant United States Attorney

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
333 CONSTITUTION AVE. N.W.
WASHINGTON D.C. 20036

Jack A.Schwaner
1 Great Oak Cir. Apt B-34
Newport News , Va.23606

Plaintiff

Vs                                                    Civil Action No.07-2351 (EGS)

USCG Headquarters
Washington D.C.
USCGRTC
Yorktown, Va.
0-4 K.E Lunday

Defendant

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S COMPLAINT

~~~~~~~~~~

Respectfully Submitted

Jack A.Schwaner Pro-se

The Plaintiff Jack A Schwaner worked on USCGRTC Yorktown as a Insurance agent
from 1982-1999 with no infractions that shows the Plaintiff is well aware of the USCGRTC local
regulations including USCG Commandant Instruction1740 2G. The Plaintiff stands by all the
allegations contained in Complaint Civil. Action. 07-2351 (EGS) and the Plaintiff will personify errors
and omissions in the Defendant's: Motion to dismiss .The facts will prove that 0-4 K.E.Lunday
responsible being the major player in his capacity as legal Officer of USCGRTC., and hold USCGRTC
Command and the USCG Command because of its  supporting roles ,thus making one of the reasons
the Plaintiff seeks damages.

EXHIBIT A

Page 2

Exhibits (1)-through (11 ) are facts that were fully addressed in Civil. Action. No.07-2351,with the exception the defendants failed to address the Plaintiff's revocation, included are misinterpretations and errors in the Defendant's motion to dismiss.

(1)-The Plaintiff does not seek damages from 0-4 K.E. Lunday personally but to all involved parties equally in Civil. Action No 07-2351

(2)-Sovereign Immunity should not be waived in the defendant Motion to Dismiss because all parties in Civil Action 07-02351 acted in a ambiguous, capricious and arbitrary manner toward the Plaintiff as the following exhibits shows.

(3)-0-4 K.E.Lunday the legal officer is a major player and the untimely paragraphs used in Defendant in Civil. Action No.07-2351 is invalid because he is the author of most USCGRTC in regulations and revocation effected the Plaintiff. The Court should not consider the statue of limitation because 0-4 K.E.Lunday violated USCGRTC solicitation regulation including Commandant Instruction 1740.2G.

(All Military Department's Insurance Solicitation regulations including local Installation Commands are subordinate to DODI 1344-07 and cannot be deviated or abridged ).

(4)-USCG failed to respond to the Plaintiff's Foia appeal (prior) to C.A. 07-2351.

(5)-The defendant errs, the Plaintiff never objected in checking at the main gate, it was standard best of my knowledge before 1982 , but Plaintiff did object to the recent regulation introduced by 0-4 K.E.Lunday in that USCGRTC Regulation seeking the OOD that who was roving the USCGRTC area to show my appointment cards with the USCG personnel Social Security numbers,RTCINST 1740 2 E (Privacy Act violatio. Walk 1/4 mile from the Chapel to appointment. Plaintiff informed 0-4 .Lunday of the plaintiff heart attack,shortness of breath, being diabetic,regardless No change was forthcoming.

(6)-0-4 K.E.Lunday obtained; a completed appointment card from a Coast Guard person ;this is,my main source of obtaining appointments as required by regulation. These appointment cards offer a free multi-colored metal Social Security card with the USCG emblem (manufactured by Perma Products,a

EXHIBIT A

Page 3

highly reputable Company, makers of multiple cards Social Security cards for all the Armed

Forces. Lunday proceeded to look into the legality of this card , 0-4 Lunday wrote a negative letter

seeking advise from USCG Headquarters. D.C , in turn  USCG Headquarters informed the Plaintiff on

May 31,2000 to cease and desist using mailing these Social Security appointment cards or your

Solicitation permit in USCGRTC will be revoked. The Plaintiff challenged that letter and in April

4,2007 the previous letter was rescinded.

(7)-The Plaintiff's Constitutional rights were violated by 0-4 Lunday by revoking Plaintiff Solicitation

Permit at USCCGRTC, with no specific correct charges were submitted Plaintiff was refused a Show

Cause hearing as required in Commandant instruction 1740-2G Para:6.b and in DODI 1344-07

Para:6.5.3 and Para:6.5.5Furthermore 0-4 Lunday is not authorized to sign the revocations order of the

Plaintiff and TWA, only the unit Commander of USCGRTC  must sign according 1740-2G and DODI

1344-07 in these proceedings .The Plaintiff notes the Defendant's motion to dismiss the revocation

action by 0-4 Lunday was not addressed.

(8)- The Plaintiff was barred entry to the Cyber Café and its vicinity stated in RTCINST 1740 2 E

and approved by the Unit Commander the reason stated was safeguarding the Cyber Café and vicinity

(Plaintiff were the only active Insurance Agent on UCGRTC ; at one time 5 salesmen of some sort

received permits, but they were never active),

(9)-Plaintiff never considered the smoking area that is wide opened area to sun,rain,snow and wind

could be considered a suitable place for plaintiff and client to conduct business,though Foia addressed

to 0-4 Lunday for specific office locations where business could be conduct , I received no reply.

(10)-Plaintiff was told by Coast Guard personnel that 0-4 Lunday was hiding in bushes and behind

trees,and was occasionally  seen by the Plaintiff. Once. 0-4-Lunday in a sales presentation with

a client asked the client if the Plaintiff had a appointment,after receiving a positive answer, afterwards

0-4 Lunday proceeded to pick 2 of my appointment cards to check if these appointment cards were

EXHIBIT A

Page 4

genuine. 0-4.K.E.Lunday gathered some N.C.O's to obtain statements against the Plaintiff these concerted statements were never used, against the Plaintiff.0-4 Lunday wrote a memorandum that he will personally monitor the Plaintiff actions,in a small Installation like USCGRTC, my reputation was a humiliating experience and my Insurance sales were in disarray, thus making working conditions in USCGRTC unbearable causing lost of my income as well of my reputation I enjoyed since 1982 that now cease to exist.

(11)-The change of Venue in Defendant' motion to dismiss,the Court should not be considered because of Schwaner vs USAF and Schwaner Vs USCGRTC C.A.7-02359 were all conducted in the District Courts of Columbia. The Plaintiff considers 0-4-K.E Lunday a consequential part of. Civil Action .No.07-2351 making his residence a moot point.

.

## JACK A SCHWANER AND TRANS WORLD ASSURANCE COMPANY (TWA) REVOCATION ON USCGRTC

(E-1) TWA received a letter dated Aug.2,1999 Signed by 0-4 K.E.Lunday legal Officer by direction of the Commanding Officer of USCGRTC responding to the TWA Letter dated June 28,1999 requesting permission to solicit on board USCGRTC it was denied,also in this letter it states the Plaintiff ,Jack Schwaner who was active and granted permission to Solicit for one year starting Jan.28,1999 with Military Benefit Association was also revoked for one year. .Note 0-4 Lunday quotes COMDTINST 1740.2G yet at that time fail to informs TWA of the charges or show Cause hearing . 0-4-K.E.Lunday opinionated conclusion through his personal extended investigation in a ( pending )Class action suit involving 3 Coast Guard personnel against TWA in California and Washington turned out to be a frivolous suit ,the Court entered a judgment a gainst the Plaintiffs $71,000 in Court cost ( This is the class action case used by 0-4 Lunday in revocation of the Plaintiff and TWA,).

EXHIBIT A

Page 5

(E-2)-A memorandum dated 2Aug,1999 by 0-4 Lunday I assume only to the Unit Commander states TWA has a opportunity to a Show Cause hearing ,missing is a notification for a Show Cause Hearing for the Plaintiff Jack Schwaner. ,this was not a request for arenewal request but the first of TWA applying permission for Plaintiff Jack Schwaner to Solicit on board.

(E-3)-Letter from Office of the Assistant Secretary of Defense to TWA receiving approval to Solicit Life Insurance in DOD Installations overseas. 0-4 Lunday in his extentive investigation overlooked this letter.

(E4)-A long winded letter written by the Plaintiff Jack Schwaner dated Aug,20,1999 to the Commanding Officer of USCG;Plaintiff makes a Foia request for copies of genuine charges or findings. What the Plaintiff did receive had no relationship for my revocation, in that letter. A Foia request is made for specific charges , the Plaintiff never received a reply.

(E-5)-A letter by the law office of Prahl & McBride to 0-4 Lunday shows a 0-4 Officer from a small Installation asking explanations from the Class Action attorneys against TWA,various Judicial Courts and State Insurance Commissioners . TWA who had a pending class action suit that was later exonerated of all charges ,at the whim of 0-4 Lunday used 1740.2G on unfounded charges to revoked the Plaintiff's permit and blemished Plaintiff;s reputation in USCGRTC beyond repair. The Plaintiff had no means of a livelihood when income is suddenly is stopped therefore damages should be rightfully rewarded.

(E-6)-A Foia Letter Aug.26,1999 to 0-4 Lunday.(no reply)

(E-7)-Letter dated Aug ,30 ,1999,Plaintiff wrote a letter of resignation to TWA President Charles Royals .Plaintiff was informed by 0-4 Lunday in order to regain my MBA permit, to resign was a requirement to obtain my Military Benefit Association permit in order to work in USCGRTC

(E-8)-Letter dated 31 Aug.,1999 from 0-4 Lunday to the Plaintiff Jack Schwaner states that the revocation of was my permit not because of any complaints of my conduct in USCGRTC but my

EXHIBIT A

Page 6

association as a agent of TWA.(Keeping in mind the TWA permit to work on board was never

issued) .The Plaintiff is duly licensed with TWA in the State of Virginia.

(E-9)-Letter dated 8 Dec,1999 from 0-4.Lunday to the President of TWA that the Plaintiff Jack (

Schwaner is hereby granted permission to conduct business as a agent for TWA. in USCGRTC. (

(E-10)-A thank you letter dated 14 Dec.,1999 from the President of TWA to 0-4 Lunday in a

very polite way states  we always met the needs of the military in life  Insurance etc,etc.

.

## TWA TRIALS AND FINAL RESULTS

TWA wins Policy holder class action trial

The court enters judgment against the Plaintiff for $71,000 for Court cost

TWA seeks $200,000 from plaintiffs in Court cost

## CERTIFICATE OF SERVICE

I hereby certify that on May 26,2008 I served the Defendant

by U.S postage letter mail to the below address

Harry B Roback
Assistant United States Attorney
555 4 th Street N.W. Washington D.C. 20530

United States District Court
For The District Of Columbia
333 Constitution Ave N.W.
Washington D.C. 20036

Jack A.Schwaner Pro-se
1 Great Oak Cir.Apt B-34
Newport News Va. 23606

EXHIBIT A

Page 7

## CONCLUSION

O-4 K.E.Lunday legal Officer USCGRTC , preconceived the Trial's verdict in this highly publicized class action lawsuit in the revocation of Trans World Assurance and the Plaintiff Jack A.Schwaner, it shows though out the Plaintiff complaint that injustice did prevail and the damages did occur toward the Plaintiff .O-4 Lunday based the results prior to the Court's final verdict. The Court concurred in the Jury's findings and found that TWA did not act unlawful,fraudulently or unfairly, The Court also entered a judgment against the Plaintiffs for $71,000and all appeals by the Plaintiff were dismissed. TWA spent time and money clearing their name on USCGRTC,but Plaintiff Jack A.Schwaner reputation was in good standing since 1982 was damaged in Plaintiff's revocation that had extreme consequences that resulted in his lost of respect concerning USCGRTC personnel including the Plaintiff's business associates that will never be replaced.

.For theses reasons the

Plaintiff request this Court to approve for damages as stated in Civil Action No.07-2351

Respecfully Submitted,

Jack A.Schwaner Pro-se
1 Great Oaks Cir. Apt B-34
Newport News , Va.23606

.

EXHIBIT A

6.4.12.  Using any portion of installation facilities, including quarters, as a showroom or store for the sale of goods or services, except as specifically authorized by DoD Directive 1330.17 and DoD Instructions 1015.10, 1000.15, and 1330.21 (References (h), (i), (j), and (k)). This does not apply to normal home enterprises that comply with applicable State and local laws and installation rules.

6.4.13.  Soliciting door to door or without an appointment.

6.4.14.  Unauthorized advertising of addresses or telephone numbers used in personal commercial solicitation activities conducted on the installation, or the use of official positions, titles, or organization names, for the purpose of personal commercial solicitation, except as authorized in Reference (g). Military grade and military service as part of an individual's name (e.g., Captain Smith, U.S. Marine Corps) may be used in the same manner as conventional titles, such as "Mr.", "Mrs.", or "Honorable."

6.4.15.  Contacting DoD personnel by calling a government telephone, faxing to a government fax machine, or by sending e-mail to a government computer, unless a pre-existing relationship (i.e., the DoD member is a current client or requested to be contacted) exists between the parties and the DoD member has not asked for contact to be terminated.

6.5.  Denial, Suspension, and Withdrawal of Installation Solicitation Privileges

6.5.1.  The installation commander shall deny, suspend, or withdraw permission for a company and its agents to conduct commercial activities on the base if such action is in the best interests of the command. The grounds for taking these actions may include, but are not limited to, the following:

6.5.1.1.  Failure to meet the licensing and other regulatory requirements prescribed in this Instruction, or violations of the State law where the installation is located. Commanders will request that appropriate State officials determine whether a company or agent violated State law.

6.5.1.2.  Commission of any of the practices prohibited in paragraphs 6.2.6 and 6.4.

6.5.1.3.  Substantiated complaints and/or adverse reports regarding the quality of goods, services, and/or commodities, and the manner in which they are offered for sale.

6.5.1.4.  Knowing and willful violations of Pub. L. 90-321, "Truth in Lending Act" (Reference (l)).

6.5.1.5.  Personal misconduct by a company's agent or representative while on the installation.

6.5.1.6.  The possession of, and any attempt to obtain supplies of direct deposit forms, or any other form or device used by Military Departments to direct a Service member's pay to a third party, or possession or use of facsimiles thereof.  This includes using or assisting in using a Service member's "MyPay" account or other similar internet medium for the purpose of establishing a direct deposit for the purchase of insurance or other investment product.

6.5.1.7.  Failure to incorporate and abide by the Standards of Fairness policies contained in DoD Instruction 1344.9 (Reference (m)).

6.5.2.  The installation commander may determine that circumstances dictate the immediate suspension of solicitation privileges while an investigation is conducted.  Upon suspending solicitation privileges, the commander shall promptly inform the agent and the company the agent represents, in writing.

6.5.3.  In suspending or withdrawing solicitation privileges, the installation commander shall determine whether to limit such action to the agent alone or extend it to the company the agent represents.  This decision shall be based on the circumstances of the particular case, including, but not limited to, the nature of the violations, frequency of violations, the extent to which other agents of the company have engaged in such practices, and any other matters tending to show the culpability of an individual and the company.

6.5.4.  If the investigation determines an agent or company does not possess a valid license or the agent, company, or product has failed to meet other State or Federal regulatory requirements, the installation commander shall immediately notify the appropriate regulatory authorities.

6.5.5.  In a withdrawal action, the commander shall allow the individual or company an opportunity to show cause as to why the action should not be taken.  To "show cause" means an opportunity must be given for the aggrieved party to present facts on an informal basis for the consideration of the installation commander or the commander's designee.  The installation commander shall make a final decision regarding withdrawal based upon the entire record in each case.  Installation commanders shall report concerns or complaints involving the quality or suitability of financial products or concerns or complaints involving marketing methods used to sell these products to the appropriate State and Federal regulatory authorities.  Also, installation commanders shall report any suspension or withdrawal of insurance or securities products solicitation privileges to the appropriate State or Federal regulatory authorities.

6.5.6.  The installation commander shall inform the Military Department concerned of any denial, suspension, withdrawal, or reinstatement of an agent or company's solicitation privileges and the Military Department shall inform the Office of the PDUSD(P&R), which will maintain a list of insurance and financial product companies and agents currently barred, banned, or otherwise limited from soliciting on any or all DoD installations.  This list may be viewed at www.commanderspage.com.  If warranted, the installation commander may recommend to the Military Department concerned that the action taken be extended to other DoD installations.  The Military Department may extend the action to other military installations in the Military

COMDTINST 1740.2G
2 2 JUL 1992

5.

b. Unit commanding officers shall present those conducting commercial activities at Coast Guard units with a copy of these regulations and any applicable unit regulations and advise them that disregarding the regulations may result in the withdrawal of solicitation privileges.

c. The following solicitation practices are prohibited:

(1) The use of any manipulative, deceptive or fraudulent device, scheme or artifice, including misleading advertising and sales literature.

(2) Any discriminatory practice by race, color, religion, sex, national origin, or other basis as defined and prohibited by current Federal or Service regulations and directives.

(3) Solicitation of recruits, trainees, or other "mass" or "captive" audiences.

(4) Military personnel on active duty are expressly prohibited from representing any commercial company for the solicitation of life insurance, mutual funds and other investment plans, commodities, and services on any Coast Guard unit with or without compensation.

(5) Any oral or written representations which suggest or give rise to the appearance that the Coast Guard sponsors or endorses the company, its agents, or the goods, services, or commodities it sells.

(6) The use of official identification cards by Retired or Reserve members of the Armed Forces to gain access to military units for the purpose of soliciting.

(7) The assignment of desk space for interviews other than specific prearranged appointments. During such appointments the agent will not be permitted to display signs announcing name or company affiliation.

(8) The use of the "Plan of the Day" or any other notice, official or unofficial, announcing the presence and availability of an agent.

6. DENIAL AND REVOCATION OF ON BOARD SOLICITATION.

a. Unit commanding officers shall deny or revoke permission for a company and its agents to conduct commercial activities at the unit for a good and sufficient reason, such as, but not limited to:

COMDTINST 1740.2G
22 JUL 1992

6.  a.  (1)  Failure to meet the licensing and other regulatory requirements prescribed by paragraph 4.

    (2)  Commission of any of the solicitation practices prohibited by paragraph 5.c.

    (3)  Substantiated complaints or adverse reports regarding either their quality of goods, services or commodities, the manner in which they are offered for sale, or the method and terms of financing.

    (4)  Knowing and willful violations of the consumer credit protection laws in 15 U.S.C. 1601-1693(r).

    (5)  Personal misconduct by a company's agents or representatives while on the military unit.

    (6)  The possession of or any attempts to obtain allotment forms.

    (7)  Distributing or making available for distribution literature other than to the person being interviewed.

  b.  The decision as to whether the denial or revocation action shall be limited to the agent, or whether it shall also be extended to the company, shall depend on the circumstances of the particular case. Unit commanding officers shall consider the nature of the violations, their frequency, the extent to which other agents of the company have engaged in such practices, and any other matters tending to show the company's culpability.  Upon denying or revoking solicitation privileges, the agent and the company represented will be promptly notified orally or in writing of the reasons and duration, after which the individual and/or the company may reapply for permission to solicit.  The individual and/or the company represented should be afforded the opportunity to show cause why the denial or revocation action should not have been issued.  If the grounds for the action bear significantly on the eligibility of the agent and/or the company to hold a State license or to meet other regulatory requirements, the appropriate civil authorities will be notified.  If the denial or revocation action should be extended to additional military units, the unit commanding officer shall make this recommendation to Commandant (G-PS) after affording the individual and/or company the opportunity to show cause why it should not be extended.

7.  EDUCATION PROGRAMS.

  a.  Insofar as practicable, unit commanding officers shall maintain information and implement education programs for the purpose of providing Coast Guard personnel with guidance on the conduct of

U.S. Department
of Transportation

United States
Coast Guard

Commanding Officer
U. S. Coast Guard
Training Center Yorktown

Yorktown, VA 23690-5000
Staff Symbol: cl
Phone: (757) 898-2376
FAX: (757) 898-2329

5728

MAR  8 2000

From:  Commanding Officer, Coast Guard Training Center Yorktown
To:    Commandant (G-IPA)

Subj:  USE OF THE U. S. COAST GUARD EMBLEM AND NAME

Ref:   (a) PHONCON between Mr. Thorne COMDT (G-IPA) and LCDR Lunday TRACEN
           Yorktown (cl) of 7 Feb 00
       (b) Commercial Solicitation Controls at Coast Guard Units, COMDTINST 1740.2G

1.  As discussed in reference (a), I am seeking to determine whether your office has granted
    permission for Military Benefit Association, Lincoln Financial Group, or Mr. Jack A. Schwaner
    to use the words "U. S. Coast Guard" and the Coast Guard emblem.

2.  This command has granted permission for an agent of Lincoln Financial Group (affiliated
    with Military Benefit Association) to conduct commercial solicitation aboard the command,
    pursuant to reference (b).  As part of meeting with clients (military members), the Lincoln
    Financial Group agent offers a free, gold-colored, metal card with the name and social security
    number of the client engraved on the front.  The client voluntarily provides the information to the
    agent, who has the card engraved and returns it to the member.  A copy of this card, with name
    and social security number redacted, is attached as enclosure (1).  After this process, the agent
    then offers the client a membership with Military Benefit Association and commercial life
    insurance with Lincoln Financial Group at a set fee or rate.

3.  As you can see from enclosure (1), each metal card bears the Coast Guard emblem and the
    words "U. S. Coast Guard" underneath in the upper left corner.  The name of the company does
    not appear on the front or back of the card.  I am trying to determine whether Lincoln Financial
    Group, Military Benefit Association, or Mr. Schwaner have authority to use the service title and
    emblem or are acting in violation of 14 U.S.C. § 639.  I am not seeking permission for them to
    use the same.

4.  If you have any questions, please contact me at (757) 898-2376.

K. E. LUNDAY
Legal Officer
By direction

Encl: (1) Copy of social security card offered by Lincoln Financial Group

(B-4)

TO:
K.E.LUNDAY
LTCDR.USCG.
LEGAL OFFICER,USCGTC

18 MAR,00

FROM:
JACK A.SCHWANER
816 CHATSWORTH DR.
N,N,VA.23601

DEAR SIR,

        IT HAS BEEN BROUGHT TO MY ATTENTION THAT YOU MADE
"ONE" INQUIRY TO COAST GUARD HEADQUARTERS WASHINGTON,D.C.
ON THE LEGALITY CONCERNING A SOCIAL SERCURITY CARD ON A SMALL
METAL PLATE SHOWING THE COAST GUARD EMBLEM.
        A CALL WAS MADE TO ME BY MS TARA JENNINGS MAY STATING
THESE CARDS COULD NOT BE MADE BECAUSE IT DID NOT HAVE COAST
GUARD APPROVAL,IF THIS IS SO,AND IS USED AS A COAST GUARD GUIDE.
"THAN I AM MAKING A FOIA REQUST TO THE FOLLOWING".

(1)IS COATS,TEE SHIRTS,BELT BUCKLES,CAPS,RINGS AND TATOOS SHOWING
    THE COAST GUARD EMBLEM,BUT LACKS COAST GUARD APPROVAL BE
    ALLOWED ON USCGTC,YORKTOWN,VA.

(2)COPIES OF ANY OR ALL MATERIAL,MEMO,S ETC.SENT TO THE COAST
    GUARD HEADQUARTERS WASHINGTON D.C.CNCERNING THIS RELATED
    MATTER.

                                    RESPECTFULLY,
                                    JACK A. SCHWANER SR

CC:SEC.OF TRANSPORTATION
CC:MS TARA JENNINGS MAY

06/27/00  TUE 11:08  FAX 202 2674287    USCG HQ G-LGL    →→→ RYCYORKTOWN(S...    # 1

(B-3)-

**U.S. Department of Transportation**

**United States Coast Guard**

Commandant
United States Coast Guard

2100 Second Street, S.W.
Washington, D.C. 20593-0001
Staff Symbol: G-LGL
Phone: (202) 267-0080
FAX: (202) 267-4287

5800

MAY 3 1 2000

Mr. Jack A. Schwaner
816 Chatsworth Drive
Newport News, Virginia 23601

Mr. Schwaner:

I am the Chief of the Office of General Law at Coast Guard Headquarters. It has come to my attention that you have a commercial solicitation permit for the Coast Guard's Yorktown Training Center and that you are employed by and represent Transworld Assurance Company, Lincoln Financial Group, Lincoln National Life Insurance Company and the Military Benefit Association aboard the Yorktown Training Center as a result of obtaining that solicitor's permit, that you have been distributing embossed metal cards to clients or potential clients during your solicitor activities, that these metal cards contain the imprinted image of the official Coast Guard Insignia and the words "U.S. Coast Guard" and that you have not obtained permission to reproduce or use the Coast Guard Insignia image or the words "U.S. Coast Guard" for this commercial purpose.

You are hereby notified that the Coast Guard Insignia is a federally protected symbol, that "U.S. Coast Guard" is the official Coast Guard name and also federally protected, that you must obtain express written permission from Coast Guard Headquarters to use and reproduce that federally protected material for commercial purposes, and that failure to do so constitutes not only a violation of federal law but may also separately jeopardize your solicitor's permit and the ability of the entities listed in the preceding paragraph to conduct business aboard Coast Guard facilities.

You must immediately stop using the Coast Guard Insignia and "U.S. Coast Guard" as described above. After you stop your improper activity, you can submit a written request to use those words and that symbol to the Coast Guard's Office of Public Affairs in Washington, D.C. You can obtain the mailing address for that office by contacting the Yorktown Legal Officer, LCDR Kevin Lunday.

M. J. DEVINE
Captain, U.S. Coast Guard
Chief, Office of General Law
By direction of the Commandant

Copy to: Yorktown Legal Officer
Public Affairs
Lincoln National Life Insurance
Lincoln Financial Group
Military Benefits Association
Transworld Assurance Company

Post-It® Fax Note  7671  Date 27 Jun0  pages ▶ 1
To LCDR Kevin Lunday  From LGLb
Co./Dept. Legal OFFicer  Co.  LGLb
Phone #  Phone #
Fax # 757 898-2229  Fax #

U.S. Department of
Homeland Security

United States
Coast Guard

Commandant
United States Coast Guard

2100 Second Street, S.W.
Washington, DC 20593-0001
Staff Symbol: CG-0944
Phone: (202) 372-3762
Fax: (202) 372-3869
Email:

5720

APR – 4 2007

Mr. Jack Schwaner
1 Great Oak Cir., Apt. B-44
Newport News, VA 123606

Dear Mr. Schwaner:

The following are answers to the 5 questions you asked in your 15 February 2007 letter to Coast Guard Headquarters.

Response (1).   There is no violation of Coast Guard policy.

Response (2).   The Coast Guard does not have a list of commercial companies approved to sell items with the Coast Guard insignia or the Coast Guard words.

Response (3).   The entire text of 14 U.S.C. § 639 is as follows:

"No individual, association, partnership, or corporation shall, without authority of the Commandant, use the combination of letters "USCG" or "USCGR", the words "Coast Guard," "United States Coast Guard," "Coast Guard Reserve," "United States Coast Guard Reserve," "Coast Guard Auxiliary," "United States Coast Guard Auxiliary," "Lighthouse Service," "Life Saving Service," or any combination or variation of such letters or words alone or with other letters or words, as the name under which he or it shall do business, for the purpose of trade, or by way of advertisement to induce the effect of leading the public to believe that any such individual, association, partnership, or corporation has any connection with the Coast Guard. No individual, association, partnership, or corporation shall falsely advertise, or otherwise represent falsely by any device whatsoever, that any project or business in which he or it is engaged, or product which he or it manufactures, deals in, or sells, has been in any way endorsed, authorized, or approved by the Coast Guard. Every person violating this section shall be fined not more than $1,000, or imprisoned not more than one year, or both."

Response (4).   The Coast Guard requests, but does not order, persons or entities to stop using the protected Coast Guard words or symbols in violation of 14 U.S.C. § 639.

Response (5).   The Coast Guard has no record of any company or person being prosecuted for violating 14 U.S.C. § 639.

Sincerely,

WILLIAM G. HASKIN, JR.
Chief, Office of General Law
U. S. Coast Guard
By direction








Exhibit (1)

(B-7)-Photo copies of other USCG public advertisements that includes USCG Emblems & wordings

# CYBER CAFE

C    USCGRTC Regulation designed by 0-4 K.E.Lunday and approved by D.A.Sande Captain,

has many folds against a Insurance agent, (1)-safeguarding Cyber Café and its vicinity,(2)-no longer

lounges or offices existed to work as in the past ,many Foia requests raising these issues never had

responses,(3)-I was a smoker, the smoking area is in the court yard and has a open sheltered from the

elements was used by plaintiff for many years ,is now prohibited to the plaintiff or anyone of the same

status."see (A-9) USCGRTC 1740 1G Para:e.

see (A-5)-USCGRTC Memo dated 24 Feb.,1998:Commander gives authorization to Legal Officer.

see (A-7)-USCGRTC memorandum dated 10 Dec.1999, 0 -4 K.E.Lunday and Commander prohibiting

Insurance agent in the Cyber Café.

see (A-8)-USCGRTC 1740.1F. Para: e  new instruction states Cyber Cafe is not a office or lounge

therefore commercial solicitation in or in the immediate vicinity of the Cyber Cafe is prohibited.

(C-1)-A partial denial D.A.Sande Capt. USCG Commanding Officer USCGRTC concerning my 7

April,2000 Foia request about the Cyber Café This disclosure Proves the act was arbitrary and

capricious ,a conspiracy purposely devised by Capt.D.A.Sande Commanding Officer and 0-4

K.E.Lunday legal officer USCGRTC toward the plaintiff by using the excuse of "the importance" of

safeguarding Cyber Cafe environment (see (A-7)Memorandum USCGRTC1740 dated 10 Dec.1999  In

reality it is operated by a Computer company called Cyber Zone that claims the best and most

extensive array of software for gaming, no classified clearances. This clearly shows where the

mindset is "Profit for USCGRTC using computers and Coast Guard students as bait."

(This is why USCGRTC never answered my Foia requests concerning the safeguarding against whom.

(C-2)-Letter from 0-4 K.E.lunday -Date 14 April,2000 could not locate my requested Foia ,but tack

a bill of $214.84

(C-3)- USCGRTC Correspondence between Cyber Zone dated 30 99

-(D-7)-

TO:
K.E. LUNDAY LTCDR
USCG
USCGTC.

7 MAR. 2000

FROM:
JACK A. SCHWANER

DEAR SIR,

THIS IS A FOLLOW UP LETTER CONCERNING CHIEF SMITH
THAT ACCURED ON MAR. 7, 2000 AFTER I CLEARED WITH THE OOD, I WENT
TO LINCOLN HALL QUARTERDECK TO MEET WITH MY APPOINTMENT WHO
WAS TOLD BY CHIEF SMITH THAT I WAS UNDER INVESTIGATION AND NOT
TO TALK TO ME, AND THIS INDIVIDUAL FURTHER STATED THAT CHIEF
SMITH STATED THE SAME BEFORE THE WHOLE CLASS I HAVE NO REASON
TO DISBELIEVE IT--HE FOLLOWS ME LIKE A HOUND DOG AFTER A BONE
AND QUESTIONS ANY PERSONNEL ON THE QUARTERDECK AFTER I LEAVE
ABOUT MY ACTIVITY LOOKING FOR A MISSTEP, ANY REPORTS FROM THIS
CHARACTER SHOULD BE TAKEN WITH A GRAIN OF SALT.
        MONEY IS SECONDARY, MY REPUTATION IS FIRST THEREFORE
I WILL CONSULT WITH A ATTORNEY TO SEEK WHAT EVER LEGAL ACTION
I CAN ATTAIN AGAINST THIS INDIVIDUAL.

RESPECTFULLY,
JACK A. SCHWANER

Page 1
CIVIL ACTION NO. 072351 (EGS)
EXHIBITS

1.DODI 1344.07 Para:6.5,1,6.5.2 &6.5.5

2.COMTINST 1740.2G Para:6,6 b

3.Lunday's letter to USCG Headquarters Mar.8,2000 about USCG Emblem. S.S Cards

4.Plaintiff letter to Lunday Mar.18,00 about USCG Emblem S.S card Jenning warning.

5.M.J Devine Capt. USCG letter to Plaintiff May 31,00 losing permit if using USCG S.S card Emblem.

6.W.G Haskin Jr letter to Plaintiff April 4,07 n#5 exhibit recanted after Plaintiff challenges.

7.Pictures of metal Military S.S.cards

8.Plaintiff questioning Cyber Cafe

9.Plaintiff lettr to Lunday Mar.7,00 about misconduct of USCG chief

Vital Revocations exhibits of Plaintiff and TWA omitted in Memorandum in support of Defendant's Motion to Dismiss.

E-1.   Aug.2,1999 Letter  to Mr Royals, president of TWA from 0-4 Lunday legal officer stating permission to solicit on board USCGRTC is denied and Plaintiff's permission to solicit on board USCGRTC is revoked.

E-2.   Aug.2,1999 memorandum discussing I assume the Unit Commander to revoke and deny TWA ,agents on board and Class action lawsuit in California.( 3 Guardmen)

E-3.   Aug.5,1999 letter from Assistant Secretary of Defense approving TWA to solici overseas.

E-4.   Aug.29,1999 long winded 3 page Letter from Plaintiff to Unit Commander USCGRTC making general complaints.

E-5.   24 Aug.24,1999 letter from TWA attorney to 0-4 Lunday discussing Washington case United State Attorneys.

E-6.   Aug.26,1999 letter to 0-4 Lunday from Plaintiff making a Foia request on specific charges etc.

E-7.   Aug.30,1999 letter of resignation by the Plaintiff to Charles Royals President of TWA.

E-9.   Dec.8,1999 letter to TWA from USCGRTC granting TWA and Plaintiff

# Page 2

permission to solicit on USCGRTC.

E-10. Dec.14,1999 letter from TWA to 0-4 Lunday thanking him for approving TWA permission to solicit on USCGRTC that was denied on no charges Aug.2,1999 until Dec.8,1999.

E-11. RTCINST 1740 2E check with the OOD prior appointments.

E-12. RTSINST 1740 1G Cyber Café to only Insurance agents only.

## Final Class Action results against TWA.

(a)-TWA wins Policyholder Class Action Trial. Defendant sues Plaintiff for $200,000 in Court cost.

(b)-The Court reveres early ruling certified the case as a class actioned.All charges are dismissed.

(c)-Settlements and verdicts in TWA class action lawsuits ( used by 0-4 Lunday prior to verdicts in revocation of Plaintiff and TWA.

(d)-TWA wins, Court entered Judgment against Plaintiff $71,000 and all Appeals by Plaintiff are dismissed.

E-1)

U.S. Department
of Transportation

**United States**
**Coast Guard**

Commanding Officer
U. S. Coast Guard
Reserve Training Center

Yorktown, VA 23690-5000
Staff Symbol: cl
Phone: (757) 898-2374
FAX: (757) 898-2329

5720
August 2, 1999

Trans World Assurance Company
Attn: Charles B. Royals
885 South El Camino Real
San Mateo, CA 94402

Dear Mr. Royals:

Your June 29, 1999 request for permission to solicit on board Coast Guard Reserve
Training Center is denied. Further, prior permission for your agent, Mr. Schwaner, to solicit on
board, granted in my January 28, 1999 letter, is revoked. Trans World Assurance and its agents
are prohibited from engaging in commercial solicitation on board Reserve Training Center for a
period of one year from the date of this letter. You may reapply for permission upon completion
of that period.

The basis for this action is receipt of recent reports that Trans World Assurance has
engaged, and continues to engage in, misleading and/or deceptive practices toward military
members in California and Washington that violate the provisions of Commercial Solicitation
Controls at Coast Guard Units (COMDTINST 1740.2G).

I find there is good and sufficient reason under paragraph 6.a of COMDTINST 1740.2G
for this action, specifically under subparagraphs (2), (3), and (4).

Under COMDTINST 1740.2G, you have the opportunity to show cause why this
denial/revocation should not have been issued. You may respond in writing to the above
address.

Sincerely,

K. E. LUNDAY
Lieutenant Commander, U. S. Coast Guard
Legal Officer
By direction of the Commanding Officer

Encl: Commercial Solicitation Controls at Coast Guard Units (COMDTINST 1740.2G)

(E-2)

U.S. Department
of Transportation

**United States
Coast Guard**

# Memorandum

Date:  2 Aug 99

Reply to
Attn. of:    cl

LCDR Lunday
x2376

To:  cx

From:  cl

Subject:  REVOCATION/DENIAL OF PERMISSION FOR
TRANS WORLD ASSURANCE TO SOLICIT ON
BOARD

1.  As we discussed last Friday, I recommend (and unless otherwise directed) will issue the
attached letter revoking and denying permission for Trans World Assurance (TrWA) and its
agents to solicit on board RTC for one year.

2.  RTC granted Mr. Schwaner permission to solicit on 28 Jan 99 for one year. I received a
letter from (TrWA) dated 29 Jun 99 requesting renewal of permission for Mr. Schwaner to
solicit on board.

3.  MLCPAC recently reported that three Coast Guard members filed a class action lawsuit
against TrWA in California for misleading and deceptive trade practices. TrWA is selling a
product called Flex Dollar Builder that is advertised as a savings/investment plan but is
actually life insurance. Clients are led to believe that 100% of funds contributed go toward
savings or investment, when in reality only a portion of the funds are saved, the rest going
toward insurance premiums. Additionally, TrWA has not stopped allotments in many cases
when the client has cancelled the plan.

4.  I spoke to the U. S. Attorney's Office in Seattle. Dept. of Justice filed a civil suit against
TrWA for misrepresentation in Apr 98, based on a three-year investigation into the company
by Defense Criminal Investigative Service. The U. S. settled with TrWA in Dec 98,
although TrWA still has not met the conditions of the settlement. Finally, the U. S.
Attorney's Office reported that Ohio and Florida were currently conducting investigations
against TrWA and its sister company, American Fidelity Insurance.

5.  In my opinion the above information provides "good and sufficient reason" required for
revoking solicitation permission per COMDTINST 1740.2G. TrWA has the opportunity to
show cause why the determination should not be made.

K. E. LUNDAY

(2-1)
-(23)

FORCE MANAGEMENT
POLICY

OFFICE OF THE ASSISTANT SECRETARY OF DEFENSE
4000 DEFENSE PENTAGON
WASHINGTON, DC 20301-4000

AUG - 5 1999

Mr. Charles B. Royals
President, Trans World Assurance Company
885 So. El Camino Real
San Mateo, CA 94402

Dear Mr. Royals:

This is in reply to your letter requesting the privilege to solicit life insurance sales on Defense installations in foreign areas during Fiscal Year 2000 beginning October 1, 1999. In accordance with DoD Directive 1344.7, "Personal Commercial Solicitation on DoD Installations," dated February 13, 1986, your application is approved.

We invite your attention to the provision of the above-cited Directive that requires the accredited insurer upon receipt of this letter to send to the applicable unified commander a verified list of agents currently accredited for overseas solicitation.

Material changes affecting the corporate status or financial conditions of the insurer, which may occur during the fiscal year of accreditation, must be reported to the Department of Defense at the time of occurrence. Failure to report such material changes can result in termination of accreditation.

Sincerely,

Victor Vasquez, Jr.
Deputy Assistant Secretary of Defense
(Personnel Support, Families and Education)

Exhib. (6)

(E-4)

TO:    COMMANDING OFFICER
       U.S.COAST GUARD
       RESERVE TRAINING CENTER
       YORKTOWN,VA.23690-5000

                                                        AUG.20,1999

FROM:  JACK A.SCHWANER
       816 CHATSWORTH DR.
       NEWPORT NEWS VA.23601.

Dear Sir,

       I was recently informed verbally and followed up by
letter dated 2 Aug,1999 by Lt.Cdr.K.E.Lunday addressed to
Trans World Assoc.Co.stating their privilege to solicit on
on board USCGRTC denied,because of the Company has engage in
and continue to engage in misleading and/or deceptive practices
toward Military members in CALIFORNIA AND Washington.

       Their problems is secondary to mine,In the same letter
it states that my letter granted me the privilege to solicit
for the Military Benefit Assoc.dated Jan.28,1999 was revoked.

       In this letter is a list voilations committed on board
USCGRTC,if any of these allegations may pertain to me,I will
response accordingly which is complicated because all are vague
and no specific alleged charges are included,so I will do my
best to identify the meaning located in (COMDTINST 1740-3G sub-
paragraphs (2),(3),(4) and 5.C as indicated by Lt Cdr.Lunday.

       6.A-DENIAL AND REVOCATION OF ON BOARD SOLICITATION.
A UNIT COMMANDING OFFICER SHALL DENY OR REVOKE PERMISSION FOR
A COMPANY AND ITS AGENTS TO CONDUCT COMMERCIAL ACTIVITIES AT
THE UNIT FOR A GOOD AND SUFFICIENT REASON,AND NOT LIMITED TO:

       6.A.(2) COMMISSION OF ANY OF THE SOLICITATION PROHIBITED
IN PARAGRAPH 5.C.

       6.A.(3) SUBSTANTIATED COMPLAINTS OR ADVERVSE REPORTS
REGARDING,EITHER THEIR QUALITY OF GOODS,SERVICES OR COMMODITIES.
THE MANNER IN WHICH THEY ARE OFFERED FOR SALE,OR THE METHOD
AND TERM OF FINNACING.

       6.A.(4)    KNOWING AND WILLFUL VIOLATIONS OF THE COMSUMER
CREDIT LAWS IN 15 U.S.C.15 1601-1693(R).

       IF THESE ARE THE FINDINGS:PERTAINING TO (COMDTINST
1740.2G) I WILL ANSWER EACH PARAGRAPHS IN THE SAME ORDER AS
STATED ABOVE.

page 1 of 3

6.A.(2)-is related to 5.C.listing 8 prohibited practices if these findings or finding may pertain to me I categorically deny any and all parts of 5.C.

6.A.(3)*this paragraph of prohibited practices will be addressed in my final summation,by my interpretation,it seems to pertain to use car salesmen.

6.A.(4)-this paragraph shows absolutely no relationship regarding life insurance agents because it deals only with consumer protection laws.

* Concerning paragraphs 5.C and 6.A.(3) and having no idea if any of these findings pertains to me,Therefore I am invoking a FOIA REQUEST that should be responded within 20 days to the Following:

(1)Any and and all names,positions,ranks who has or had substantiate complaints or adverse reports to my conduct.

(2)any and all letters,memos,notes that had any bearing in my revocation on USCGRTC,including existing web pages information concerning this matter.

(3)any and all names,rank and positions of personnel who instituted or participated in my revocation on USCGRTC.

I request to have the presence of all my accusers in a informal show cause hearing that was denied to me on by USCGRTC to defend myself.--Cdr.Lunday told me to write a letter addressed to the Commanding Officer in USCGRTC for final consideration.

For me to write a letter to a task I cannot complete because of the unknown findings I am inclosing Regulation D.O.1344-7 Page 14 (B.1)in support to instituted a show cause hearing without Command influence or prejudice.I'm not a neophyte in the fairness of the established Military,some times it fails to implement and uphold the U.S.constitution and the laws of the land the Military were sworn to protect,and any injustice within the system voiding the rights of individuals only leave one recourse to have anyones grievance heard in Federal Court and for the defendant presenting abutting evidence that the charges brought forth by the Military for a final decision.I have no qualms to challenge the Military establishment.I did this before and won (article inclosed),but because its trivial nature I prefer to have a informal show cause hearing.

I was also denied as well as Trans World Assur.Co. the solicitation privileges on board USCGRTC through efforts of Lt.Cdr.Lunday or the powers to be concerning the Federal Court case in the involvement in the states of California and Washington and was told by me that all charges were dismissed, Lt.Cdr.Lunday stated he had information to the contrary and I am assuming this because of a third party information that

Lt.Cdr.Lunday called the prosecuting attorney I believe his name is Jennings for a input concerning Trans World Assur. and the charges were dismissed,but to get intouch with a attorney who have pending suits in what I call nuisance cases hoping to make a fast buck and settle out of court, a ploy commonly used by lawyers,I am sure that he gave Lt.Cdr.Lunday a inpartial rendition,and if you believe that I have a bridge to sell Coast Guard.

I am sure USCGRTC solicitation privileges would not be denied to Prudential,New York life and many other large insurance companies who were sued for misreprenting their policys to the public that created class action suits and paid millions in refunds,pulse what ever.

That brings again the D.O.D.regulations that are copiedby the Coast Guard in almost the same identical manner.

(A)  D.O.D.approves all Insurance companies the privilege of all Federal Installation here and over seas with the exception of National Security or by order of the Commanding Officer of a Military installation for good and sufficient reasons such as welfare,health and morale.

(B)  D.O.D.requires submission of all Life Insurance Company policys to conform and be approved under D.O.D.guidlines and state clearly if any exceptions exist.

(C)  Trans World Assoc.was never ban to conduct business on any Military Installation in the states which are approved by the Bureau of Insurance,with one exception USCGRTC in Va.

(D)  Trans World Assoc.has no Insurance Agents on the bar list that includes the D.O.D,Army,Navy and airforce as I stated and the Company as stated in paragraph (C).

(E)  Trans World Assoc.is duly licensed and meets all requirements in the Sate of Virginia.

A second time I am invoking a FIOA request to the following;

(1)  All and any written correspondence,communiques,letters memos,notes and web information including names,rank if it applies,and thier positions inside or out of the legal office cammanded by Lt.Cdr.K.E.Lunday who took a active part in denying Trans World Assoc.solicitation privilege in USCGRTC Yorktown,Va.

(2)  exception to paragraph (1) a new FOIA request I am including civilians name,position if any and a point of contact who knowingly or unknowingly he or she that participated in the denial concerning Trans World Assoc.in or out of the State of Virginia.

Respectfully,

P.S.  Please excuse my errors in spelling and grammar my word processor has a mine of its own.

(Page 3

(E-5)

ROBERT A. PRAHL
R. MICHAEL McBRIDE

LAW OFFICES
PRAHL & McBRIDE
A PROFESSIONAL CORPORATION
101 WEST BROADWAY, SUITE 1410
SAN DIEGO, CALIFORNIA, 92101-8215

TELEPHONE: (619) 236-1277
FACSIMILE: (619) 702-0673

C:\E-5\9\Royal\8\Lunday L08Z4.wpd

August 24, 1999

Lieutenant Commander K.E. Lunday
U.S. Coast Guard Reserve Training Center
Yorktown, VA 23690-5000

Re:    Trans World Assurance Company

Dear Lieutenant Commander Lunday:

I appreciate your taking the time to discuss with me your letter of August 2, 1999 to the President of Trans World Assurance Company ("TWA"). I am even more appreciative of your professional approach to the matters contained in your letter and willingness to reconsider your decision to deny permission to solicit insurance sales aboard your installation based upon information provided by the company. The three issues you requested be addressed are as follows:

1.    You have talked with staff members in the United States Attorney's office in the state of Washington who have advised that their office had filed a lawsuit against TWA and American Fidelity Life Insurance ("AMFI") for fraud and misrepresentation. While the lawsuit has been settled and dismissed, they advised you that the company has not as yet complied with all of the provisions of the settlement agreement. You asked for substantiation of compliance with the settlement agreement.

2.    The staff member in the U.S. Attorney's office also advised you that a lawsuit involving three Coast Guardsmen has been recently filed against both companies in California alleging the same type of conduct as was detailed in the Washington lawsuit. I am unclear as to whether you personally talked to the plaintiff's attorney for the three Coast Guardsmen regarding the case or were merely repeating information from the U.S. Attorney's office. You expressed concern based upon both cases that the company's agents were misrepresenting the product they were selling to Coast Guardsmen. You asked for information regarding the California case.

3.    Apparently the U.S. Attorney's office related to you that the portion of the settlement agreement that had not been complied with by the company relates to the Florida Insurance Commissioner. You related you had visited the Florida Commissioner's website and had read a September 1998 press release involving AMFI and its policy, the Flexible Dollar Builder, that led you to believe that Florida also felt that AMFI was misrepresenting its product. You asked that I address the Florida situation as it related to TWA.

(E-6)

FAX # 898-2329

DEAR LT.CDR.LUNDAY,

AUG.26,1999.

I JUST DISCOVERED THAT I MAY OF SENT YOU (2) LETTERS
OF PAGE(3) MISSING I ASSUME IS,PAGE (2) IN MY LETTER DATED AUG.
20th. I CONSIDER THIS CRUCIAL CONCERNING YOUR LETTER OF OF
REVOCATION.I AM SORRY TO ADMIT THAT I HAVE NO COPIES OF THE
SECOND PART OF THE LETTER,THEREFORE I WILL TRY TO SURMISE TO
ITS CONTENTS TO THE BEST OF MY ABILITY.

        IT IS INPOSABLE FOR ME WRITE A SHOW CAUSE LETTER
FOR THE COMMAND,S CONSIDERATION NOT KNOWING SPECIFIC ALLEGATIONS.
THEREFORE I AM REQUESTING A INFORMAL SHOW CAUSE HEARING
AS STATED IN D.D.1344-7 PARAGRAPH B-(3).
        I WILL RESPOND TO MY LETTER,S LAST PARAGRAPH IN FIRST
PAGE.

6A.(1)- TO REVOKE A PERMIT FOR,GOOD AND SUFFICIENT REASONS.

5.C-
        PERTAINS TO 8 PROHIBITED PRACTICES,INCLUDED IS 5.C
        I DENY IT CATEGORICALLY IF IT CONCERNS MY CONDUCT ON
        BOARD OF USCGRTC.

6A.(2)    MY RESPONSE TO THAT PARAGRPH IS THE SAME AS 5.C.

6A.(3)    I AM NOT AWARE OF ANY CONFLAINTS OR ADVERSE REPORTS
          SINCE WORKING USCGRTC BEGINING IN 1982 TO THE PRESENT.

6A.(4)    THIS PARAGRPH SEEMS NOT TO PERTAIN TO INSURANCE AGENTS,
          BUT IT MAY BE REMOTELY REFLECTED TO PARAGRAPH 5.C

DUE TO THE FACT THAT NO SPECIFIC CHARGES ARE STATED,I AM MAKING
A FOIA REQUEST IN ORDER FOR ME"THE GRIEVED PARTY"IN PRESENTING
THE FACTS ON MY BEHALF TO THE FOLLOWING:

(A) -A LIST OF NAMES,RANK OF THE ACCUSERS INCLUDING THEIR
        WRITTEN STATEMENTS IN THE CONSIDERATION OF MY REVOCATION.

(B) -ANY AND ALL COMMUNIQUES,LETTERS,NOTES AND MEMOS RELATED
        TO MY REVOCATION.

        I WOULD MOST PREFER TO HAVE A MEETING IN THE OFFICE
OF LT.CDR.K.E.LUNDAY TO DISCUSS THE CAUSES OF MY REVOCATION
AND FOR ME TO DEFEND MY ACTIONS.

                                RESPECTFULLY,
                                JACK A. SCHWANER

PLEASE DISREGARD THIS LETTER IF YOU HAVE PAGE 2.
P.S. I ALSO FAXED SOME OF INSURANCE CO.WHO HAD PROBLEMS.

Page (2)

(E-7)

TO:
MR.CHARLES ROYALS
PRESIDENT
TRANS WORLD ASSUR.

AUG.30,1999.

FROM:
JACK A.SCHWANER SR
816 CHATSWORTH DR.
NEWPORT NEWS,VA.23601

DEAR MR.ROYALS,

I AM REGRETFULLY RESIGNING AS A LIFE INSURANCE
REPRESENTATIVE OF TRANS WORLD ASSUR.CO.ENCLOSED IS MY LICENSE
FOR TRANS WORLD ASSUR.DATED JUNE 2,1999 AND IT IS TO BE EFFECTIVE
UPON THE RECEIPT OF THIS LETTER.

RESPECTFULLY,

JACK A.SCHWANER

(E-9)

**U.S. Department
of Transportation**

**United States
Coast Guard**

Commanding Officer
U. S. Coast Guard
Training Center Yorktown

Yorktown, VA 23690-5000
Staff Symbol: cl
Phone: (757) 898-2374
FAX: (757) 898-2329

1740

DEC  8  1999

Trans World Assurance Company
Attn: Mr. Charles B. Royals
885 South El Camino Real
San Mateo, CA 94402

Dear Mr. Royals:

As requested in your letter of November 18, 1999, Mr. Jack A. Schwaner is hereby granted
permission to conduct business as a representative of Trans World Assurance Company within
the boundaries of U. S. Coast Guard Training Center Yorktown, Virginia.

This authorization is valid for one year from date of signature and is subject to the following
restrictions:

    a.   Mr. Schwaner shall not directly or indirectly encourage or request persons, such as
Coast Guard employees, to distribute commercial literature, business materials, or other
promotional information on behalf of your company aboard the Training Center.  Such practices
are strictly prohibited, regardless of whether compensation is provided.

    b.   Mr. Schwaner may only solicit military personnel and their dependents on an
individual basis, by scheduled appointment only.  A "scheduled appointment" is a pre-arranged
meeting with a named individual at a specific time for the purpose of conducting commercial
solicitation.  Mr. Schwaner may not enter the Training Center for the purpose of scheduling
appointments or delivering materials without an appointment and shall not loiter prior to or after
scheduled appointments.

    c.   Mr. Schwaner must first personally check in with the Officer of the Day (OOD) and
provide a written list of scheduled appointments for that visit.

    d.   Scheduled appointments may be conducted in offices and lounge areas of the barracks
buildings outside of normal work hours.  Scheduled appointments may not be conducted in
berthing areas of any buildings.

    e.   Although Mr. Schwaner may have separate authority to enter the Training Center for
purposes unrelated to commercial solicitation (e.g., retired military person with exchange
privileges), he shall not use it to bypass these requirements in order to conduct commercial
solicitation.

(E-10)



**TRANS WORLD ASSURANCE COMPANY**

885 SOUTH EL CAMINO REAL  /  SAN MATEO, CALIFORNIA 94402  /  TEL: (650) 348-2300  /  FAX: (650) 348-7318

December 14, 1999

Lieutenant Commander K.E. Lunday,
U.S. Coast Guard
Training Center Yorktown
Yorktown, VA 23690-5000

Re: Mr. Jack A. Schwarner

Dear Commander Lunday,

Thank you for your letter of Authorization for the above. We appreciate your approval of our agents to conduct business at your installation. They have acknowledged the rules as outlined in your letter.

We fully understand that it is a privilege and not a right to be on your installation. We have been serving the needs of the military community for over thirty years, and will do the best we can to follow all the rules and regulations both in spirit and to the letter of the law. If there are any problems or if I can be of service in any way, please let me know. I can promise you that we will deal with it immediately and to your complete satisfaction. My business card is enclosed for your convenience. Thank you again for your courtesy and don't hesitate to let me know if I can be of service.

Sincerely yours,

Charles B. Royals
President

CBR: emm

cc:

**CHARLES B. ROYALS**
PRESIDENT

TRANS WORLD ASSURANCE CO.
885 S. EL CAMINO REAL / SAN MATEO, CA 94402 / 650-348-2300

RTCINST 1740.2E

SEP 29 1999

d.  All agents arriving at RTC must first personally check in with the Officer of the Day (OOD) and provide a written list of scheduled appointments for that visit.

e.  Scheduled appointments may be conducted in offices and lounge areas of the barracks buildings outside of normal work hours.  Scheduled appointments may not be conducted in berthing areas of any buildings.

f.  Some agents may have separate authority to enter RTC for purposes unrelated to commercial solicitation (e.g., retired military person with exchange privileges).  Persons with such separate authority to enter RTC shall not use it to bypass the requirements of this instruction in order to conduct commercial solicitation.

g.  The authority to issue and revoke authorizations to solicit the sale of insurance, mutual funds, investment plans, securities, and other commodities is delegated to the Legal Officer.

3.  <u>DIRECTIVES AFFECTED.</u>  RTCINST 1740.1D is cancelled.

J.S. BURHOE
Acting

Encl: (1) Certification of understanding

2

E-12

TRACEN YORKTOWNINST 1740.1G

conducted in berthing areas of any buildings. For the purpose of this instruction, the Cyber Café and all smoking areas are not considered an office or lounge area of the barracks; therefore, commercial solicitation in, or in the immediate vicinity of, the Cyber Café or smoking areas are prohibited.

f.   Some agents may have separate authority to enter the Training Center for purposes unrelated to commercial solicitation; e.g., retired military person with exchange privileges. Persons with such separate authority to enter the Training Center shall not use it to bypass the requirements of this instruction in order to conduct commercial solicitation.

g.   The authority to issue and revoke authorizations to solicit the sale of insurance, mutual funds, investment plans, securities, and other commodities is delegated to the Staff Judge Advocate.

//s//

J. SCOTT BURHOE

Enclosure: (1) Certification of Understanding

Copy: CG TRACEN Yorktown Security Officer

2

Still pending are proceedings in which the companies are seeking to recover in excess of $200,000 from the plaintiffs in court costs.

```
Trans World Assurance Company
885 South El Camino Real
San Mateo, California 94402
```

**Company:** Trans World Assurance Company **Voice:** 650-348-2300

**Ads by Google**

<u>Life Insurance Company</u>
Life Insurance Company Options! Life Insurance Company Starts Here.
LocalCars.AllltheAutomotive.com

<u>Life assurance</u>
Save Time & Money with Top Carriers Instant issue, term, whole life ins
www.PremiumComparisons.com

<u>Got Life Insurance Rates</u>
Find Life Insurance Vendors & Rates in Your Area with Superpages.com
www.superpages.com

1 - 2 - Next

**Find Featured Titles for: Business & Finance**

| CLICK TO VIEW |

© 2006 FindArticles™ - LookSmart, Ltd. - About Us - Privacy Policy - Terms of Service - Advertise with Us - Site Map - RSS Site Map

Content provided in partnership with



LookSmart

# FiND ARTICLES | 10,000,000 Articles
Where To Look For What You Need.™

FindArticles > Publications > Free > Business & Finance > Market Wire > July, 2003 > Article

FIND | trans world assurance c: IN free and premium articles        Look    Advanced Search

Ads by Google

**Find Magazines by Topic**
▼ CLICK TO VIEW ▼

---

## Trans World Assurance Co. Wins Policy Holder Class Action Trial

Market Wire, July, 2003

Recent Jury Verdicts found that Trans World Assurance Co. did not defraud its policy holders in the highly publicized California class action lawsuit Heathcock v. Trans World Assurance Company. In rejecting the plaintiffs' claims, the Jury's Special Verdict specifically found that no misrepresentations were made to the plaintiffs and that there was no breach of the covenant of good faith and fair dealing. In the Decision, the Court found that Trans World did not act unlawfully, fraudulently or unfairly in selling and servicing its Flexible Dollar Builder (FDB) life insurance policies. The Court also reversed earlier rulings certifying the case as a class action.

The Special Verdicts and Court Decision are consistent with the results of other cases that have gone to trial and prove once and for all that TWA's agents fairly disclose the material terms of the FDB. Unfortunately, while the Heathcock lawsuit was pending, its unproved allegations received much notoriety and often were cited as evidence of misconduct by TWA's agents. The Jury Verdicts and Court Decision confirm that Trans World and its agents involved with the plaintiffs are innocent of any wrongdoing. "We are pleased that Trans World and its agent sales force have been vindicated by the Jury Verdicts and the Court Decision," as stated by Trans World Assurance Co.'s management.

In summarizing the Jury's decision the Court stated:

"On March 21, 2003, the jury returned its special verdicts in favor of both TWA and AFLI. These special verdicts included the following findings: (1) Neither TWA nor AFLI made any false representation, whether intentionally or negligently, to Heathcock, Cavanaugh or Bremer. (2) Neither TWA nor AFLI concealed or suppressed any material fact to Heathcock, Cavanaugh or Bremer. (3) Neither TWA nor AFLI breached the implied covenant of good faith and fair dealing, which breach caused damage to Heathcock, Cavanaugh or Bremer."

In its own opinion, the Court stated:

"The only inferences that can reasonably be drawn from the jury's special verdicts are that either (a) Heathcock, Cavanaugh and Bremer knew that the FDB was life insurance, or (b) Defendants' agents fully disclosed the true nature of the FDB to each of the three named plaintiffs and yet, for some reason through no fault of Defendants (e.g., the three named plaintiffs did not listen to what they were being told by Defendants agents), Heathcock, Bremmer and Cavanaugh still did not understand what they were buying."

**Find More Results for:** "trans world assurance co."

Trans World Assurance...:
Trans World Assurance...:
A.M. Best Takes ...:
Trans World Assurance...

💾 SAVE        🖨 PRINT        ✉ EMAIL        🔗 LINK

Settlements and Verdicts: Trans World Assurance Company.    http://www.lawyersandsettlements.com/case/transworldassurancecompany

(c)

Settlements >> Trans World Assurance Company.

## Settlements and Verdicts

### Trans World Assurance Company.

A jury has found in favor of Trans World Assurance Co. in the class action lawsuit filed against the company by policy holders. The decision states that the jury found that the company did not defraud its policy holders, made no misrepresentations to the plaintiffs and that there was no breach of the covenant of good faith and fair dealing. The ruling also reversed the previous rulings which had certified the case as a class action. (Jul-24-03) [PRESS RELEASE]

### Register Your Case

If you have a similar problem and would like to be contacted by a lawyer at no obligation, please click the link below to submit your complaint.

<u>Click here to submit your complaint through a secure form</u>

Posted on Sep-5-03

---

**Search**

**Home**

**Services for Lawyers**

**Lawsuits:**

· Personal Injury

· Unpaid Overtime

· Dangerous Drugs

· Defective Products

· Stock Fraud

· News Articles

**Hot Lawsuits:**

All Hot Lawsuits

SSRI Birth Defects

· California Labor Laws

· Cell Phone Termination Fees

Composix Kugel Mesh Patches

Credit Card Rate Hikes

Defective Product

Elidel

Employee Stock Options/ERISA

Propane Explosions

Florida Cigarettes Side Effects

Fresh Bagged Spinach

Immigration Citizenship

Ink Jet Printer Cartridges

Ketek

Kltec XPA Pipe

Paxil Birth Defects

Protopic

Ralphs Grocery

Trasylol

Unpaid Overtime

UnumProvident

Veteran Medical Malpractice



Trans World Assurance Company

Recent Press Release

Trans World Assurance Co. Wins Policyholder Class Action Trial

Recent Jury Verdicts and a Court decision found that Trans World Assurance Co. did not defraud its policyholders. In the highly publicized California class action lawsuit Heathcock v. Trans World Assurance Company, the Jury's Special Verdict rejected the class plaintiffs' claims and specifically found that no misrepresentations were made and that there was no breach of the covenant of good faith and fair dealing. In its Decision, the Court concurred in the Jury's findings and found that Trans World did not act unlawfully, fraudulently or unfairly in selling and servicing its Flexible Dollar Builder (FDB) life insurance policies. The Court also reversed earlier rulings certifying the case as a class. The Court also entered a judgement against the plaintiffs for $71,000 for costs. All appeals by the plaintiffs have now been dismissed.

The Jury Verdicts and Court Decision are consistent with the results of other cases that have gone to trial and prove once and for all that TWA's agents fairly disclose the material terms of the FDB. Unfortunately, while the Heathcock lawsuit was pending, its unproved allegations received much notoriety and cited inappropriately as evidence of misconduct by TWA's agents. The Jury Verdicts and Court Decision confirm that Trans World and its agents involved with the plaintiffs are innocent of any wrongdoing. "We are pleased that Trans World and its agent sales force have been vindicated by the Jury Verdicts and the Court Decision," stated Trans World Assurance Co.'s management.

In summarizing the Jury's decision the Court stated:

"On March 21, 2003, the jury returned its special verdicts in favor of both TWA and AFLI. These special verdicts included the following findings: (1) Neither TWA nor AFLI made any false representation, whether intentionally or negligently, to Heathcock, Cavanaugh or Bremer; (2) Neither TWA nor AFLI concealed or suppressed any material fact to Heathcock, Cavanaugh or Bremer; (3) Neither TWA nor AFLI breached the implied covenant of good faith and fair dealing, which breach caused damage to Heathcock, Cavanaugh or Bremer."

FOR MORE INFORMATION CONTACT:
Trans World Assurance Company
885 South El Camino Real
San mateo, California 94402
(650)348-2300